IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:17-CV-00577-JRG |
| | § | |
| T MOBILE USA, INC., T-MOBILE US, INC., ERICSSON INC., TELEFONAKTIEBOLAGET LM ERICSSON, | § § § § | |
| | § | |
| *Defendants*. | § | |

**ORDER CARRYING-IN-PART AND DENYING-IN-PART
DEFENDANT'S MOTION TO DISMISS (DKT. NO. 23)**

Before the Court is Defendants' Motion to Dismiss (Dkt. No. 23) ("the Motion"), wherein T-Mobile USA, Inc. and T-Mobile US, Inc. move to dismiss: (1) all claims of United States Patent No. 7,359,971 ("the '971 Patent") and Claim 1 of United States Patent No. RE46,206 ("the '206 Patent") as barred by issue preclusion; and (2) '206 Patent Claim 109 as directed to ineligible subject matter. In light of Defendants Ericsson Inc. and Telefonaktiebolaget LM Ericsson motion to dismiss on the same issue preclusion grounds, (*see* Dkt. No. 20,) the Court **CARRIES** the Motion as to such grounds.

**I. LEGAL STANDARD**

**A. RULE 12 MOTION FOR JUDGMENT ON THE PLEADINGS**

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is "plausible on its face" when

the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). However, the Court need not accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. To be legally sufficient, the complaint must establish more than a "sheer possibility" that the plaintiff's claims are true. *Id*. The complaint must contain enough factual allegations to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim. *Lormand*, 565 F.3d at 255–57. If it is apparent from the face of the complaint that the plaintiff is not entitled to relief, the court must dismiss the claim. *Jones v. Bock*, 549 U.S. 199, 215 (2007).

In considering a motion to dismiss for failure to state a claim, a court considers only the contents of the pleadings, including their attachments. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). A court may, at its discretion, exclude matters presented that are outside of the pleadings; however, if the court does not exclude these matters, it must treat the motion as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). Defendants have attached matters outside the pleadings to the Motions; the Court exercises its discretion and excludes those matters from its consideration of the Motions.

### B. SECTION 101: PATENT ELIGIBLE SUBJECT MATTER

Anyone who "invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" may obtain a patent. 35 U.S.C. § 101. Since patent protection does not extend to claims that monopolize the "building blocks of human ingenuity," claims directed to laws of nature, natural phenomena, and abstract ideas are not patent eligible. *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). The Supreme

Court instructs courts to distinguish between claims that claim patent ineligible subject matter and those that "integrate the building blocks into something more." *Id*. First, the Court "determine[s] whether the claims at issue are directed to a patent-ineligible concept." *Id*. at 2355. If so, the Court "consider[s] the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent eligible application." *Id*. at 2355 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78–79 (2012)). However, the Court must be wary not to over generalize the invention, as "all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Id.* at 2354 (omission in original). The second step of the *Alice* test is satisfied when the claim limitations "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014) (quoting *Alice*, 134 S. Ct. at 2359).

Recently, the Federal Circuit stated that "[t]he question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact" that must be "proven by clear and convincing evidence." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). Something is not well-understood, routine, and conventional merely because it is disclosed in a prior art reference. *Exergen Corp. v. KAZ USA, Inc.*, No. 2016-2315, 2018 WL 1193529, at *4 (Fed. Cir. March 8, 2018). There are many obscure references that may qualify as prior art, but are insufficient to establish that something is "well-understood, routine, and conventional activity previously engaged in by scientists who work in the field." *Mayo*, 566 U.S. at 79.

## II. DISCUSSION

Claim 109 recites:

109. A method for scheduling packets comprising:

> classifying a plurality of packets according to end-user quality of service (QoS) requirements of said plurality of packets; and
>
> scheduling said plurality of packets for communication in at least one of an upstream direction and a downstream direction over a shared wireless bandwidth according to a scheduling algorithm.

'206 Patent at 90:56–63.

T-Mobile argues that '206 Patent Claim 109 is directed to the "fundamental [abstract] concept of classifying information based on an end-user's service requirements and scheduling the information." (Dkt. No. 23 at 10.) Claim 109 is "so abstract," T-Mobile argues, "that it represents routine tasks that 'can be performed in the human mind, or by a human being using pen and paper.'" (*Id.* (quoting *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011)).)

> For example, a human can perform the "classifying" step by drawing a first packet and a second packet and grouping those packets into two classes, each associated with an end-user QoS requirement. A human can perform the "scheduling" step by writing a schedule for communicating the two packets (e.g., writing a time at which each packet should be sent). This series of mental steps—as recited in Claim 109—is performed using pen and paper in the following drawing:



(*Id.*) T-Mobile further analogizes Claim 109 to "classifying mail according to customer service requirements and scheduling the mail," a practice that "has been in existence in brick-and-mortar mail systems for hundreds of years." (*Id.* at 11 (citing to ancient Chinese dynasties, British postal laws from the 1700s and the United States Postal Service using different classes of mail).) T-Mobile asserts that the Federal Circuit has already determined that such systems are abstract. (*Id.* (citing *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1317 (Fed. Cir. 2016) (analogizing to a brick-and-mortar post office to find an abstract idea); *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988, 992 (Fed. Cir. 2014) (noting that "using categories to organize, store, and transmit information is well-established" and holding that the "idea of collecting information in classified form, then separating and transmitting that information according to its classification" was abstract); *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) (holding that "classifying and storing digital images in an organized manner"



