**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 2:17-cv-577 |
| | § | |
| T-MOBILE USA, INC., T-MOBILE US, INC., | § | |
| ERICSSON INC., and | § | |
| TELEFONAKTIEBOLAGET LM ERICSSON | § | |
| | § | |
| | § | |
| *Defendants*. | § | |
| | § | |

**<u>MOTION FOR PARTIAL SUMMARY JUDGMENT
THAT ASSERTED CLAIMS RECITING THE INDEFINITE
"OPTIMIZE" TERM ARE INVALID AS INDEFINITE</u>**

**TABLE OF CONTENTS**

I.   STATEMENT OF ISSUES TO BE DECIDED ................................................................ 1

II.  STATEMENT OF UNDISPUTED MATERIAL FACTS ............................................... 2

    A.  IV Continues to Assert Claims that Recite or Incorporate the "Optimiz[ing] . . . QoS" Term. ...................................................................................................... 2

    B.  The Federal Circuit Affirmed the Indefiniteness of the "Optimiz[ing] . . . QoS" Term in Light of the Shared Disclosure in a Related Proceeding. ............................. 2

III. APPLICABLE LAW ................................................................................................... 3

IV. ARGUMENT ................................................................................................................ 4

    A.  The Federal Circuit's Opinion Further Confirms the Indefiniteness of the Asserted Claims. ................................................................................................ 4

    B.  None of the Dependent Claims Provide Further Guidance on the Indefinite Subjective Term of Degree "Optimiz[ing] . . . QoS." ................................................ 7

    C.  Group 1: Dependent Claims that the Parties Agree Add Nothing to the Indefiniteness Analysis are Indefinite. ................................................................. 9

    D.  Group 2: Dependent Claims Related to Types of Flows or Applications, or to Determining QoS, Are Indefinite. ...................................................................... 9

    E.  Group 3: Dependent Claims Related to Classifying are Indefinite. ......................... 12

    F.  Group 4: Dependent Claims Related to Service Level Agreement (SLA) Based Priorities are Indefinite. ....................................................................................... 13

    G.  Group 5: Miscellaneous Additional Dependent Claims Are Indefinite. .................... 15

V.   CONCLUSION ........................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*,
   811 F.3d 1334 (Fed. Cir. 2016)..................................................................................1, 4

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018).......................................................................................8

*Chiron Corp. v. Genentech, Inc.*,
   363 F.3d 1247 (Fed. Cir. 2004).......................................................................................8

*Competitive Techs., Inc. v. Fujitsu Ltd.*,
   185 F. App'x 958 (Fed. Cir. 2006) .................................................................................8

*Datamize, LLC v. Plumtree Software, Inc.*,
   417 F.3d 1342 (Fed. Cir. 2005)......................................................................1, 3, 5, 6, 8

*Ibormeith IP, LLC v. Mercedes-Benz USA, LLC*,
   732 F.3d 1376 (Fed. Cir. 2013).......................................................................................8

*Intellectual Ventures I LLC v. T-Mobile USA, Inc.*,
   -- F.3d --, 2018 WL 4201163 (Fed. Cir. Sept. 4, 2018).........................................1, 3

*Interval Licensing LLC v. AOL, Inc.*,
   766 F.3d 1364 (Fed. Cir. 2014)....................................................................................3, 4

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   134 S. Ct. 2120 (2014)...........................................................................................4, 8, 9

*Williamson v. Citrix Online, LLC*,
   792 F.3d 1339 (Fed. Cir. 2015).......................................................................................8

STATUTES

35 U.S.C. § 112 ¶ 2..........................................................................................................1, 4, 8

35 U.S.C. § 112 ¶ 4.............................................................................................................4, 7

OTHER AUTHORITIES

Fed. R. Civ. P. 56(a) ...............................................................................................................3

ii

In *Intellectual Ventures I LLC v. T-Mobile USA, Inc.*, -- F.3d --, 2018 WL 4201163 (Fed. Cir. Sept. 4, 2018), the Federal Circuit determined that the disclosure of U.S. Patent No. 6,640,248 failed to provide reasonable certainty to a POSITA regarding the claim term "optimiz[ing] . . . QoS." Defendants explained during claim construction why that identical term—"optimiz[ing] . . . QoS"—recited in asserted claims in this case and relying on the same disclosure considered by the Federal Circuit, also is indefinite.

During the *Markman* hearing, IV retreated to arguing that certain dependent claims require a different analysis: Specifically, IV analogized to the indefinite term "aesthetically pleasing" from the Federal Circuit's *Datamize* case, arguing that a dependent claim that further required "make an aesthetically pleasing vase *by painting it blue*" would not be indefinite. Dkt. 151 at 27:8–20. *None* of the dependent claims in this case, however, further define what it means to "optimize . . . QoS." Instead, those claims merely recite additional requirements beyond the subjective "optimize . . . QoS" claim term, without defining how to optimize or how one can determine whether end-user QoS has been optimized. As a result, none of the various additional limitations found in those dependent claims can save them from the same fatal deficiency. "Indefiniteness is a question of law" decided by the court. *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1343 (Fed. Cir. 2016). Defendants move for summary judgment of indefiniteness of IV's asserted claims that recite the "optimiz[ing] . . . QoS" term.[1]

## I.     STATEMENT OF ISSUES TO BE DECIDED

Whether IV's asserted claims that recite the "optimiz[ing] . . . QoS" limitation are indefinite for failing to satisfy 35 U.S.C. § 112 ¶ 2.

---

[1] Pursuant to the Court's Order (Dkt. 149) to submit briefing regarding the indefiniteness of the "optimize" claim terms in light of the Federal Circuit's recent decision, Defendants file this motion for partial summary judgment of indefiniteness. And pursuant to the Court's Order, Defendants do not address their issue preclusion defense in this motion and reserve all rights to move for summary judgment on issue preclusion at a later time.

1

## II.    STATEMENT OF UNDISPUTED MATERIAL FACTS

The following facts are undisputed by the parties:

### A. IV Continues to Assert Claims that Recite or Incorporate the "Optimiz[ing] . . . QoS" Term.

1.    IV asserts infringement of four patents against T-Mobile and Ericsson: U.S. Patent No. 7,359,971 ("the '971 Patent"); U.S. Patent No. RE 46,206 ("the '206 Patent"); U.S. Patent No. 6,628,629 ("the '629 Patent"); and U.S. Patent No. 7,412,517 ("the '517 Patent") (collectively referred to as the "Asserted Patents").  Dkt. 1 ¶ 6.

2.    From the '971 Patent, IV asserts Claims 12, 14, 15, 18, 21, 22, 25, 27, 33 and 37. Dkt. 146.  From the '206 Patent, IV asserts Claims 1, 2, 6, 8, 9, 11, 15–20, 27, 29, 32–33, 38, 41, 44, 109, 111, 112, 114, 118, 120–123, 126, 129, 132–34, 140, 144, and 146.  Dkt. 146.

3.    Of IV's asserted claims, four claims expressly recite "optimiz[ing] . . . QoS." Claim 12 of the '971 Patent and Claim 121 of the '206 Patent recite "to optimize end-user quality of service (QoS) for an Internet Protocol (IP) flow."  Claim 1 of the '206 Patent recites "so as to optimize end-user quality of service (QoS) associated with said IP flow."  Claim 19 of the '206 Patent recites "so as to optimize end-user internet protocol (IP) quality of service (QoS)."  Defendants refer to these four claims as the "express optimize claims."

4.    The asserted claims that depend, directly or indirectly, from the express optimize claims also recite the "optimize . . . QoS" limitation, by virtue of their dependence from the express optimize claims.  Those claims are:  Claims 14, 15, 18, 21, 22, 25, 27, 33, and 37 of the '971 Patent; and Claims 2, 6, 8, 9, 11, 15–18, 20, 27, 29, 32–33, 38, 41, 44, 121–123, 126, 129, 132, 134 (collectively, "the dependent optimize claims").

### B. The Federal Circuit Affirmed the Indefiniteness of the "Optimiz[ing] . . . QoS" Term in Light of the Shared Disclosure in a Related Proceeding.

5.    On September 4, 2018, the Federal Circuit issued an opinion affirming the District

2

of Delaware's determination of invalidity for indefiniteness with respect to Claim 20 of U.S. Patent No. 6,640,248 ("the '248 Patent"). *See generally* Ex. 1, *Intellectual Ventures I LLC v. T-Mobile USA, Inc.*, -- F.3d --, 2018 WL 4201163 (Fed. Cir. Sept. 4, 2018).

6.    Claim 20 of the '248 Patent recites the function "so as to optimize end user application IP QoS requirements of said software application." *Id.* at *2.

7.    The Federal Circuit specifically recognized in its affirmance that "optimiz[ing] . . . QoS" (ellipses in original) rendered the claim function indefinite in light of the '248 Patent disclosure:

> We conclude that the "QoS requirements" are entirely subjective and user-defined. The '248 patent analogizes QoS to "a continuum, defined by what network performance characteristic is most important to a particular user" and characterizes it as "a relative term, finding different meanings for different users." '248 patent at 12:51–52, 62–65. "Ultimately," the '248 patent states, "the end-user experience is the final arbiter of QoS." *Id.* at 14:39–40.
>
> By the '248 patent's own terms, "optimiz[ing] . . . QoS" is a "term of degree" that, like the "aesthetically pleasing" limitation in *Datamize,* is "purely subjective" and depends "on the unpredictable vagaries of any one person's opinion." 417 F.3d at 1350–51. As in *Datamize,* merely understanding that "optimiz[ing] . . . QoS" relates to the end-user experience "fails to provide one of ordinary skill in the art with any way to determine whether" QoS has been "optimiz[ed]." We see no error in the district court's conclusion that this function is indefinite or that because the function is indefinite, there was no need to evaluate structure. We have similarly held a means-plus-function limitation indefinite without looking to structure where a term of degree in the function was sufficient to render the claim indefinite. *Interval Licensing*, 766 F.3d at 1369 n.4.

*Id.* at *6.

8.    The '248 Patent and the Asserted Patents in this case share the same disclosure with respect to the "optimiz[ing] . . . QoS" claim terms.

## III.    APPLICABLE LAW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

3

56(a).  "Indefiniteness is a question of law."  *Akzo Nobel Coatings*, 811 F.3d at 1343.  Under 35 U.S.C. § 112 ¶ 2, a patent claim "is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention."  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014).  Accordingly, "[t]he claims, when read in light of the specification and the prosecution history, must provide objective boundaries for those skilled in the art."  *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014) (internal quotations omitted).  "[A] term of degree fails to provide sufficient notice of its scope if it depends on the unpredictable vagaries of any one person's opinion."  *Id.*

Pursuant to 35 U.S.C. § 112 ¶ 4, "[a] claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers."

## IV.    ARGUMENT

### A.  The Federal Circuit's Opinion Further Confirms the Indefiniteness of the Asserted Claims.

The Federal Circuit's indefiniteness determination requires dismissal of the claims in this case that recite—either expressly or through incorporation—the indefinite "optimiz[ing] . . . QoS" limitation.  In its opinion, the Federal Circuit first "conclude[d] that the 'QoS requirements' are entirely subjective and user-defined."  Ex. 1 at *6.  In so concluding, the Federal Circuit quoted portions of the shared specification that "analogize[] QoS to 'a continuum, defined by what network performance characteristic is most important to a particular user' and characterize[] it as 'a relative term, finding different meanings for different users.'"  *Id.* The court further observed that "'[u]ltimately,' the '248 Patent states, 'the end-user experience is the final arbiter of QoS.'"  *Id*.

The Federal Circuit next specifically determined that "optimiz[ing] . . . QoS" fails under

*Datamize*, because "optimiz[ing] . . . QoS" is a subjective term of degree that depends on the unpredictable vagaries of any one person's opinion. *Id*. It also specifically found that a POSITA lacks "any way to determine whether QoS has been 'optimiz[ed].'" *Id*. at 15 (internal quotations to *Datamize* omitted).

The Federal Circuit's indefiniteness determination and underlying analysis directly apply to the claims that recite "optimiz[ing] . . . QoS" in this case. The claims in this case are understood in light of the same disclosure underlying the Federal Circuit's opinion, and the Federal Circuit's indefiniteness determination is wholly consistent with Defendants' indefiniteness analysis in this case. Specifically, Defendants have explained how the same portions of the intrinsic record relied on by the Federal Circuit, among others, render the claims indefinite. *Compare* Dkt. 118 at 6 (Defendants' Claim Construction Brief) *with* Ex. 1 at *6 (Federal Circuit opinion). Defendants have also explained how the "optimiz[ing] . . . QoS" term is a subjective term of degree that depends on the unpredictable vagaries of any one person's opinion, just as the Federal Circuit determined. *Compare* Dkt. 118 at 6, 10 *with* Ex. 1 at *6. And Defendants have explained and provided extrinsic record support that a POSITA lacks any way to determine whether QoS has been optimized, just as the Federal Circuit concluded. *Compare* Dkt. 118 at 6–7, 10 & Dkt. 118 Ex. 1 at ¶¶ 43–47 *with* Ex. 1 at *6. The table below illustrates how the Federal Circuit's opinion mirrors Defendants' analysis in this case:

| Defendants' Indefiniteness Arguments | Federal Circuit Opinion |
| --- | --- |
| "The specification explains that **QoS is a subjective term of degree, with a meaning that varies depending on the individual user**—it is **'a relative term, finding different meanings for different users.'** '206 Patent 11:41–42; '971 Patent 13:12–13. QoS is best understood **'as a continuum, defined by what network performance characteristic *is most important to a particular user* and the user's SLA.'** '206 Patent 11:51–54; '971 Patent 13:22–25. | "We conclude that the **'QoS requirements' are entirely subjective and user-defined**. The '248 patent analogizes QoS to **'a continuum, defined by what network performance characteristic is most important to a particular user'** and characterizes it as **'a relative term, finding different meanings for different users.'** '248 |

5

| | |
|---|---|
| **'Ultimately, the *end-user experience* is the final arbiter of QoS.'** '206 Patent 13:30–31; '971 Patent 15:2–23.  Thus, **when it comes to optimizing, the patents' QoS mechanism "provides the user with optimal service, *in whatever manner the user defines it*.'** '206 Patent 12:14–17; '971 Patent 13:52–55.<br><br>As Professor Rubin explains, 'the specification renders the standard for optimization completely unbounded as 'whatever manner the user defines it.'' Ex. 1 (Rubin Decl.) ¶ 45.  In light of the subjective, user-dependent understanding of end-user QoS in the intrinsic record, **a POSITA lacks reasonable certainty regarding how to perform the claimed optimization of end-user QoS, or to measure whether such optimization has been achieved**. *See id*. ¶¶ 43–47." <br>Dkt. 118 at 6–7 (bolding added). | Patent at 12:51–52, 62–65.  **'Ultimately,' the '248 patent states, 'the end-user experience is the final arbiter of QoS.'** *Id*. at 14:39–40.<br><br>By the '248 patent's own terms, **'optimiz[ing] . . . QoS' is a 'term of degree' that, like the 'aesthetically pleasing' limitation in *Datamize*, is 'purely subjective' and depends 'on the unpredictable vagaries of any one person's opinion.'** 417 F.3d at 1350–51.  As in *Datamize*, merely understanding that "optimiz[ing] . . . QoS" relates to the end-user experience **"fails to provide one of ordinary skill in the art with any way to determine whether"** QoS has been **"optimiz[ed]."** <br>Ex. 1 at *6 (bolding added). |

The portions of the intrinsic record relied on by the Federal Circuit and urged by Defendants render the express optimize claims and dependent optimize claims indefinite. None of the other limitations recited in those claims, and nothing in the specification or in the prosecution history, changes the patents' "entirely subjective and user-defined" understanding of QoS, or "provide[s] one of ordinary skill in the art with any way to determine whether QoS has been optimized." *See* Ex. 1 at *6. Accordingly, under the Federal Circuit's guidance, the "optimiz[ing] . . . QoS" terms here are indefinite for the reasons explained by Defendants in their claim construction briefing and hearing argument, and summary judgment is appropriate.

IV insists that this Court separately analyze the dependent optimize claims. But unless any of those claims lack written description support, any alleged guidance they provide also is reflected in the shared specification that the Federal Circuit already concluded failed to provide

6

reasonable certainty to a POSITA regarding "optimiz[ing] . . . QoS."[2]  Nothing recited in the independent or dependent claims (or prosecution history) changes the status of "optimiz[ing] . . . QoS" as a subjective term of degree or provides objective guidance to a POSITA for determining whether QoS has been optimized.  Put simply, none of the limitations in the dependent claims overcome the deficiencies identified by the Federal Circuit in finding "optimize . . . QoS" indefinite.

The Federal Circuit reviews the question of indefiniteness and the intrinsic record de novo.  Ex. 1 at *3 (reviewing indefiniteness de novo, and factual findings about extrinsic evidence for clear error).  IV cannot reasonably contend that upon de novo review of the indefiniteness question of the "optimiz[ing] . . . QoS" claims in this case (understood in light of the same disclosure), the Federal Circuit would reach a different result.  This Court should enter summary judgment of indefiniteness with respect to all asserted claims reciting (directly or by incorporation) the "optimize . . . QoS" term.

### B.  None of the Dependent Claims Provide Further Guidance on the Indefinite Subjective Term of Degree "Optimiz[ing] . . . QoS."

Summary judgment of indefiniteness is appropriate not only for the "express optimize claims," but also for the dependent optimize claims.  By statute, these dependent claims incorporate the "optimiz[ing] . . . QoS" limitation.  *See* 35 U.S.C. § 112 ¶ 4.  And none of these dependent claims add any further limitation, definition, or objective guidance to the indefinite "optimiz[ing] . . . QoS" limitation that they incorporate.  Even by the terms of IV's analogy at the *Markman* hearing, the dependent optimize claims are indefinite, because none of them require "optimize . . . QoS *by doing X*."  *See* Dkt. 151 at 27:9–20 (arguing that a dependent claim

---

[2] In other words, IV cannot have it both ways by arguing that there is written description support in the disclosure for these dependent claims on the one hand, but that these claims are not impacted by the Federal Circuit's indefiniteness analysis of the shared disclosure on the other.

requiring an "aesthetically pleasing" vase could be definite if it recited "make an aesthetically pleasing vase *by painting it blue*") (emphasis added).

IV demands a level of scrutiny that is not required by the law. Where, as here, "the validity challenges to the independent claims coincide[] with the validity challenges to the dependent claims," then "the sameness of the inquiries permit[] the treatment of all claims at once." *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1260 (Fed. Cir. 2004). And where, as here, the dependent claims do not add further limitation, definition, or objective guidance to the indefinite, subjective term of degree that they incorporate, courts may properly dismiss those claims without further analysis. *See, e.g.*, *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1363–64 (Fed. Cir. 2018) (finding independent and dependent claims indefinite, without separately analyzing indefiniteness of dependent claims beyond noting that they include the limitation at issue); *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347, 1356 (Fed. Cir. 2005) (finding independent and dependent claims indefinite without separately analyzing indefiniteness of dependent claims); *see also, e.g.*, *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1345, 1354 (Fed. Cir. 2015) (finding independent and dependent claims indefinite, without separately analyzing indefiniteness of dependent claims); *Competitive Techs., Inc. v. Fujitsu Ltd.*, 185 F. App'x 958, 960, 966 (Fed. Cir. 2006) (same); *Ibormeith IP, LLC v. Mercedes-Benz USA, LLC*, 732 F.3d 1376, 1378, 1382 (Fed. Cir. 2013) (same, and after noting defendant argued the independent claims were indefinite, observing that "[i]f so, the dependent claims 5 and 8 would also be invalid, because they incorporate the elements of independent claim 1").

As support, IV repeatedly points to the presumption of validity, but that presumption does not excuse IV from rebutting Defendants' indefiniteness showing. *Nautilus* makes clear that the "presumption of validity does not alter the degree of clarity that § 112 ¶ 2 demands from

8

patent applications." *See Nautilus*, 134 S. Ct. at 2130 n.10.  The dependent optimize claims, like the express optimize claims, fail to satisfy those demands.

### C.  Group 1: Dependent Claims that the Parties Agree Add Nothing to the Indefiniteness Analysis are Indefinite.

Both parties agree that there is a group of dependent claims that need no further analysis—they rise or fall with the express optimize claims.  This group contains '971 Patent Claims 14, 21, and 27 and '206 Patent Claims 2, 6, 8, 9, 11, 17, 18, 122, and 134.[3]  Even IV agrees that the additional limitations recited in these claims cannot render the "optimiz[ing] . . . QoS" term definite.  That term, incorporated into the dependent claims of Group 1, is indefinite for the same reasons explained in Defendants' claim construction briefing and at the *Markman* hearing with respect to the "optimiz[ing] . . . QoS" terms in the express optimize claims.

### D.  Group 2: Dependent Claims Related to Types of Flows or Applications, or to Determining QoS, Are Indefinite.

Claims 20, 27, 29, 123, 126, and 132 of the '206 Patent and Claims 15 and 22 of the '971 Patent recite generically determining QoS requirements or recite specific types of flows or applications.  These claims make up Defendants' Group 2 and correspond to IV's '971 Patent Groups II and IV, and '206 Patent Groups III, VII, VIII, and X.  These claims are indefinite because they incorporate the subjective term of degree ("optimiz[ing] . . . QoS") and they do nothing to change the patents' "entirely subjective and user-defined" understanding of QoS, or "provide one of ordinary skill in the art with any way to determine whether QoS has been optimized." *See* Ex. 1 at *6.

***Dependent Claim 20*** of the '206 Patent recites performing one of "identifying," "characterizing," "storing," or "prioritizing" an IP flow.  This claim says nothing about QoS, and

---

[3] IV identifies these claims as '971 Patent Group I, and '206 Patent Groups I, and VI. Defendants refer to these claims collectively as "Group 1."  The parties' groupings and full language of the dependent claims are provided in Ex. 2, Defendants' Appendix.

it provides no information about how one determines whether QoS has been optimized. It does not appear that IV even had a basis for requiring the Court to further consider this claim.

***Dependent Claims 27 and 29 of the '206 Patent*** generically recite determining a QoS requirement for an IP flow, but provide no information on how to *optimize* that QoS. *See* Dkt. 118 at 4 n.4; Dkt. 118 Ex. 1 (Rubin Decl.) ¶¶ 34, 46–47, 50–51. As the patent explains, regardless of the factors that can affect the operation of the QoS mechanism, *ultimately it is up to the individual user to define* what it considers *optimized* QoS:

> Ideally, the nature of the data traffic, the demands of the users, the conditions of the network, and the characteristics of the traffic sources and destinations all modify how the QoS mechanism is operating at any given instant. Ultimately, however, it is desirable that the QoS mechanism operate in a manner that provides the user with *optimal service, in whatever manner the user defines it*.

'206 Patent at 12:10–18. Generically reciting "determining a QoS requirement for said IP flow" adds nothing to the definiteness of the separately-recited "optimize . . . QoS," which the Federal Circuit recognizes as "entirely subjective and user-defined." *See* Ex. 1 at \*6.

***Claim 15 of the '971 Patent and Claim 126 of the '206 Patent*** recite similar limitations for purposes of analyzing the indefiniteness issue: "[determines / determining] whether said IP flow is [at least one of a] jitter-sensitive [IP flow and a latency sensitive IP flow]." It is unclear why IV did not concede that these claims rise and fall with the independent claims, as Claim 12 of the '971 Patent already recited that the "IP flow is associated with at least one of a latency-sensitive and a jitter-sensitive application." The mere step of affirmatively *determining* that the flow is latency- or jitter-sensitive adds nothing to the question of how one determines whether QoS for that flow has been *optimized*; an issue that by the terms of the patent (and as recognized by the Federal Circuit) is purely defined by the user's preferences.

Similarly, for ***Claim 123 of the '206 Patent***, it is unclear why IV did not concede that this claim rises and falls with the Court's analysis of independent Claim 12 of the '971 Patent. Both

claims provide details of reserving slots in future transmission frames, and no claim or any other disclosure in the patent defines "optimizing . . . QoS" as using reservations in future transmission frames. To the contrary, Claim 121 of the '206 Patent (from which Claim 123 depends) recites that one of the "scheduling" steps in the claim is to "optimize . . . QoS," while dependent Claim 123 adds that *another* scheduling step "*further* comprising" the claimed reservations of future slots. '206 Patent 91:58. Claim 123 does not define what optimization is, it merely adds additional requirements beyond the subjective "optimiz[ing] . . . QoS" requirement.

Both ***Claim 22 of the '971 Patent and Claim 132 of the '206 Patent*** require said IP flow to be associated with at least one of a voice-over-Internet Protocol (VoIP) data and a video data application. Limiting the claims to a system where at least one flow is associated with a VoIP or video data application does not provide objective guidance to a POSITA regarding the claimed optimization. According to the patents, different applications may have different QoS, but that QoS dynamically changes as network load, congestion, and error rates of the system change:

> For some applications, the best measure of QoS can be the optimization of both speed and error . . . It is desired that an IP-centric wireless broadband access system provide a QoS mechanism that can dynamically optimize system behavior to each particular IP flow, and can also adapt to changes with changing network load, congestion, and error rates.

'206 Patent 13:34–43; *see also* Dkt. 118 Ex. 1 (Rubin Decl.) ¶¶ 45–47. The patents explain that, "[i]deally, the nature of the data traffic, the demands of the users, the conditions of the network, and the characteristics of the traffic sources and destinations all modify how the QoS mechanism is operating at any given instant." '206 Patent 12:10–14. As Defendants explained in their claim construction briefing, although different application types "may have different QoS, ultimately it is up to the individual user to define what the particular user views as an optimized balance of QoS among the competing traffic." Dkt. 118 at 9. As the patents provide, "[u]ltimately," the QoS mechanism "provides the user with optimal service, in whatever manner the user defines it."

11

'206 Patent 12:14–17.  The claims in Defendants' Group 2 do not add any definitions of what it means to "optimize . . . QoS" and, therefore, are indefinite.

### E.  Group 3: Dependent Claims Related to Classifying are Indefinite.

Claims 25, 33, and 37 of the '971 Patent and Claims 32 and 33 of the '206 Patent relate to classifying based on QoS and are indefinite.  These claims make up Defendants' Group 3, which corresponds to IV's '971 Patent Group V and '206 Patent Group IV.

*Claim 25 of the '971 Patent and Claims 32 and 33 of the '206 Patent* recite similar language regarding QoS; none discuss optimizing QoS, instead Claims 25 and 32 merely recite classifying a packet or plurality of packets based on QoS, and Claim 33 generically recites "taking into account" QoS class groupings.  Requiring "classifying" based on QoS or "taking into account" QoS groupings does not change the patents' "entirely subjective and user-defined" understanding of QoS, or "provide one of ordinary skill in the art with any way to determine whether QoS has been optimized."  *See* Ex. 1 at *6.

These claims present a similar issue to IV's proposed construction of "optimiz[ing] . . . QoS" during claim construction—differentiating based on traffic or service type and allocating different levels of resources.  *See* Dkt. 118 at 7–10; Dkt. 118 Ex. 1 (Rubin Decl.) ¶¶ 49–54.  Like IV's proposed construction, the mere act of classifying packets based on QoS, or allocating resources based on QoS does nothing to inform *how* to determine whether QoS has been *optimized*.  As Defendants explained in their claim construction briefing, "[t]he bare step of classification does not inform how to assess competing demands on system resources and allocate in a manner that achieves optimization of end-user QoS, let alone how a POSITA would objectively measure whether end-user QoS has been optimized as required by the claims."  Dkt. 118 at 9 (citing Dkt. 118 Ex. 1 (Rubin Decl.) ¶¶ 50–53).

*Claims 33 and 37 of the '971 Patent*, which depend from '971 Patent Claim 25, rise and

12

fall with Claim 25.  *See* Ex. 3 (grouping these claims).  Claim 33 requires the scheduler of Claim 25 to coordinate and control access to resources by network stations by receiving reservation requests and receiving grants.  By its plain language, this claim does not further define the indefinite "optimiz[ing] . . . QoS" limitation.  Claim 37 requires that coordinated access to "ensure[] high priority packets are provided *appropriate bandwidth* needed by said high priority packets."  Again, this limitation makes no reference to the "optimiz[ing] . . . QoS" limitation.  In fact, the patents explain that merely providing appropriate bandwidth for packets is *not* optimizing QoS.  '206 Patent 13:17–18 ("Simply providing *'adequate' bandwidth is not a sufficient QoS mechanism* for packet-switched networks, and certainly not for wireless broadband access systems.").  Further confirming that this claim element is unrelated to optimizing QoS, Claim 144 of the '206 Patent recites identical language to that in Claim 37, and Claim 144 does *not* depend from a claim that recites the "optimiz[ing] . . . QoS" limitation.

Claims 25, 33, and 37 of the '971 Patent and Claims 32 and 33 of the '206 Patent do not change the subjective and indefinite nature of the "optimiz[ing] . . . QoS" term they recite.

### F.  Group 4: Dependent Claims Related to Service Level Agreement (SLA) Based Priorities are Indefinite.

*Claim 18 of the '971 Patent and Claims 38, 41, 44, and 129 of the '206 Patent* recite limitations related to an additional requirement of using service level agreement (SLA) prioritization.  These claims make up Defendants' Group 4, which corresponds to IV's '971 Patent Group III, and '206 Patent Groups V and IX.

Claim 18 of the '971 Patent and Claims 38 and 129 of the '206 Patent recite similar limitations.  Beyond the requirement in the express optimize claims of "optimiz[ing] . . . QoS," these claims "*further* comprise . . . [determining and] [taking into account / accounting for] service level agreement (SLA) based priorities [of / for] said IP flow."  Claim 41 requires

"prioritizing said IP flow based on priorities of a service level agreement (SLA) for SLA subscribers," and Claim 44 simply identifies three general SLA-based service level tiers (premium, normal, and value). IV concedes by its groupings that Claims 41 and 44 rise and fall with Claim 38. *See* Ex. 3 (grouping these claims). Defendants agree that Claims 41 and 44 are indefinite for the same reasons as at least Claim 38 (and '971 Patent Claims 18 and 129), none of which define how to determine whether "optimiz[ing] . . . QoS" has been performed.

According to the patents, SLAs are known as a blunt device that telecommunication providers can use to provide general tiers of service to users. *See* '206 Patent 13:53–14:8. Users can pay different amounts of money for different tiers of service, such as premium service, normal service, or value service. *See id.*; *see also* '206 Patent Claim 44; *id.* at 64:31-33 (users can be "provided a higher quality of telecommunications service by, for example, paying additional money to receive such premium service"). Using SLA-based prioritization, *all flows* from a particular user can be prioritized over all flows of another user, regardless of the types of applications or the QoS requirements of those applications. *Id.* at 51:56–60 (explaining how, using SLA-based prioritization, "a subscriber who has purchased a premium SLA service agreement" can have all flows, including its low priority traffic, "scheduled at a higher priority than high priority traffic from a subscriber which [sic] has only signed up for value level or low cost SLA service priority"). The patents explain, therefore, SLAs are often "a rather crude measure of service performance." *Id.* at 13:59–62.

The dependent claims at issue do not identify use of SLA-based priorities as a further limitation to the "optimiz[ing] . . . QoS" claim limitation, but instead identify use of SLA-based priorities as something to be done *in addition* to the "optimiz[ing] . . . QoS." Moreover, these dependent claims generically recite using "service level agreement (SLA) based priorities,"

14

without limitation to any particular embodiment, and without limitation to SLAs with any particular characteristics (other than '206 Patent Claim 44, which recites three broad service-level tiers, premium, normal, and value). A generalized requirement to prioritize based on SLAs recited in these claims does not define or provide objective guidance to a POSITA regarding how to *optimize* end-user QoS, let alone optimizing QoS for any particular flow. According to certain embodiments, prioritizing based on SLAs can simply mean giving higher priority to users who pay more money, regardless of QoS considerations for any flows. *See, e.g.*, '206 Patent 51:56–60, 64:31–33.

Dependent Claim 18 of the '971 Patent and 38, 41, 44, and 129 of the '206 Patent are indefinite, because they recite (by incorporation) the subjective "optimiz[ing] . . . QoS" limitation, and they fail to specify how to determine whether QoS for any particular flow has been optimized.

### G.  Group 5: Miscellaneous Additional Dependent Claims Are Indefinite.

Defendants' Group 5 consists of Claims 15 and 16 of the '206 Patent and corresponds to IV's '206 Patent Group II. Neither Claim 15 or 16 adds objective guidance to a POSITA regarding the claimed optimization. Claim 15 requires "allocating said shared wireless bandwidth to one or more control packets." Claim 16 depends from Claim 15 and requires allocating at least one among a list of different slot types. Neither claim adds definition or objective guidance to the "optimiz[ing] . . . QoS" limitation. Accordingly, Claims 15 and 16 of the '206 Patent are indefinite.

## V.    CONCLUSION

Summary judgment that the asserted optimize claims ('971 Patent Claims 12, 14–15, 18, 21–22, 25, 27, 33, and 37, and '206 Patent Claims 1, 2, 6, 8–9, 11, 15–20, 27, 29, 32–33, 38, 41, 44, 121–123, 126, 129, 132, and 134) are invalid as indefinite is appropriate.

15

Dated:  September 21, 2018

Asim M. Bhansali
  State Bar No. 90001290
  E-mail:  abhansali@kblfirm.com
Kate E. Lazarus
  *Admitted Pro Hac Vice*
  E-mail:  klazarus@kblfirm.com
**KWUN BHANSALI LAZARUS LLP**
555 Montgomery Street, Suite 750
San Francisco, California, 94111
Telephone: (415) 630-2350

R. Adam Lauridsen
  *Admitted Pro Hac Vice*
  E-mail:  alauridsen@keker.com
**KEKER, VAN NEST & PETERS LLP**
633 Battery Street
San Francisco, CA 94111
Telephone: (415) 391-5400
Facsimile: (415) 397-7188


**ATTORNEYS FOR T-MOBILE USA,
INC. and T-MOBILE US, INC.**

Respectfully submitted,

By: */s/ Douglas M. Kubehl*
Douglas M. Kubehl
  Texas State Bar No. 00796909
  E-mail:  doug.kubehl@bakerbotts.com
Jeffery S. Becker
  Texas State Bar No. 24069354
  E-mail:  jeff.becker@bakerbotts.com
Johnson K. Kuncheria
  Texas State Bar No. 24070092
  Email: johnson.kuncheria@bakerbotts.com
Harrison G. Rich
  Texas State Bar No. 24083730
  E-mail:  harrison.rich@bakerbotts.com
Steven T. Jugle
  Texas State Bar No. 24083280
  E-mail:  steven.jugle@bakerbotts.com
Megan V. LaDriere
  Texas State Bar No. 24083348
  E-mail:  megan.ladriere@bakerbotts.com
Melissa L. Butler
  Texas State Bar No. 24097442
  E-mail:  melissa.butler@bakerbotts.com
**BAKER BOTTS L.L.P.**
2001 Ross Avenue
Dallas, Texas 75201
Telephone: (214) 953-6500
Facsimile: (214) 953-6503

Melissa R. Smith
  Texas State Bar No. 24001351
  E-mail:  melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile:  (903) 934-9257


**ATTORNEYS FOR T-MOBILE USA,
INC., T-MOBILE US, INC,
TELEFONAKTIEBOLAGET LM
ERICSSON, AND ERICSSON INC**

16

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on September 21, 2018.

*/s/ Douglas M. Kubehl*
Douglas M. Kubehl