**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 2:17-cv-577 |
| | § | |
| T-MOBILE USA, INC., T-MOBILE US, INC., | § | **FILED UNDER SEAL** |
| ERICSSON INC., and | § | |
| TELEFONAKTIEBOLAGET LM ERICSSON | § | |
| | § | |
| | § | |
| *Defendants*. | § | |
| | § | |

**DEFENDANTS' *DAUBERT* MOTION TO STRIKE PORTIONS OF THE VALIDITY
REPORT OF DR. TIM A. WILLIAMS FOR PRESENTING IMPROPER CLAIM
CONSTRUCTION OPINIONS**

# TABLE OF CONTENTS

**Page**

I.    BACKGROUND ........................................................................................................ 2

II.   APPLICABLE LAW ............................................................................................... 5

III.  ARGUMENT............................................................................................................ 6

    A.  Dr. Williams' Constructions Are Confusing, Depart from the Terms' Plain Meanings, and Import Preferred Embodiments to Create Improperly Narrow Interpretations. ........................................................................................................ 7

        i.    "packet" and "packet-centric" (all remaining asserted claims) ........................... 7

        ii.   "reservation algorithm" ('629, Claim 1)............................................................ 10

        iii.  "scheduling" ('206, Claim 109)......................................................................... 10

    B.  Dr. Williams' Does Not Apply the Same Constructions in His Opening Report, Further Underscoring the Unreliability of His Opinions. ........................................... 10

    C.  Dr. Williams' Claim Constructions for Various Terms Are Untimely. .................... 11

    D.  The Proper Remedy Here is Exclusion, Not Additional Claim Construction Which Would Only Reward IV's Untimeliness to the Prejudice of Defendants. ..... 12

IV.   CONCLUSION...................................................................................................... 13

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Biscotti Inc. v. Microsoft, Inc.*,
Case No. 13-cv-01015-JRG-RSP (E.D. Tex. May 26, 2017) (Payne, J.) .................................6

*Canrig Drilling Tech. Ltd. V. Trinidad Drilling L.P.*,
No. CV H-15-0656, 2016 WL 7188657 (S.D. Tex. Dec. 12, 2016) ........................................5

*Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C.*,
482 F.3d 1347 (Fed. Cir. 2007) .......................................................................................6, 13

*Cordis Corp. v. Boston Scientific Corp.*,
561 F.3d 1319 (Fed. Cir. 2009) .......................................................................................5, 12

*CytoLoxic Corp. v. Ventana Medical Systems, Inc.*,
424 F.3d 1168 (Fed. Cir. 2005) ....................................................................................5, 7, 9

*Daubert v. Merrel Dow Pharms, Inc.*,
509 U.S. 579 (1993) ...............................................................................................................5

*Ericsson Inc. v. TCL Comm'n Tech Holdings, Inc.*,
2017 WL 5137401 (E.D. Tex. Nov. 4, 2017) (Payne, J.) ...................................................6, 13

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999) ...............................................................................................................6

*Liquid Dynamics Corp. v. Vaughn Co., Inc.*,
449 F.3d 1209 (Fed. Cir. 2006) .............................................................................................5

*Markman. PACT XPP Techs., AG v. Xilinx, Inc.*,
No. 2:07-CV-563-RSP, 2013 WL 4574267 (E.D. Tex. Aug. 27, 2013) (Payne, J) ...............................................................................................................................7

*Not Dead Yet Mfg., Inc. v. Pride Sols.*,
LLC, 222 F. Supp. 3d 657 (N.D. Ill. 2016) .............................................................................5

*O2 Micro Int'l Ltd. v. Beyond Innov. Tech. Co.*,
521 F.3d 1351 (Fed. Cir. 2008) .....................................................................................7, 9, 13

*Symantec Corp. v. Computer Assocs. Int'l, Inc.*,
522 F.3d 1279 (Fed. Cir. 2008) .......................................................................................4, 11

*Vitronics Corp v. Conceptronic, Inc.*,
90 F.3d 1576 (Fed. Cir. 1996) ...............................................................................................8

**OTHER AUTHORITIES**

FED. R. EVID. 403 ............................................................................................................9

Fed. R. Evid. 702 ............................................................................................................5

Defendants[1] move to strike and exclude portions of the October 31, 2018 Rebuttal Expert Report of Dr. Timothy A. Williams that improperly (and for the first time) offer claim construction opinions that were not timely disclosed by IV during the claim construction process and that admittedly are not the ordinary meanings of those terms.

The Local Rules and the Court's Docket Control Order promote orderly resolution of patent disputes and require all parties to identify in a timely manner all claim terms needing construction. IV has been in possession of Defendants' prior art and invalidity contentions since at least January 9, 2018, and Dr. Williams directly participated in the claim construction process beginning in July 2018 by submitting his first of multiple claim construction declarations in this case. Dr. Williams conceded in his recent deposition that, by that time—in fact beginning in the Spring of 2018—he already had been actively reviewing the same prior art that is the subject of his rebuttal expert report containing his improper claim construction opinions. Ex. 1 (Deposition of Dr. Tim Williams 11.13.2018 and 11.14.2018 ) ("Williams Dep."), 245:15-246:1 (conceding he spent over 100 hours reviewing that same prior art beginning Spring 2018). None of Dr. Williams' claim construction declarations included any of the claim construction positions he now opines upon. IV could have timely identified any claim construction issues supporting its validity positions during claim construction. Dkt. 58 (establishing August 22, 2018 as the 4-5(d) deadline for the September 5, 2018 Markman Hearing). Instead, IV chose to delay disclosing its validity-related claim constructions by introducing them for the first time in Dr. Williams' rebuttal report on validity.

Dr. Williams' late-disclosed claim construction opinions are likely to confuse the jury

---

[1] "Defendants" collectively refers to Defendants T-Mobile USA, Inc. and T-Mobile US Inc. (collectively "T-Mobile") and Defendants Ericsson Inc. and Telefonaktiebolaget LM Ericsson (collectively "Ericsson").

because they conflict with the descriptions in the patent and with the ordinary meanings of the terms (which Dr. Williams himself acknowledges) and may be properly excluded under the standards set forth for the admissibility of expert testimony.  The Court should therefore strike and exclude the portions of his rebuttal report and any testimony he seeks to offer on validity issues that include these improper claim construction opinions, including paragraphs 38-60, 73-74, 88, and 771-772, as well as the portions of the report that rely on those opinions, including at least paragraphs 83, 90, 96-97, 101, 113-115, 146, 148-150, 156, 160, 164-165, 174, 183, 197, 204-205, 209, 216-217, 219, 222, 530-536, 546, 552, 558, 571-573, 583, 595-596, 599, 602, 606, 619-626, 663-668, 695-696, 773-782, 784, 786, 811, 816-818, 825-831, 863-867, 870, 872, 882, 884, 886, 894-897, 923-924, 926, 930-931, 947, 951, and 996.

## I.     BACKGROUND

IV filed this case on August 9, 2017, accusing each Defendant of infringing four related patents: U.S. Patent Nos. 6,628,629 ("the '629 Patent"), 7,359,971 ("the '971 Patent"), 7,412,517 ("the '517 Patent"), and RE 46,206 ("the '206 Patent").  Defendants notified Plaintiff of their initial invalidity positions by service of their invalidity contentions on January 9, 2018.[2]  Dr. Williams conceded in his recent deposition that beginning in the Spring of 2018 he was analyzing the prior art and spent at least 100 hours doing so.  Ex. 1 (Williams Dep.), at 245:15-246:1.

In accordance with the Docket Control Order, the parties exchanged Local Rule 4-1 statements on May 2, 2018 and Local Rule 4-2 statements on May 23, 2018.  Dkt. 58.  IV's 4-2 statements represented that IV believed each identified claim term had its plain and ordinary meaning, and IV identified Dr. Williams as an expert who would testify on those plain meanings.

---

[2] By agreement of the parties, Defendants served supplemental invalidity contentions on June 26, 2018 and August 31, 2018.

2

Ex. 2 (IV's June 6, 2018 4-2 statement).  Specifically, with respect to the term "plurality of packets," IV represented that the term "packet" has its plain and ordinary meaning and identified Dr. Tim Williams as an expert who would so testify.  *Id.* at 9.  Similarly, with respect to a claim term that included the term "reservation algorithm," IV represented that the term had its plain and ordinary meaning and identified Tim Williams as an expert who would so testify.  *Id.* at 6 (addressing claim term "means for applying an advanced reservation algorithm").  IV's Rule 4-3 statement and its 4-5(d) filing with this Court continued with its representation that these terms had their plain and ordinary meanings.  Dkt.110-3 (4-3 Statement) at 14 ("packets" has its "plain meaning"), 8 ("reservation algorithm" has its "plain meaning"); Dkt. 128-1 (4-5 Statement) at 9 ("packets" has its "plain meaning").  Dr. Williams submitted multiple declarations in support of IV's claim construction positions and, consistent with IV's representations in its 4-2, 4-3, and 4-5 statements, Dr. Williams never opined that any of the claim terms in any of the asserted patents had anything but their ordinary meanings.  Dkt. 111-10 (Williams Decl. July 10, 2018); Dkt. 126-10 (Williams Decl. Aug. 20, 2018).

The Court held a Markman hearing on September 5, 2018.  The Court issued its Claim Construction Order on November 6, 2018.  (Dkt. 197).  Fact discovery is closed, the parties have completed expert discovery, and the parties are in the process of providing pretrial disclosures.  Jury selection is set for February 4, 2019.  Dkt. 191.

Despite directly participating in the claim construction process already having analyzed the prior art at issue, Dr. Williams offers for the first time in his October 31, 2018 rebuttal expert report non-ordinary meanings of the claim terms "packet," "packet-centric," "reservation algorithm," and "scheduling," improperly opining that all of these terms have meanings other than their ordinary meanings, and that at least some of these terms have meanings dictated by

doctrines of disclaimer and lexicography. Tellingly, Dr. Williams earlier had submitted an opening expert report on the issue of infringement, and in that report said nothing about non-ordinary meanings of these claim terms nor did he apply his non-ordinary meanings of the terms to his infringement analysis. *See*, *e.g.*, Ex. 5 (Williams Infringement Report), at ¶ 136 (not applying any construction to the claimed "reservation algorithm"); Ex. 6, Williams' Infringement Report 2, ¶¶ 58-63 (not applying any construction to the claimed "packet-centric" system). Although it is well established that "the same construction governs for validity determinations as for infringement determinations," Williams ignores this principle by applying separate constructions for each, thus highlighting the unreliability of his opinions. *Symantec Corp. v. Computer Assocs. Int'l, Inc.*, 522 F.3d 1279, 1298 (Fed. Cir. 2008).

Equally as telling, IV offered three of these four constructions to the PTAB when IV attempted to resist IPRs filed against these patents,[3] and the PTAB uniformly rejected all of those constructions under the *Phillips* claim construction standard.[4]

The time has passed for raising claim construction issues based on terms the Court already has looked at, and in any event Dr. Williams' is not qualified to render these claim

---

[3] *See* Ex. 7 (Patent Owner Preliminary Response to '517 IPR Petition) at 12-22 (arguing for a construction of "packet-centric" that excludes "circuit-centric" systems such as ATM systems) *id.* at 22-28 (arguing for a construction of "packet" that excludes ATM cells); Ex. 8 (Patent Owner Preliminary Response to '629 IPR Petition) at 26-27 (arguing for a construction of "packet" that excludes ATM cells and requires a "packet-centric network"); Ex. 9 (Patent Owner Preliminary Response to '206 IPR Petition) at 27-33 (arguing that "scheduling" of the claim requires more than "unscheduled queuing" and includes assigning particular slots or subframes to packets).

[4] *See, e.g.*, Ex. 10 ('517 Institution Decision) at 7-11 (finding that the preamble language "packet-centric" is not entitled to patentable weight and disagreeing with Patent Owner that "packet-centric" excludes an ATM circuit-centric network); *id.* at 11-14 (rejecting Patent Owner's argument that "packet" excludes ATM cells); Ex. 11 ('629 Institution Decision) at 14-15 (rejecting Patent Owner's argument that "packet" excludes ATM cells); Ex. 12 ('206 Institution Decision) at 13-15 (rejecting Patent Owner's argument "scheduling" requires assigning time slots or subframes to data packets).

construction opinions to the jury. Dr. Williams has other alleged distinctions regarding certain prior art, beyond these claim terms. The Court should strike those portions of Dr. Williams' report that attempt to offer claim construction positions, or that rely on those claim construction positions, for the terms "packet," "packet-centric," "scheduling," and "reservation algorithm."

## II.    APPLICABLE LAW

Under Federal Rule of Evidence 702, any expert testimony offered must "help the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702. An expert opinion must also be relevant and reliable to be admissible. *Daubert v. Merrel Dow Pharms, Inc.*, 509 U.S. 579, 592-93 (1993).

Regarding expert opinions on claim construction, the Federal Circuit has specifically held that "it is improper to argue claim construction to the jury because '***the risk of confusing the jury is high*** when experts opine on claim construction.'" *Cordis Corp. v. Boston Scientific Corp.*, 561 F.3d 1319, 1337 (Fed. Cir. 2009) (finding the district court properly excluded accused infringer's attempts to argue claim construction before the jury) (emphasis added); *CytoLogix Corp. v. Ventana Medical Systems, Inc.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005) ("The risk of confusing the jury is high when experts opine on claim construction before the jury even when, as here, the district court makes clear to the jury that the district court's claim constructions control."); *see also Liquid Dynamics Corp. v. Vaughn Co., Inc.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006) (concluding that the district court properly excluded expert testimony as irrelevant because it was "based on an impermissible claim construction" that could "prejudice and confuse the jury"). Further, Courts routinely strike portions of an expert's report and/or testimony when the expert's supposed opinion is in reality an improper attempt to argue claim construction to the jury. *See., e.g., Canrig Drilling Tech. Ltd. V. Trinidad Drilling L.P.*, No. CV H-15-0656, 2016 WL 7188657, at *6 (S.D. Tex. Dec. 12, 2016) (citing *CytoLogix Corp.*, 424 F.3d at 1172); *Not*

*Dead Yet Mfg., Inc. v. Pride Sols.*, LLC, 222 F. Supp. 3d 657, 662 (N.D. Ill. 2016) (concluding that "because Dr. Elder's opinion concerning the meaning of 'support member' is an improper attempt at claim construction, it must be excluded").

Claim construction disputes can often arise between the parties after the ordinary claim construction process. *See Biscotti Inc. v. Microsoft, Inc.*, Case No. 13-cv-01015-JRG-RSP, at 4-5 (E.D. Tex. May 26, 2017) (Payne, J.). The trial court can address such disputes in one of two ways (1) by finding a waiver for failing to raise the issue in claim construction or (2) by ordering additional claim construction. *Id.* However, the "failure to timely raise these claim construction arguments should ordinarily result in waiver of the arguments." *Ericsson Inc. v. TCL Comm'n Tech Holdings, Inc.*, 2017 WL 5137401, at *15 (E.D. Tex. Nov. 4, 2017) (Payne, J.) (citing *Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007)). District courts are accorded broad discretion in making Rule 702 determinations. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) ("[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.").

## III.   ARGUMENT

Each of the remaining asserted claims recites one or more "packets." Specifically, the '629 Patent Claim 1 recites, "a first data *packet* of an IP flow" and "a second data *packet* of said IP flow," and a "reservation algorithm." The '517 Patent Claim 1 recites "analyzing contents of *packets*" and "analyzing reservation requests for *packets*." Notably, only the *preamble* of Claim 1 of the '517 Patent recites the term "*packet-centric*"— this term is found in no other remaining asserted claim of any remaining patent. Claim 109 of the '206 Patent recites, in part, "classifying a plurality of *packets*" and "*scheduling* said plurality of *packets*."

In his October 31, 2018 rebuttal validity report, Dr. Williams offers a non-plain meaning

6

construction for the terms "packet," "packet-centric," "reservation algorithm" and "scheduling." Dr. Williams' late-disclosed claim construction opinions should be excluded because they are inconsistent with IV's earlier representations that these terms have their ordinary meanings and because, in any event, Dr. Williams is not qualified to opine on the correct non-ordinary construction of these terms.

### A. Dr. Williams' Constructions Are Confusing, Depart from the Terms' Plain Meanings, and Import Preferred Embodiments to Create Improperly Narrow Interpretations.

The Federal Circuit recognizes the inherent unreliability of expert opinions on claim construction issues. *See CytoLoxic Corp.*, 424 F.3d at 1172. Here, Dr. Williams' constructions are similarly unreliable and confusing because—as Dr. Williams admits—they depart from plain meaning and improperly rely on an application of the claim construction principles of lexicography and disclaimer. The application of such claim construction principles, however, is a role reserved exclusively for the court under *Markman*. *PACT XPP Techs., AG v. Xilinx, Inc.*, No. 2:07-CV-563-RSP, 2013 WL 4574267, at *1 (E.D. Tex. Aug. 27, 2013) (Payne, J) (citing *O2 Micro Int'l Ltd. v. Beyond Innov. Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008)) ("However, whether statements made during prosecution had the effect of disclaiming claim scope is a claim construction issue for the Court to decide, and disputes over the proper scope and construction of the claims should not be presented to a jury for resolution in the first instance."). Moreover, Dr. Williams' proposed constructions should be rejected because they rely on selectively importing preferred embodiments from the specification and expressly excluding others.

### i. "packet" and "packet-centric" (all remaining asserted claims)

*First*, Dr. Williams offers claim construction opinions regarding the non-ordinary meaning of the term "packet" in the context of the asserted patents—a term that IV repeatedly

7

represented in the claim construction process has its "plain meaning." *See* Ex. 1 (Williams Dep.) at 193:17-194:2 (arguing that "packet" is limited to "packet-centric" systems); *id.* at 193:4-10 (arguing that "packet" means "IP packet only, not ATM cell").  Dr. Williams uses his definition to attempt to distinguish, *inter alia*, systems that use ATM cells, which the asserted patents concede have an "ATM cell *packet format*" and whose cells can be used for "*packet* switching." *See* Ex. 3, '517 Patent, at 25:49-50 (describing "an asynchronous transfer mode (ATM) *cell packet format*."); *id.* at 30:28-30 ("*Packet* switching breaks a media stream into pieces known as, for example, packets, *cells* or frames.").[5]

To reach his definition for "packet," Dr. Williams admits he is not applying the ordinary meaning of the term but is instead reaching a different interpretation through the application of the principles of *disclaimer* and/or *lexicography*.  *See* Ex. 1, (Williams Dep.) at 190:15-191:13 (conceding that dictionary definition of "cell" as synonymous with "packet" is not incorrect, but arguing the patents apply a different definition); 191:14-192:19 (arguing that the Malibu inventor was a lexicographer and defined "packets" as limited to "IP packets").  Importantly, Dr. Williams does not dispute the ordinary meanings that apply to the term "packet" outside the context of the asserted patents, nor that those ordinary definitions are inclusive of ATM cells.  *Id.* at 190:15-191:13 (conceding that the Webster's definition of "cell" as synonymous with "packet" is not incorrect); *id.* at 192:20-193:21 (agreeing that "cell" meets the ordinary definitions of "packet" as a "unit of data for transmission" and a "unit of data for transmission with a header and a payload"); *id.* at 208:8-11 (agreeing that ATM cells have an "ATM packet

---

[5] Dr. Williams' proposed constructions conflict with these preferred embodiments.  As the Federal Circuit has remarked, a claim construction that excludes a preferred embodiment, as here, "is rarely, if ever, correct and would require highly persuasive evidentiary support"— support that "is wholly absent in this case." *Vitronics Corp v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996).

header"); *id.* at 205:11-15 (agreeing that "in the broader sense, an ATM cell can be a packet.").

Providing these claim construction opinions to the jury is improper—particularly, where, as here, Dr. Williams clearly understands the plain and ordinary meaning of these terms.  There is no dispute over plain and ordinary meaning of terms.  Dr. Williams clearly offers non-plain meaning for the term "packet" based on his unilateral application of the claim construction principles of *disclaimer* and/or *lexicography*.  Federal Circuit makes clear that such opinions are improper for presentation to the jury.  *O2 Micro Int'l Ltd. v. Beyond Innov. Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it.").

*Second*, Dr. Williams attempts to distinguish every asserted claim from the prior art based on his interpretation of the meaning of the term "*packet-centric*"—even though *no asserted claim recites that term* in the body of the claim.  Ex. 4 (Williams Validity Report) ¶¶ 42, 49, 54 (arguing that every asserted claim is limited to "packet-centric" systems); Ex. 1 (Williams Dep.), 202:21-204:18 (offering claim construction for "packet-centric" as excluding "circuit-centric" systems, *inter alia*); *see also* Ex. 1 (Williams Dep.),  202:21-204:18.  That term is recited only one time in the non-limiting preamble of Claim 1 of the '517 Patent.  And even for that one claim, IV has not sought any construction to overcome the presumption that its preamble is non-limiting.  Dr. Williams' opinions regarding the meaning of the term "packet-centric" and the alleged failure of the prior art to disclose "packet-centric" systems should be excluded because they are irrelevant to any asserted claim and would serve only to potentially confuse the jury as to their proper scope.  *See* FED. R. EVID. 403; *CytoLoxic Corp.*, 424 F.3d at 1172.

Dr. Williams' opinions on the non-ordinary meanings of "packet" and "packet-centric" improperly attempt to supplant the Court's exclusive role to construe the meaning of claim

terms.  In particular here, where IV represented these terms have their ordinary meanings during claim construction, it is improper for its expert to offer a non-ordinary meaning of these terms. The Court should strike the portions of Dr. Williams' report that construe "packet" and "packet-centric," as well as the portions that rely on this construction.

### ii.  "reservation algorithm" ('629, Claim 1)

Dr. Williams also improperly imports specific portions of the specification into the claim term "reservation algorithm" in order to distinguish prior art.  Specifically, Dr. Williams generally points to Figure 14 to allege that "a reservation algorithm has the following traits, 1) makes reservation decisions on packet level of granularity, 2) makes reservation decisions based on QoS needs of packets in IP flows, 3) is capable of making multiple reservations for slots in the future, and 4) considers demand for uplink and downlink slots."  Ex. 4 (Williams Validity Report) at ¶ 88.  Again, Dr. Williams is offering a construction of "reservation algorithm" in light of a specific portion of the specification, rather than applying the plain meaning.  His improper claim construction should be stricken.

### iii.  "scheduling" ('206, Claim 109)

Again, Dr. Williams' provides an opinion on the construction of "scheduling," rather than applying the plain meaning, and should be excluded.  Specifically, in attempting to distinguish prior art, Dr. Williams argues that scheduling must include a reservation of resources and indicates that "unscheduled queuing" of a first-in-first-out scheme is insufficient.  Ex. 4 (Williams Validity Report), ¶¶ 771, 772.  Dr. Williams' opinions should be excluded as improper claim construction opinions.

### B.  Dr. Williams' Does Not Apply the Same Constructions in His Opening Report, Further Underscoring the Unreliability of His Opinions.

Underscoring the unreliability of Dr. Williams' opinions, he does not offer any such

10

constructions in his opening report regarding infringement, which leaves to the imagination how the accused systems supposedly infringe, if at all, based on the narrow constructions he offers for the purposes of his validity analysis. *See, e.g.*, Ex. 5, (Williams' Infringement Report), ¶ 136 (applying no construction to the claimed "reservation algorithm"); Ex. 6 (Williams' Infringement Report 2), ¶¶ 58-63 (applying no construction to the claimed "packet-centric" system). It is axiomatic that the same construction must be applied for both infringement and validity purposes. *Symantec*, 522 F.3d at 1298 (Fed. Cir. 2008) ("[T]he same construction governs for validity determinations as for infringement determinations."). Dr. Williams' failure to follow that axiom further weighs in favor of exclusion.

### C. Dr. Williams' Claim Constructions for Various Terms Are Untimely.

Dr. Williams' validity report offers untimely claim constructions for (1) "packet," (2) "packet-centric," (3) "reservation algorithm," and (4) "scheduling." Ex. 4 (Williams Validity Report), ¶¶ 38-60, 73-74, 88, and 771-772. Dr. Williams then uses these constructions, which depart from the plain meaning of these terms as discussed above, to attempt to distinguish Defendants' prior art. IV, however, has been aware of Defendants' prior art since at least January 2018, and could have identified these as terms for construction, but chose not to.[6] To the contrary, for the construed terms that include terms upon which Williams now opines ("packet" and "reservation algorithm"), IV represented that these terms have their "plain meaning." This

---

[6] For example, IV proposed the term "packet" and "packet-centric" for construction in related IPR proceedings, but chose not to pursue those constructions for these terms in this case, opting instead for the plain meanings to apply. See Ex. 7 (Patent Owner Preliminary Response to '517 IPR Petition) at 22-28 (arguing that the meaning of "packet" is limited to packets used in "packet switching" systems); Ex. 8 (Patent Owner Preliminary Response to '629 IPR Petition) at 26-27 (arguing that the meaning of "packet" is limited to packets used in "packet switching" systems). Notably, Dr. Williams' current constructions are even narrower than those IV proposed in the PTAB. Ex. 1 (Williams Dep.), 193:11-194:2 (arguing that the meaning of "packet" excludes even some "packet switching" systems).

11

Court's Local Rules and Docket Control Order are intended to promote the orderly resolution of patent disputes, and require all parties to timely disclose claim construction disputes under exchanges required by Local Rule 4. Dr. Williams' claim constructions should be excluded because they are at best untimely and, more importantly, contradict IV's representations through claim construction. Moreover, it is "improper to argue claim construction to the jury because the risk of confusing the jury is high when experts opine on claim construction." *Cordis*, 561 F.3d at 1337 (finding the district court properly excluded accused infringer's attempts to argue claim construction before the jury).

### D. The Proper Remedy Here is Exclusion, Not Additional Claim Construction Which Would Only Reward IV's Untimeliness to the Prejudice of Defendants.

The prejudice to Defendants caused by these late and improper claim constructions is not curable in light of the impending trial date and justifies exclusion. Defendants and its experts have prepared this case for trial, making strategic decisions regarding prior art and noninfringement positions based on IV's representations regarding the plain meaning of these claim terms. It would be manifestly unfair to allow IV to change those positions through its expert's rebuttal report on the eve of trial.[7] That unfairness is multiplied by Dr. Williams' unequal application of his new constructions between his infringement and validity opinions and by the prejudice Defendants would experience from having IV's "expert" explain to the jury the "non-ordinary" meaning of these claim terms. Dr. Williams has offered distinctions between the asserted claims and the prior art other than those based on his non-ordinary meaning claim

---

[7] Even if the pending motion to stay is granted, and the proceedings later resume, Defendants would continue to be prejudiced by IV's late-disclosure of its claim construction positions. Defendants have engaged in extensive expert discovery, and are currently filing motions for summary judgment. If IV were permitted to maintain Dr. Williams' claim construction opinions, Defendants would be forced to substantially revise their non-infringement expert report and multiple motions for summary judgment, imposing significant unnecessary expense to Defendants.

constructions.   The proper remedy under *O2 Micro* in these circumstances is waiver of these non-ordinary meaning constructions and exclusion of Dr. Williams' report and testimony regarding those constructions.   *Ericsson*, 2017 WL 5137401, at *15 (citing *Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007)).

## IV.      CONCLUSION

Defendants respectfully request that the Court strike paragraphs 38-60, 73-74, 83, 88, 90, 96-97, 101, 113-115, 146, 148-150, 156, 160, 164-165, 174, 183, 197, 204-205, 209, 216-217, 219, 222, 530-536, 546, 552, 558, 571-573, 583, 595-596, 599, 602, 606, 619-626, 663-668, 695-696, 771-782, 784, 786, 811, 816-818, 825-831, 863-867, 870, 872, 882, 884, 886, 894-897, 923-924, 926, 930-931, 947, 951, and 996 of Dr. Williams' validity report and enter an order excluding Dr. Williams from offering opinions at trial based on his improper and late-disclosed claim constructions of the terms "packet," "packet-centric," "reservation algorithm," and "scheduling" to the extent those terms appear in the remaining asserted claims in this case.

13

Dated:  November 19, 2018

Asim M. Bhansali
   State Bar No. 90001290
   E-mail:  abhansali@kblfirm.com
Kate E. Lazarus
   *Admitted Pro Hac Vice*
   E-mail:  klazarus@kblfirm.com
**KWUN BHANSALI LAZARUS LLP**
555 Montgomery Street, Suite 750
San Francisco, California, 94111
Telephone: (415) 630-2350

R. Adam Lauridsen
   *Admitted Pro Hac Vice*
   E-mail:  alauridsen@keker.com
**KEKER, VAN NEST & PETERS LLP**
633 Battery Street
San Francisco, CA 94111
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

**ATTORNEYS FOR T-MOBILE USA,
INC. and T-MOBILE US, INC.**

Respectfully submitted,

By: */s/ Douglas M. Kubehl*
Douglas M. Kubehl
   Texas State Bar No. 00796909
   E-mail:   doug.kubehl@bakerbotts.com
Jeffery S. Becker
   Texas State Bar No. 24069354
   E-mail:   jeff.becker@bakerbotts.com
Johnson K. Kuncheria
   Texas State Bar No. 24070092
   Email: johnson.kuncheria@bakerbotts.com
Harrison G. Rich
   Texas State Bar No. 24083730
   E-mail:   harrison.rich@bakerbotts.com
Steven T. Jugle
   Texas State Bar No. 24083280
   E-mail:   steven.jugle@bakerbotts.com
Megan V. LaDriere
   Texas State Bar No. 24083348
   E-mail:   megan.ladriere@bakerbotts.com
Melissa L. Butler
   Texas State Bar No. 24097442
   E-mail:   melissa.butler@bakerbotts.com
**BAKER BOTTS L.L.P.**
2001 Ross Avenue
Dallas, Texas 75201
Telephone: (214) 953-6500
Facsimile: (214) 953-6503

Melissa R. Smith
   Texas State Bar No. 24001351
   E-mail:   melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile:  (903) 934-9257

**ATTORNEYS FOR T-MOBILE USA,
INC., T-MOBILE US, INC,
TELEFONAKTIEBOLAGET LM
ERICSSON, AND ERICSSON IN**

14

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document via electronic mail on November 19, 2018.

*/s/ Douglas M. Kubehl*
Douglas M. Kubehl

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this matter.

*/s/ Douglas M. Kubehl*
Douglas M. Kubehl