IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 2:17-cv-577 |
| | § | |
| T-MOBILE USA, INC., T-MOBILE US, INC., | § | |
| ERICSSON INC., and | § | |
| TELEFONAKTIEBOLAGET LM ERICSSON | § | |
| | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

**RULE 702 AND DAUBERT MOTION TO EXCLUDE EXPERT OPINIONS OF
<u>DR. DOUGLAS A. CHRISSAN</u>**

i

## TABLE OF CONTENTS

I.      Introduction ................................................................................................................. 1

II.     Brief Statement of Facts ............................................................................................. 2

    A.   Mr. Bratic's Royalty Calculation .................................................................. 2

    B.   Dr. Chrissan's "Technical Valuation" ........................................................... 3

III.    **Dr. Chrissan's "Technical" Valuation is Inadequate, Unreliable, and Should Be Stricken.** ................................................................................................................ 5

    A.   Dr. Chrissan is Not Qualified to Perform Patent Valuations........................ 5

    B.   Dr. Chrissan Provides No Explanations for His Technical Valuations and Conclusions. ................................................................................................... 6

    C.   Dr. Chrissan's Supplemental Expert Report is also Inadequate and Unreliable. ...................................................................................................... 9

    D.   Dr. Chrissan's Relative Valuation of the Patents-In-Suit to Those in Co-Pending Litigation is Similarly Flawed. ...................................................... 10

IV.     **Conclusion** ............................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*ART+COM Innovationpool GmbH v. Google Inc.*,
155 F. Supp. 3d 489 (D. Del. 2016)........................................................................................9

*CSIRO v. Cisco Sys., Inc.*,
809 F.3d 1295 (Fed. Cir. 2015)...........................................................................................8, 9

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993)..................................................................................................1, 2, 5, 9

*In re IH 1, Inc.*,
2015 WL 5679724 (D. Del. Sept. 25, 2015)...........................................................................9

*In re Mega Systems, L.L.C.*,
2006 WL 6571681 (Bankr. E.D. Tex. Sept. 14, 2006) .......................................................5, 6

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999)................................................................................................................9

*M2M Solutions LLC v. Enfora, Inc.*,
167 F.Supp.3d 665 (D. Del. 2016).........................................................................................9

*Sport Dimension, Inc. v. Coleman Co., Inc.*,
820 F.3d 1316 (Fed. Cir. 2016)..............................................................................................5

*Thomson v. Rook*,
255 F. Supp. 2d 584 (E.D. Tex. 2001) ...................................................................................7

*United States v. Schiff*,
602 F.3d 152 (3d Cir. 2010)...................................................................................................5

OTHER AUTHORITIES

Fed. R. Civ. P. 26(a)(2)(B)(i)......................................................................................................6

FRE 702 ...................................................................................................................................2, 5

| LIST OF EXHIBITS | |
|---|---|
| **Ex. No.** | **Document** |
| 1 | Excerpts from the Expert Report of Walter Bratic, dated October 12, 2018 |
| 2 | Excerpts from the Deposition of Walter Bratic, dated November 15, 2018 |
| 3 | Excerpts from the Expert Report of Dr. Douglas A. Chrissan, dated October 5, 2018 |
| 4 | Excerpts from the Deposition of Dr. Douglas Chrissan, dated November 15, 2018 |
| 5 | Exhibit 6 to the Deposition of Dr. Douglas Chrissan, dated November 15, 2018 |
| 6 | Supplemental Expert Report of Dr. Douglas A. Chrissan, dated November 14, 2018 |
| 7 | Supplemental Expert Report of Walter Bratic, dated November 14, 2018 |

## I.    INTRODUCTION

IV's technical source code expert, Dr. Douglas Chrissan, has attempted to perform a "technical" valuation of the patents-in-suit.  He attempts to do so, not in a vacuum, ███████ ████████████████████████████████████████████████████████████.  These ███████ were selected for Dr. Chrissan's relative "*technical*" valuation because of IV's belief that they formed the entire basis of the *economic* value of ███████████████████████████████ ████████████████████████████  ████████████████ is featured prominently in the analysis of IV's damages expert, Mr. Walter Bratic.  The only purpose of Dr. Chrissan's relative "technical" valuation is to provide a numerical input to Mr. Bratic for a critical step in his reasonable royalty calculation.[1]  Dr. Chrissan's "technical" valuation and comparability analysis is fatally flawed for two independent reasons.

First, Dr. Chrissan is not qualified to perform the patent valuations he performed here.  Regardless of whether IV and Dr. Chrissan choose to label this as a "technical" valuation, it is unmistakably intended to be used in this case as an economic and financial valuation of the patents, and it is indeed used by Mr. Bratic as an economic and financial input into his reasonable royalty calculation.  Second, Dr. Chrissan's valuation is pure *ipse dixit*.  Dr. Chrissan's entire "analysis" is based on a long series of conclusory statements with no discernable methodology to explain how those conclusions were reached.  It is exactly the type of analysis that courts have found to be fraught with danger for a jury and deemed

---

[1] In the current Docket Control Order, the deadline for filing *Daubert* motions relating to damages experts is November 21, 2018, two days later than today's deadline for *Daubert* motions relating to technical experts.  As discussed further in the *Daubert* motion relating to Mr. Bratic's analysis, which will be filed on November 21, Mr. Bratic takes Dr. Chrissan's "technical" valuation and imports it directly – on a one-to-one basis – into his reasonable royalty analysis as an apportionment step, as if the "technical" valuation were equivalent to an economic or financial analysis.

unreliable.  Accordingly, Dr. Chrissan's "technical" valuation and comparability analysis should be excluded under *Daubert* and FRE 702.

## II.    BRIEF STATEMENT OF FACTS

IV relies on its expert, Dr. Chrissan, to provide a purported technical valuation of the patents-in-suit in this case.  IV's damages expert, Mr. Bratic, then uses that "technical" valuation to calculate a reasonable royalty for both Ericsson and T-Mobile.  A brief discussion of Mr. Bratic's methodology is helpful in providing context for Dr. Chrissan's "technical" valuation.

### A.    Mr. Bratic's Royalty Calculation

As will be discussed in Defendants' forthcoming motion to exclude Mr. Bratic's opinions, Mr. Bratic's damages theory for the three patents-in-suit is based on ██████████ ████████████████████████████████████████████ Mr. Bratic derives his royalty rate ███████████████████████████████████████████████████████ ███████████████████████████████ ████████████████████████████ ███████████████████████████████████████████████████████ ██████████████████████████████████████████████████ Mr. Bratic calculates ███████████████████████████████████████████████ ███████████████████████████████████████████████████████ ████████████████████████████ a reasonable royalty for just the three patents-in-suit.  To do so, Mr. Bratic relies solely on Dr. Chrissan, who purports to provide a comparison of the "technical value" of the patents asserted in this case ███████████████████████████ ███████████████████████████ ██████████████████████████ ███████████████████████████ Dr. Chrissan opines that the patents-in-suit are ██████████ ██████████ as technically valuable ███████████████████████████

2

███████ ██████████████████████ Mr. Bratic then uses Dr. Chrissan's █████████ and imports it directly into his reasonable royalty calculation, without any adjustments.  *Id.*

### B.    Dr. Chrissan's "Technical Valuation"

In his report, Dr. Chrissan includes an "analysis" in which he assigns a relative "technical value" of the patents-in-suit ████████████████████████████████████████████ ████████████████████████████████████████████ Dr. Chrissan begins his analysis by ranking ████████████████████████ as either "low," "medium," or "high" in four different categories—infringement, design around potential, novelty, and importance to LTE/commercial value.  Ex. 3, Chrissan Rpt. ¶¶ 83-84.

Next, Dr. Chrissan ranks ███████████████████████████ into one of three groups: "A-level," "B-level," and "low value."  *Id.* ¶¶ 247–253.  Dr. Chrissan opines that the patents-in-suit have ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████████████ Mr. Bratic mechanically converts Dr. Chrissan's ratios of technical value into a percentage range.[3]  Mr. Bratic acknowledges that he relies entirely on Dr. Chrissan to obtain these percentages, which result from a conversion of Dr. Chrissan's technical valuation as expressed in words into a numerical percentage.   Ex. 2, Bratic Dep. at 209:3 – 212:8.   Dr. Chrissan was able to independently perform a similar calculation without having read Mr. Bratic's report.   Ex. 4,

---

[2] Although these percentages are not explicitly recited in the text of Dr. Chrissan's report, Mr. Bratic admits they are the result of a simple conversion of Dr. Chrissan's analysis to a percentage.  Ex. 2, Bratic Dep. at 211:7-13.

[3] ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████

Chrissan Dep. at 296:25 – 297:21; Ex. 5, Exhibit 6 to Chrissan Dep.

For ████████████████████ Dr. Chrissan discusses in his report, he offers only a perfunctory "analysis" of each of the four categories that he uses as the basis of his valuation, and for most categories he offers no more than a conclusory paragraph of analysis. *See* Ex. 3, Chrissan Rpt. ¶¶ 87-245.   As discussed in greater detail below, Dr. Chrissan's "infringement analysis" ████████████████████████████████████████ ████████████████; he does not attempt to verify the functionality or effectiveness of his proposed design-arounds, he does not analyze prior art when assessing novelty, and his evaluation of "importance," while not applied consistently, appears to turn on whether a feature is "optional" without regard for the effect such a feature would have on the system. ████████ ██████████████████████████████████████████████

In the process of ranking ██████████████████████ into one of the "A-Level," "B-Level," and "low value" categories, and then opining on relative value of the patents-in-suit ████████████████████████████████████ Dr. Chrissan did not perform the same type of analysis on the patents-in-suit that ████████████████████████████ and instead simply assumed that the patents-in-suit are valid and infringed.  Ex. 4, Chrissan Dep. at 247:1-14.  Mr. Bratic uses the percentage values he calculates from Dr. Chrissan's technical analysis in a one-to-one manner to apportion the royalty he calculates for the patents-in-suit based on his belief that Dr. Chrissan's "technical valuation" is equivalent to a financial valuation. ████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ██████████

4

### III.    DR. CHRISSAN'S "TECHNICAL" VALUATION IS INADEQUATE, UNRELIABLE, AND SHOULD BE STRICKEN.

Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) embody three distinct restrictions on the admission of expert testimony: "(1) the proffered witness must be an expert, *i.e.*, must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge [*i.e.*, reliability]; and (3) the expert's testimony must assist the trier of fact [*i.e.*, fit]." *United States v. Schiff*, 602 F.3d 152, 172 (3d Cir. 2010). Dr. Chrissan fails at least two of these required tests.

*First*, Dr. Chrissan is not qualified to perform this type of comparative patent valuation. Dr. Chrissan is IV's source code expert and was educated as an engineer. *See* Ex. 3, Chrissan Rpt. at ¶¶ 3-13. Nothing in Dr. Chrissan's background indicates any education or experience in financially valuing patents. *Id. Second*, Dr. Chrissan does not use any discernable methodology to arrive at his results, and his analysis consists of only conclusory *ipse dixit* that courts consistently deem unreliable for a jury.

### A.    Dr. Chrissan is Not Qualified to Perform Patent Valuations.

Dr. Chrissan is a technical expert, with a specialty in analyzing source code, and does not purport to have any training or experience with patent valuation whatsoever, whether in the litigation or non-litigation context.[4] *See Id.* Exclusion is warranted where a proffered expert in patent valuation "has no specialized knowledge, skill, training or education in the valuation of patents." *In re Mega Systems, L.L.C.*, 2006 WL 6571681, at *1 (Bankr. E.D. Tex. Sept. 14, 2006); *see also Sport Dimension, Inc. v. Coleman Co., Inc.*, 820 F.3d 1316, 1323 (Fed. Cir. 2016) (affirming exclusion of expert who had "no experience whatsoever in the [relevant]

---

[4] Dr. Chrissan's LTE-related experience began when he started working for IV as a source code consultant in LTE related cases in 2013. Ex. 4, Chrissan Dep. at 70:23 – 71:6.

5

field").

Even worse than the expert at issue in *Mega Systems,* who had offered evidence of only a single experience performing a patent valuation, Dr. Chrissan has admitted that this case is *the first time* he has been asked to perform this type of patent valuation, that he created his "methodology" specifically for this expert report, and that he is not aware of any other experts who have used this methodology. *Mega Systems*, 2006 WL 6571681, at *1; Ex. 4, Chrissan Dep. at 257:6-20. As a result, Dr. Chrissan necessarily "fails to link" his non-existent experience to his opinion. *Mega Systems*, 2006 WL 6571681, at *1. Dr. Chrissan views his analysis as one that determines technical value, not economic value. Ex. 4, Chrissan Dep. at 256:19-23; Ex. 3, Chrissan Rpt. ¶¶ 274-275. Mr. Bratic, however, believes that Dr. Chrissan's "technical valuation" is equivalent to an "economic valuation" and makes use of it in his reasonable royalty calculation as if it is an economic valuation. Ex. 2, Bratic Dep. at 179:25 – 180:5; Ex. 1, Bratic Rpt. ¶¶ 325. Regardless of whether Dr. Chrissan calls his opinion a "technical valuation" or an "economic valuation," he lacks the proper qualifications and experience to perform the valuation that he provides. His opinion should, therefore, be excluded.

**B.      Dr. Chrissan Provides No Explanations for His Technical Valuations and Conclusions.**

Even if Dr. Chrissan were qualified to perform the valuation he attempts to do, his opinions still should be stricken because he does not use any reliable or discernable methodology in forming his conclusions. Even qualified valuation experts, which Dr. Chrissan is not, are required to provide the bases for their work. *See* Fed. R. Civ. P. 26(a)(2)(B)(i). However, Dr. Chrissan sets forth no actual or replicable analysis to justify how he arrived at his valuation.

Dr. Chrissan's entire 50-page "analysis" ███████████████ provides nothing other than conclusory statements regarding his assignment of values to the analyzed four

6

categories.  Dr. Chrissan's analysis of "infringement" ███████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████

Likewise, Dr. Chrissan's "analysis" of "design around potential" consists of a single paragraph ███████████████████████ and provides no discernable methodology to explain how he reaches his conclusions. *See, e.g.*, *id.* ¶ 243.  Dr. Chrissan offers no evidence that he performed any testing or simulation to determine whether a proposed design-around could be implemented and whether it would be effective.  *Id.*  Such an opinion is pure *ipse dixit* and should be excluded.  *See Thomson v. Rook*, 255 F. Supp. 2d 584, 587 (E.D. Tex. 2001) (excluding expert opinion where expert failed to discuss variables affecting his opinion and failed to offer evidence any evidence to validate methodology).

Dr. Chrissan's evaluation of "novelty" ███████████████████████ follows the same pattern—a single paragraph of analysis without any evidence to support his conclusion.  *See e.g.*, Ex. 3, Chrissan Rpt. ¶ 244.  Dr. Chrissan did not analyze any prior art in conducting his analysis of "novelty."  *See* Ex. 4, Chrissan Dep. at 279:15 – 280:1.  The same holds true for Dr. Chrissan's evaluation of "importance" or "commercial value"—a single conclusory paragraph with no supporting evidence.  *See e.g.*, Ex. 3, Chrissan Rpt. ¶ 245.  ███████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

After this cursory analysis, Dr. Chrissan then groups ▮▮▮▮▮▮▮▮▮▮▮▮ into one of three groups with only the barest of explanations for the ranking of each patent.  An "A-Level" patent rates "high for infringement and importance, and at least medium for novelty," a "B-Level" patent rates "high for one of infringement and importance and medium for the other, and at least medium for novelty" and "[t]he remainder of the patents would be considered low value patents.[5]  Ex. 3, Chrissan Rpt. ¶¶ 248-252.  Dr. Chrissan provides no explanation of why the combination of criteria he chooses results in his ultimate ranking.

Finally, Dr. Chrissan arbitrarily determines ▮▮▮▮▮▮▮▮▮▮▮▮



"[Q]ualitative testimony that an invention is valuable—without being anchored to a quantitative market valuation—[is] insufficiently reliable." *CSIRO v. Cisco Sys., Inc.*, 809 F.3d 1295, 1302 (Fed. Cir. 2015).  Further, numbers that "appear[] to have been plucked out of thin air based on vague qualitative notions of the relative importance of the [patented technology]"

---

[5] "Design around potential" does not appear to factor into Dr. Chrissan's grouping of the patents and therefore has no effect on his ultimate comparison of the "technical value" ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮  Accordingly, it is unclear from Dr. Chrissan's report why it was even included in his analysis.

must be rejected. *LaserDynamics*, 694 F.3d at 69.  This is exactly what Dr. Chrissan has done – plucked his valuations out of thin air.  Dr. Chrissan offers no basis as to how he arrived at his valuation, and "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999).[6]  Dr. Chrissan's conclusory "analysis" is exactly the kind of proposed testimony that the *CSIRO* and *LaserDynamics* courts were referring to and should, therefore, be excluded.

### C.   Dr. Chrissan's Supplemental Expert Report is also Inadequate and Unreliable.

On November 14, 2018, Dr. Chrissan submitted a supplemental expert report purporting to analyze the effect of the Court's ruling that the asserted claims of the '971 Patent and certain claims of the '206 Patent are invalid.  Ex. 6, Chrissan Supp. Rpt.  Every flaw described with respect to Dr. Chrissan's first expert report applies to his supplemental report as well.  Without any analysis whatsoever, Dr. Chrissan determines that the remaining patents ██████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████  Because of the arbitrary nature of these supplemental

---

[6] *See also CSIRO*, 809 F.3d at 1301 ("[G]iven the great financial incentive parties have to exploit the inherent imprecision in patent valuation, courts must be proactive to ensure that the testimony presented—using whatever methodology—is sufficiently reliable to support a damages award.); *M2M Solutions LLC v. Enfora, Inc.,* 167 F.Supp.3d 665, 678 (D. Del. 2016) ("Without any meaningful analysis, [experts'] conclusions of technological comparability are nothing more than *ipse dixit*."); *ART+COM Innovationpool GmbH v. Google Inc.*, 155 F. Supp. 3d 489, 515–16 (D. Del. 2016) (rejecting number from expert where "[t]here is no document that supports this number, nor is there any calculation" and he "states the result of an analysis, not the method from which that result is obtained."); *In re IH 1, Inc.,* 2015 WL 5679724, at *4 (D. Del. Sept. 25, 2015) (rejecting expert's opinion where he "seems to pick numbers out of a hat. (At least, there is no explanation provided as to why the numbers are chosen.)").

opinions, and for the same reasons presented with respect to his original opinions, the Court should exclude the supplemental report of Dr. Chrissan.

> **D.     Dr. Chrissan's Relative Valuation of the Patents-In-Suit to Those in Co-Pending Litigation is Similarly Flawed.**

Dr. Chrissan's expert report also includes a determination of relative value of the patents-in-suit compared to a group of patents that IV has asserted against Ericsson, T-Mobile, and other parties in co-pending litigation in this Court.  Ex. 3, Chrissan Rpt. ¶¶ 276-87.  After providing a brief summary of the subject matter of the group of patents asserted in the co-pending litigation, Dr. Chrissan opines that the patents-in-suit are worth 50% more than that group.  *Id*. ¶¶ 287.  Even worse than Dr. Chrissan's analysis with respect to the patents-in-suit as compared to the 18 Ericsson patents, Dr. Chrissan provides no analysis or opinions whatsoever regarding the novelty and infringement of the patents-in-suit or the patents in the co-pending case. *Id.* ¶¶ 276-87.  This comparison is purely *ipse dixit* as it amounts to nothing more than an intuition on Dr. Chrissan's part for which he has provided no evidence or methodology, and his opinions related to this comparative "analysis" similarly should be stricken.

## IV.     CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court exclude the proffered testimony of IV's source code expert, Dr. Chrissan.

Dated:  November 19, 2018

Asim M. Bhansali
  State Bar No. 90001290
  E-mail:  abhansali@kblfirm.com
Kate E. Lazarus
  *Admitted Pro Hac Vice*
  E-mail:  klazarus@kblfirm.com
**KWUN BHANSALI LAZARUS LLP**
555 Montgomery Street, Suite 750
San Francisco, California, 94111
Telephone: (415) 630-2350

R. Adam Lauridsen
  *Admitted Pro Hac Vice*
  E-mail:  alauridsen@keker.com
**KEKER, VAN NEST & PETERS LLP**
633 Battery Street
San Francisco, CA 94111
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

**ATTORNEYS FOR T-MOBILE USA, INC. and T-MOBILE US, INC.**

Respectfully submitted,

By: */s/ Jonathan B. Rubenstein*
Douglas M. Kubehl
  Texas State Bar No. 00796909
  E-mail:  doug.kubehl@bakerbotts.com
Jeffery S. Becker
  Texas State Bar No. 24069354
  E-mail:  jeff.becker@bakerbotts.com
Johnson K. Kuncheria
  Texas State Bar No. 24070092
  Email: johnson.kuncheria@bakerbotts.com
Harrison G. Rich
  Texas State Bar No. 24083730
  E-mail:  harrison.rich@bakerbotts.com
Steven T. Jugle
  Texas State Bar No. 24083280
  E-mail:  steven.jugle@bakerbotts.com
Megan V. LaDriere
  Texas State Bar No. 24083348
  E-mail:  megan.ladriere@bakerbotts.com
Bryan D. Parrish
  Texas State Bar No. 24089039
  Email: bryan.parrish@bakerbotts.com
Melissa L. Butler
  Texas State Bar No. 24097442
  E-mail:  melissa.butler@bakerbotts.com
**BAKER BOTTS L.L.P.**
2001 Ross Avenue
Dallas, Texas 75201
Telephone: (214) 953-6500
Facsimile: (214) 953-6503

Melissa R. Smith
  Texas State Bar No. 24001351
  E-mail:  melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile:  (903) 934-9257

**ATTORNEYS FOR T-MOBILE USA, INC., T-MOBILE US, INC, TELEFONAKTIEBOLAGET LM ERICSSON, AND ERICSSON INC**

11

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document via electronic mail on November 19, 2018.

/s/ Jonathan B. Rubenstein
Jonathan B. Rubenstein

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this matter.

/s/ Jonathan B. Rubenstein
Jonathan B. Rubenstein