# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 2:17-cv-577 |
| | § | |
| T-MOBILE USA, INC., T-MOBILE US, INC., | § | **FILED UNDER SEAL** |
| ERICSSON INC., and | § | |
| TELEFONAKTIEBOLAGET LM ERICSSON | § | |
| | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

**MOTION FOR PARTIAL SUMMARY JUDGMENT**
**OF NON-INFRINGEMENT OF THE '629 PATENT**

**TABLE OF CONTENTS**

I.    INTRODUCTION AND SUMMARY OF THE '629 PATENT ...................................... 1

II.   STATEMENT OF ISSUES TO BE DECIDED .................................................... 3

III.  STATEMENT OF UNDISPUTED MATERIAL FACTS ............................................... 3

      A.  The Asserted Claims.............................................................. 3

      B.  The Accused Products and IV's Assertions........................................ 4

IV.   APPLICABLE LAW ....................................................................... 7

V.    ARGUMENT.............................................................................. 7

      A.  IV Has Not Shown Ericsson eNodeBs "Reserv[e]" Slots for "Future" Frames.......... 8

      B.  IV Has Not Shown Ericsson eNodeBs "Reserv[e]" for a "Transmission Frame
          Subsequent in Time to Said Future Transmission Frame." .......................... 9

VI.   CONCLUSION........................................................................... 12

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)..............................................................................................................7

*Cybor Corp. v. FAS Techs., Inc.*,
138 F.3d 1448 (Fed. Cir. 1998) (en banc), *Abrogated on other grounds by*
*Teva Pharms. USA Inc. v. Sandoz, Inc.*, 789 F.3d 1335 (Fed. Cir. 2015) ..............................7, 8

OTHER AUTHORITIES

Fed. R. Civ. P. 56(a) ....................................................................................................................7

| INDEX OF ATTACHED EXHIBITS | |
|---|---|
| Ex. 1 | excerpts from the Expert Report of Dr. Tim A. Williams Regarding Defendants' Infringement of U.S. Patent Nos. 6,628,629, 7,359,971, and RE46,206 |
| Ex. 2 | U.S. Patent No. 6,628,629 |
| Ex. 3 | Excerpts from the Deposition of Jacob Jorgensen, dated August 22, 2018 |
| Ex. 4 | IV's original infringement contentions for U.S. Patent No. 6,628,629, dated November 14, 2017 |
| Ex. 5 | Correspondence from Jeffery S. Becker, dated January 2, 2018 |
| Ex. 6 | Correspondence from Alexandra Fellowes, dated January 30, 2018 |
| Ex. 7 | Correspondence from Jeffery S. Becker, dated February 14, 2018 |
| Ex. 8 | Excerpts from the Deposition of Dr. Tim A. Williams, dated November 13, 2018 |
| Ex. 9 | Excerpts from the Deposition of Douglas Chrissan, dated November 15, 2018 |
| Ex. 10 | IV's supplemental infringement contentions for U.S. Patent No. 6,628,629, dated February 28, 2018 |
| Ex. 11 | Excerpts from the Expert Report of Dr. Douglas A. Chrissan, dated October 5, 2018 |
| Ex. 12 | Excerpts from the Deposition of Saad Naveed Ahmed, dated June 11, 2018 |
| Ex. 13 | Excerpts from a document bearing the bates number ERIC-CV577-00455085 |
| Ex. 14 | Supplemental Expert Report of Dr. Tim A. Williams Regarding Infringement of U.S. Patent No. 6,628,629, dated November 12, 2018 |
| Ex. 15 | Excerpts from the Expert Report of Prof. Stephen B. Wicker on the Non-Infringement of U.S. Patent Nos. 6,628,629, 7,412,517, 7,359,971 and RE46,206, dated October 31, 2018 |

## I.    INTRODUCTION AND SUMMARY OF THE '629 PATENT

As explained by IV's own infringement expert, "[t]he '629 patent claims, among other things, a reservation algorithm that *reserves and places IP packets in future transmission frames in an isochronous manner in order to reduce jitter.*"  Ex. 1, Expert Report of Dr. Tim A. Williams Regarding Infringement ("Williams Rpt."), ¶ 40.[1]  Put another way, as IV's second technical expert Mr. Douglas Chrissan did, the concept in the '629 Patent is to "*reserve – two slots in [the] future* – slots in future frames."  Ex. 9, 11/15/18 Deposition of Mr. Douglas Chrissan ("Chrissan Dep."), at 285:25–286:3.[2]

It is undisputed, however, that the accused products █████████████, ████████



███████████████████████████████████████████.  As explained below, ████████████████████████████████████████████ █████████, the accused products ████████████████████████████████ ████████████ ███████████████████████████████████ ████████████████████████████.  SOF Nos. 8–11.

---

[1] All emphasis to text is added by Defendants, unless stated otherwise.

[2] Dr. Williams testified that only Mr. Chrissan analyzed the accused source code and that he relies upon Mr. Chrissan's explanation of the operation of the products from a source code perspective.  Ex. 8, 11/13/18 Deposition of Dr. Tim A. Williams ("Williams Dep."), at 79:6–10.  Mr. Chrissan also performed an analysis of the '629 Patent claims to attempt to assess the patent's relative technical value.  *See, e.g.*, Ex. 11, Chrissan Rpt., ¶¶ 254–257; Ex. 9, Chrissan Dep., at 266:20–25.



[3] Ericsson's eNodeBs ████████████████████████████████████████ ███████████████████████████████████.  As explained below, even IV's own expert agrees that in Ericsson's eNodeBs, ██████████████████████████ ██████████████████████████████████.  Solely for purposes of this motion and simplicity of description, Defendants will refer to ██████████████ ████████ as a "reservation."

[4] The parties dispute whether Ericsson's eNodeBs ████████████ however, resolution of that dispute is unnecessary to this motion.  For the purposes of simplicity and for this motion only, Defendants will refer to Ericsson's ████████████████████████

1

Figure 14 of the '629 Patent (reproduced below with highlighting) illustrates a series of transmission frames (the rows in the figure) with a "current frame N" (highlighted in yellow) representing the next frame that is available for transmission, and "future frames N+1 . . . N+x" (highlighted in green) representing frames that occur in the future, relative to the current frame.



FIG.14

Ex. 2, '629 Patent, Fig. 14; *id.* at 61:14–18 (explaining frames n through n+x are frames "to be transmitted at times n, n+1, n+2 . . . n+x").[5] The Patent identifies—with ellipses labeled 1480, 1482, 1484, and 1486 (highlighted in pink)—four different "reservations" of slots. '629 Patent at 61:46–48, 61:67–62:3 ("vertical reservations" 1480 and 1486); *id.* at 61:51–54, 63–65 ("diagonal reservations" 1482 and 1484). Each "reservation" includes slots in multiple future transmission frames. *Id.*

Consistent with Figure 14, the asserted claims at issue require "reserving a first slot for a

---

[5] *See also* Ex. 3, 8/22/18 Deposition of sole named inventor Jacob Jorgensen ("Inventor Jorgensen Dep."), at 196:2–6 (explaining ███████████ ); *id.* at 197:1–14 (explaining ███████████ ); *id.* at 203:14–204:18.

2

first data packet of an Internet Protocol (IP) flow in a *future* transmission frame" (*e.g.*, frame "N+1") and "reserving a second slot for a second data packet of said IP flow in a *transmission frame subsequent in time to said future transmission frame*" (*e.g.*, frame "N+2"). *See, e.g.*, '629 Patent Claim 1. As explained below, it is undisputed that the accused products ███████

████████████████████████████████████████████

████████████████████████████████████████████

██████████. Instead, ████████████████████████

████████████████████████████████████████████

███████████████████. The accused products thus work in a manner that is opposite from these claim requirements. Because IV has failed to prove infringement, summary judgment of noninfringement should issue.

## II.   STATEMENT OF ISSUES TO BE DECIDED

Whether summary judgment of noninfringement of asserted Claims 1, 3, and 4 of the '629 Patent should be granted because IV's infringement theories fail as a matter of law and no reasonable juror would find infringement.

## III.   STATEMENT OF UNDISPUTED MATERIAL FACTS

The following facts are undisputed by the parties:

### A.   The Asserted Claims

1.   IV asserts that Defendants[6] infringe, *inter alia*, Claims 1, 3, and 4 of the '629 Patent. Dkt. 1 ¶ 6; Dkt. 146.[7]

---

[6] "Defendants" collectively refers to Defendants T-Mobile USA, Inc. and T-Mobile US Inc. (collectively "T-Mobile") and Defendants Ericsson Inc. and Telefonaktiebolaget LM Ericsson (collectively "Ericsson").

[7] Claims 123 and 126 of the '206 Patent and the '971 Patent claims are not infringed for the same reasons as the '629 Patent claims addressed in this motion, but Defendants do not move for

2.      Claim 1 of the '629 Patent requires "reserving a first slot for a first data packet of an Internet Protocol (IP) flow in a *future* transmission frame."  Ex. 2, '629 Patent.

3.      Claim 1 of the '629 Patent also requires "reserving a second slot for a second data packet of said IP flow in a *transmission frame subsequent in time to said future transmission frame*."  *Id.*[8]

### B.  The Accused Products and IV's Assertions

4.      IV's complaint and original infringement contentions accused an LTE feature known as semi-persistent scheduling ("SPS"), alleging that "using semi-persistent scheduling, *multiple slots in multiple future frames are reserved* in a manner that facilitates isochronous placement of packets (claim 1)."  Dkt. 1 ¶ 33; *see also* Ex. 4, IV's original infringement contentions for the '629 Patent, at 20 (arguing SPS "enables a single DCI uplink grant message to reserve slots in more than one future transmission frame").

5.      IV's original infringement contentions included a section entitled "Dynamic Scheduling Versus Semi-Persistent Scheduling" in which IV explains how SPS differs from dynamic scheduling:

> A dynamic resource allocation or grant specifies RBs that may be used for one subframe during one TTI [transmission time interval].  SPS differs from dynamic scheduling in that an SPS resource allocation or grant may be valid for more than one subframe and TTI.

Ex. 4, at 8.

6.      After IV learned that Ericsson ██████████████████████████, IV switched infringement theories to accuse Ericsson's ████████████.  *See* Dkt. 78 at 2, 9

---

summary judgment of noninfringement of those claims solely because the Court has already found them invalid.

[8] Although the claim language of '629 Patent Claim 1 includes a comma between "frame" and "subsequent," the parties have agreed that the comma is a typographical printing error.  Dkt. 103 Ex. A.

(representing ███████ is the "sole basis for proving infringement of the '629 and '971 Patents and selected claims of the '206 Patent"); *see also* Ex. 5, 1/2/18 Becker Ltr., at 2; Ex. 6, 1/30/18 Fellowes Ltr., at 1; Ex. 7, 2/14/18 Becker Ltr., at 1 (notifying IV that Ericsson eNodeBs ███████ ████████████████████████████████████████████████████████████████████ ████████████████████, a process that all agree does not infringe").

7.      It is undisputed, however, that the accused Ericsson LTE eNodeB's ███████ ████████████████████████████████. Ex. 1, Williams Rpt., ¶ 100 ("███████████████ ████████████████████████████████████████████████████████"); Ex. 8, Williams Dep., at 107:5–8; Ex. 9, Chrissan Dep., at 201:20–24, 206:17–20, 207:3–8, 207:17–25.

8.      Unlike the previously accused ████████████, which IV contended issues scheduling grants for multiple future frames, it is undisputed that the accused Ericsson LTE eNodeB's ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████. Ex. 1, Williams Rpt., ¶ 100 ("████████████████████████████ ████████████████████████████████████████████████████"); Ex. 8, Williams Dep., at 107:9–14, 138:8–18; Ex. 10, IV's 2/28/18 Suppl. Contentions, Ex. B, at 10 (describing ████████████████████████"), 11 (describing ████████████████████████ ████████"); Ex. 11, Chrissan Rpt., ¶ 47 ("████████████████████████████████ ████████████████████"); *id.* at ¶ 51 ("████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████"); *id.* at ¶ 54 (████████████████████████████████████ ████████████████████████████████); Ex. 9, Chrissan Dep., at 201:20–24, 206:17–20, 207:3–8, 207:17–25; Ex. 12, Ahmed Dep., at 106:23–107:6 ("████████████████



█████████.”); Ex. 13, ERIC-CV577-00455085, at 455094 (“████████████████

██”).

9.    ████████████████████████████████████████

████████████████████████████████████████

███████████████████████.  Ex. 14, Williams Supplemental Rpt., ¶ 17

(explaining the ████████████████████████████████); Ex. 8,

Williams Dep., at 139:24–140:4; Ex. 9, Chrissan Dep., at 206:13–207:25.

10.   ████████████████████████████████████

███████████████████████████████████.  Ex. 8,

Williams Dep., at 133:7–25, 138:16–18; Ex. 9, Chrissan Dep., at 201:20–24, 206:17–20, 207:3–

8, 207:17–25.  ████████████████████████████

████████████.  Ex. 9, Chrissan Dep., at 207:3–8 (“████████████████

████████████████████████”), 207:17–25 (“██

████████████████████████████████.”).

11.   As a result of Ericsson's ████████████████████

████████████████████████████████ Ex. 8,

Williams Dep., at 142:13–20; Ex. 15, Wicker Rpt., ¶¶ 666, 706; Ex. 9, Chrissan Dep., at 206:13–

207:25.

12.   IV does not offer an infringement theory under the Doctrine of Equivalents for

these claim requirements.  *See* Ex. 1, Williams Rpt., ¶¶ 155–158 (opining only on literal

infringement for Element 1[b]), ¶¶ 159–161 (opining only on literal infringement for Element

1[c]).

13.   Dr. Williams agrees that, even under his infringement theory, in the accused

system at the time the alleged reservation is made for the "second slot . . . in a transmission frame subsequent in time to said future transmission frame," the frame that he identifies as "said future transmission frame" is a ███████████████. Ex. 8, Williams Dep., at 135:21–25.

## IV. APPLICABLE LAW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## V. ARGUMENT

IV's technical expert for infringement, Dr. Tim Williams, and IV's source code expert, Mr. Doug Chrissan, both agree that ███████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████████████████████████████. SOF No. 9–11. There simply are no █████████████████████████████████████. Moreover, Dr. Williams agrees that by the time his alleged "reservation" of a slot "in a frame *subsequent in time to said future frame*" is made, the alleged "future frame" ████████████████████████████████—opposite from the claim requirements. SOF No. 13.

Because IV fails to carry its burden that Defendants' accused systems satisfy every limitation of '629 Patent Claims 1, 3, and 4, summary judgment of noninfringement is appropriate. *See Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1467 (Fed. Cir. 1998) (en banc) ("To prove literal infringement, the patentee must show that the accused device contains

7

every limitation in the asserted claims.").[9]

### A.  IV Has Not Shown Ericsson eNodeBs "Reserv[e]" Slots for "Future" Frames.

Dr. Williams' infringement report contains a bald statement that the ▮▮▮▮▮▮ functionality meets the claim element that requires "reserving a first slot for a first data packet . . . in a future transmission frame" because it allegedly "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Ex. 1, Williams Rpt., ¶ 157.  Dr. Williams' deposition testimony and all other evidence of record, however, establish that ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  SOF No. 9–10.

It is undisputed that the accused Ericsson LTE eNodeB's ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮.  SOF No. 7.  As a result, unlike the originally accused ▮▮▮▮▮▮▮, which IV contended issues a scheduling grant for multiple future frames, the accused Ericsson LTE eNodeB's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮.  SOF No. 8.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  SOF Nos. 9–10.  Because Ericsson ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  SOF No. 11.

Put simply, it is undisputed that the accused Ericsson eNodeBs do not ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  To the

---

[9] *Abrogated on other grounds by Teva Pharms. USA Inc. v. Sandoz, Inc.*, 789 F.3d 1335 (Fed. Cir. 2015).

extent Dr. Williams' bald statement alleging that Ericsson " ███████████████████

████████ " is an infringement theory, it completely contradicts all of the record evidence,

including his own testimony.

**B. IV Has Not Shown Ericsson eNodeBs "Reserv[e]" for a "Transmission Frame Subsequent in Time to Said Future Transmission Frame."**

Dr. Williams' theories are also deficient for the second future frames limitation, which

requires "*reserving a second slot* for a second data packet . . . in a *transmission frame subsequent*

*in time to said future transmission frame*." With respect to this claim requirement, Dr. Williams

offers the following figure to illustrate his opinions (at Ex. 1, Williams Rpt., pg. 72):



In this figure, ███████████████████████████████████

█████████████████████████████████████. *See* Ex. 1, Williams Rpt., ¶ 147. ██

██████████████████████████████████████████

██. *See id.* ¶ 149 (explaining █████████████████████████); Ex. 8,

Williams Dep., at 122:20–21. ████████████████████████████████████████ ██████████████████████████████████████████. Ex. 1, Williams Rpt., ¶ 153 (explaining "████████████████████████████████████████); Ex. 8, Williams Dep., at 133:7–11. ███████████████████████████████████████ ████████████████████. *Id.* at 133:7–25 (███████████████████████████████ ███████████████████████████████████████). In the parlance of these patents, ██████████████████████ ████████████████████████. Ex. 2, '629 Patent at 61:14–18 (explaining frame n is the next frame "to be transmitted at time[] n"); Ex. 3, Inventor Jorgensen Dep., at 196:2–6 (explaining ██████████████████████████████ █████████████████████████████████████████).

Similarly, ████████████████████████████████████ ███████████████████████████. Ex. 1, Williams Rpt., ¶ 150 (explaining ████████ ███████████████████████████████████████). ████████ ████████████████████████████████████████████████ ████████████████████. *Id.* ¶ 153 (██████████████████████ █████████████████). As before, ████████████████████████ ████████████████████████████████████. *See* Ex. 8, Williams Dep., at 133:19–25. In the parlance of these patents, ██████████████████████████████████████████████.

Dr. Williams offers a theory that the ██████████████████████ is what the claim refers to as the "future frame" and that the ████████████████████ is what the claim calls the "transmission frame subsequent in time to the future frame." Ex. 1, Williams Rpt., ¶ 160. Dr. Williams contends that ████████████████████████████████████ ██████████████████████████████████████████████████

██████████. *Id.* ¶¶ 148–149 (opining "███████████████████████████

████████████████████████████████████████████").

Dr. Williams concedes, however, that—even under his theory—███████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████. Ex. 8,

Williams Dep, at 132:24–133:25.  It is undisputed, therefore, that at the time Dr. Williams'

alleged "reservation" for the first slot in the "future frame" is made, ████████████

████████████████████████████████████████. *Compare id.* (Dr. Williams agreeing that the

████████████████████████████████████████████████████████████████

██████████); *with* Ex. 2, '629 Patent at 61:14–18 (explaining frame n is the next frame "to be

transmitted at time[] n"); Ex. 3, Inventor Jorgensen Dep., at 196:2–6 (explaining that a "██████

████████████████████████████████████████████████████████████████

██████████").  Dr. Williams' theory fails to establish a reservation of a "first slot" in a "*future*

transmission frame."  Noninfringement follows as a matter of law on this basis alone.

Further, Dr. Williams alleges that █████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████. Ex. 1, Williams Rpt., ¶¶ 148, 150 (opining "███████████

████████████████████████████████████████████████████████████████

██████████████████████████").  He concedes, however, that at that time and up until

████████████████████████████████████████████████████████████████

████████████████████████. Ex. 8, Williams Dep., at 130:10–13.  Moreover, Dr. Williams

concedes that—even under his theory—█████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████). *Id.* at 134:5–21.

Critically, Dr. Williams acknowledges, as he must, that at the time his alleged "reservation" is made for the second slot (which must be in a transmission frame "*subsequent* in time to said *future* transmission frame") ██████████████ that "reservation" is for █

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████ Ex. 8, Williams Dep., at 135:21–25.

Common sense and logic establish that neither ████████████████████

████████████████ is a *future* transmission frame as required by these claims. The undisputed evidence establishes that the accused Ericsson eNodeBs do not reserve a first slot in a first *future* transmission frame and also do not reserve a second slot in a transmission frame *subsequent in time to the future transmission frame*.

IV offers no theory of infringement under the doctrine of equivalents with respect to these claim requirements. Because IV cannot carry its burden to demonstrate infringement, noninfringement follows as a matter of law.

## VI. CONCLUSION

For the foregoing reasons, Defendants respectfully request summary judgment of noninfringement of '629 Patent Claims 1, 3, and 4.

12

Dated:  November 19, 2018

Asim M. Bhansali
  State Bar No. 90001290
  E-mail:  abhansali@kblfirm.com
Kate E. Lazarus
  *Admitted Pro Hac Vice*
  E-mail:  klazarus@kblfirm.com
**KWUN BHANSALI LAZARUS LLP**
555 Montgomery Street, Suite 750
San Francisco, California, 94111
Telephone: (415) 630-2350

R. Adam Lauridsen
  *Admitted Pro Hac Vice*
  E-mail:  alauridsen@keker.com
**KEKER, VAN NEST & PETERS LLP**
633 Battery Street
San Francisco, CA 94111
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

**ATTORNEYS FOR T-MOBILE USA, INC. and T-MOBILE US, INC.**

Respectfully submitted,

By: */s/ Douglas M. Kubehl*
Douglas M. Kubehl
  Texas State Bar No. 00796909
  E-mail:  doug.kubehl@bakerbotts.com
Jeffery S. Becker
  Texas State Bar No. 24069354
  E-mail:  jeff.becker@bakerbotts.com
Johnson K. Kuncheria
  Texas State Bar No. 24070092
  Email: johnson.kuncheria@bakerbotts.com
Harrison G. Rich
  Texas State Bar No. 24083730
  E-mail:  harrison.rich@bakerbotts.com
Steven T. Jugle
  Texas State Bar No. 24083280
  E-mail:  steven.jugle@bakerbotts.com
Megan V. LaDriere
  Texas State Bar No. 24083348
  E-mail:  megan.ladriere@bakerbotts.com
Melissa L. Butler
  Texas State Bar No. 24097442
  E-mail:  melissa.butler@bakerbotts.com
**BAKER BOTTS L.L.P.**
2001 Ross Avenue
Dallas, Texas 75201
Telephone: (214) 953-6500
Facsimile: (214) 953-6503

Melissa R. Smith
  Texas State Bar No. 24001351
  E-mail:  melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile:  (903) 934-9257

**ATTORNEYS FOR T-MOBILE USA, INC., T-MOBILE US, INC, TELEFONAKTIEBOLAGET LM ERICSSON, AND ERICSSON INC**

13

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document via electronic mail on November 19, 2018.

*/s/ Douglas M. Kubehl*
Douglas M. Kubehl

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this matter.

*/s/ Douglas M. Kubehl*
Douglas M. Kubehl