(*Id.*) T-Mobile further analogizes Claim 109 to "classifying mail according to customer service requirements and scheduling the mail," a practice that "has been in existence in brick-and-mortar mail systems for hundreds of years." (*Id.* at 11 (citing to ancient Chinese dynasties, British postal laws from the 1700s and the United States Postal Service using different classes of mail).) T-Mobile asserts that the Federal Circuit has already determined that such systems are abstract. (*Id.* (citing *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1317 (Fed. Cir. 2016) (analogizing to a brick-and-mortar post office to find an abstract idea); *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988, 992 (Fed. Cir. 2014) (noting that "using categories to organize, store, and transmit information is well-established" and holding that the "idea of collecting information in classified form, then separating and transmitting that information according to its classification" was abstract); *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) (holding that "classifying and storing digital images in an organized manner"

was abstract)).) T-Mobile asserts that *In re TLI* is the most analogous case, as Claim 109 merely "substitutes the concept of 'scheduling information' for 'storing digital images.'" (*Id.* at 12.)

IV responds that T-Mobile's "simplistic postal system and pen-and-paper arguments" "trivialize[] the invention" and "'describe the claims at a high level of abstraction and untethered from the language of the claims.'" (Dkt. No. 32 at 7 (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016)).) Instead, IV argues that Claim 109 "overcomes a problem specifically arising in the realm of telecommunications" by "describ[ing] a technical environment that requires the presence of a wireless communication medium, packets, QoS parameters, and IP data streams. . . . Indeed, the claim makes no sense applied outside the specific environment disclosed." (*Id.* at 8.) IV asserts that Claim 109 addresses an existing problem in the art, namely that different types of data packets have different ideal quality of service ("QoS") settings, which results in suboptimal data flow when, for example, voice packets and data packets are transferred over the same connection. (*Id.* at 8–9.) "Claim 109 addresses this problem by requiring networks to classify a packet according to QoS requirements for an IP flow before scheduling." (*Id.* at 9.)

The Federal Circuit has held that "specific technologic modifications to solve a problem or improve the functioning of a known system generally produce patent-eligible subject matter." *Trading Techs. Int'l Inc. v. CQG, Inc.*, 675 F. App'x. 1001, 1004–05 (Fed. Cir. 2017). For example, claims "necessarily rooted in computer technology [that] overcome a problem specifically arising in the realm of computer networks" are patent eligible. *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). Similarly, process claims that use "a combined order of specific rules" to improve on existing technological processes are patent eligible. *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1315 (Fed. Cir. 2016) (holding that an algorithm to make digital faces more realistic was patent eligible).

The Court is persuaded that '206 Patent is directed to a technical solution to a technical problem. The background discusses the challenges that wireless networks face when delivering QoS and reveals much of the technical nature of these solutions. *See* '206 Patent at 3:60–4:30. The detailed description covers how QoS is defined in the data networking space, *id.* at 11:30–12:5, the different types of QoS in the prior art, *id.* at 12:6–14:25, and the desired improvements to the problems endemic in the existing prior art. *Id.* at 14:27–57. Further, the '206 Patent states that, "[b]ecause wireless systems have the added burden of high inherent [Bit Error Rate], the effect of network-wide congestion behavior on local (wireless media channel) congestion avoidance strategies must be properly gauged and countered. . . . With these considerations in mind, IP-centric wireless system design cannot be done with the conventional wireline system design approaches without resulting in very low system performance characteristics." *Id.* at 20:39–43, 20:48–51.

The '206 Patent is explicit in its solution to these problems. Indeed, the first sentence, covering the field of the invention, states "The present invention relates generally to telecommunications and, more particularly, *to a system and method for implementing a QoS aware wireless point-to-multi-point transmission system.*" '206 Patent at 3:37–41 (emphasis added). The "Summary of the Invention" states that "[t]he present invention is directed to an IP flow classification system used in a wireless telecommunications system. More specifically, the IP flow classification system groups IP flows in a packet-centric wireless point to multi-point telecommunications system." *Id.* at 4:36–40. Accordingly, the '206 Patent makes clear that the patented invention is directed towards a technological solution to these stated problems. Such solution is achieved by classifying, on a packet level, what the ideal quality of services characteristics are for each type of data in order to optimize data flow.

Under Rule 12(b)(6), the Court is required to take these affirmative statements as true. Accordingly, the Court finds that Claim 109 of the '206 Patent is directed to patent eligible subject matter, and Defendants have failed to show otherwise.

### III. CONCLUSION

Having carried the issue preclusion issue in light of Defendants' motion at Docket No. 20 and having found that the Defendants did not show that Claim 109 of the '206 Patent is directed to ineligible subject matter, the Court finds that the Motion is **CARRIED-IN-PART** and **DENIED-IN-PART**.

So ORDERED and SIGNED this 31st day of August, 2018.

*[Signature]*
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE