## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 2:17-cv-577 |
| | § | |
| T-MOBILE USA, INC., T-MOBILE US, INC., | § | **FILED UNDER SEAL** |
| ERICSSON INC., and | § | |
| TELEFONAKTIEBOLAGET LM ERICSSON | § | |
| | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

## <u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>
## <u>OF NON-INFRINGEMENT OF THE '517 PATENT</u>

**TABLE OF CONTENTS**

I.   STATEMENT OF ISSUES TO BE DECIDED ................................................................. 1

II.  STATEMENT OF UNDISPUTED MATERIAL FACTS ................................................ 1

    A.  The Asserted Claims and the Court's Constructions. ................................................. 1

    B.  The Accused Products and IV's Assertions for the '517 Patent Claims. .................... 2

    C.  The Related Prosecution History ................................................................................ 6

III. APPLICABLE LAW .......................................................................................................... 7

IV.  ARGUMENT ...................................................................................................................... 7

    A.  IV Has Not Shown Infringement of Elements 1[a] or 12[a] Under Its ███ Theory. ................................................................................................................................. 8

    B.  IV Has Not Shown Infringement of the "Allocating . . . Based on the Analyzed Contents" Limitation (Elements 1[d] and 12[d]) Under its ███ Theory. .............. 10

V.   CONCLUSION ................................................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Calcar, Inc. v. Am. Honda Motor Co., Inc.,*
651 F.3d 1318 (Fed. Cir. 2011) ............................................................................................13

*Brilliant Instruments, Inc. v. GuideTech, LLC,*
707 F.3d 1342 (Fed. Cir. 2013) ............................................................................................10

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ................................................................................................................7

*Cybor Corp. v. FAS Techs., Inc.,*
138 F.3d 1448 (Fed. Cir. 1998) (en banc), *abrogated on other grounds by Teva Pharms. USA Inc. v. Sandoz,* 789 F.3d 1335 (Fed. Cir. 2015) .........................................8

*Elkay Mfg. Co. v. Ebco Mfg. Co.,*
192 F.3d 973 (Fed. Cir. 1999) ..............................................................................................13

*Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.,*
170 F.3d 1373 (Fed. Cir. 1999) ............................................................................................13

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,*
520 U.S. 17 (1997) .............................................................................................................9, 14

STATUTES

35 U.S.C. § 112 ¶ 4 ....................................................................................................................1

OTHER AUTHORITIES

Fed. R. Civ. P. 56(a) ...................................................................................................................7

| INDEX OF ATTACHED EXHIBITS | |
|---|---|
| Ex. 1 | U.S. Patent No. 7,412,517 |
| Ex. 2 | Excerpts from the Expert Report of Dr. Tim A. Williams Defendants' Infringement of U.S. Patent No. 7,412,517 |
| Ex. 3 | Excerpts from the Deposition of Dr. Tim A. Williams, dated November 13, 2018 |
| Ex. 4 | Excerpts from the Expert Report of Dr. Tim A. Williams Defendants' Infringement of U.S. Patent Nos. 6,628,629, 7,359,971, and RE46,206 |
| Ex. 5 | Excerpts from the Deposition of Douglas Chrissan, dated November 15, 2018 |
| Ex. 6 | Excerpts from the Expert Report of Dr. Douglas A. Chrissan, dated October 5, 2018 |
| Ex. 7 | Excerpts from the Expert Report of Prof. Stephen B. Wicker on the Non-Infringement of U.S. Patent Nos. 6,628,629, 7,412,517, 7,359,971 and RE46,206, dated October 31, 2018 |
| Ex. 8 | Excerpts from the Deposition of Dr. Tim A. Williams, dated November 14, 2018 |
| Ex. 9 | Excerpts from the Deposition of Samir Shah, dated July 19, 2018 |
| Ex. 10 | Excerpts from the File History of U.S. Patent No. 6,862,622 |
| Ex. 11 | Correspondence from Jeffery S. Becker, dated March 7, 2018 |

IV's infringement theories for the four asserted claims of the U.S. Patent No. 7,412,517 ("the '517 Patent") fail as a matter of law.  IV began this case by asserting a theory referred to in this motion as IV's ███ theory.  After recognizing the obvious flaws in that theory, IV sought and was granted leave to assert a new theory that this motion refers to as IV's ███ theory.  Recognizing that this theory also is meritless, IV has retreated to Doctrine of Equivalents theories for both of its alternative theories.  Those theories, however, vitiate the plain requirements of the claims and are precluded by IV's arguments during prosecution history.  Because applying the claim requirements to the undisputed material facts necessarily results in noninfringement, summary judgment of noninfringement of '517 Patent Claims 1, 4, 12, and 15 should be granted.

## I.    STATEMENT OF ISSUES TO BE DECIDED

Whether summary judgment of noninfringement of asserted Claims 1, 4, 12, and 15 of the '517 Patent should be granted because IV's infringement theories, both literal and by equivalence, fail as a matter of law and no reasonable juror would find infringement.

## II.    STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.  The Asserted Claims and the Court's Constructions.

1.    IV asserts that Defendants[1] infringe Claims 1, 4, 12, and 15 of the '517 Patent. Dkt. 1 ¶ 6; Dkt. 146.  Claim 1 is an independent method claim, and Claim 12 is an independent system claim.  Claims 4 and 15 depend from Claims 1 and 12, respectively, and recite their limitations by dependence.  *See* 35 U.S.C. § 112 ¶ 4.

2.    Independent Claim 1 of the '517 Patent requires "analyzing contents of packets to be communicated over the shared wireless bandwidth in a downlink direction" (Element 1[a])

---

[1] "Defendants" collectively refers to Defendants T-Mobile USA, Inc. and T-Mobile US Inc. (collectively "T-Mobile") and Defendants Ericsson Inc. and Telefonaktiebolaget LM Ericsson (collectively "Ericsson").

and "allocating the shared wireless bandwidth . . . based on the analyzed contents" (Element 1[d]).  Ex. 1, '517 Patent.

3.      With respect to Claim 1, the Court's Construction confirms that "the analyzed contents" refers back to the limitation of "analyzing contents of packets to be communicated over the shared wireless bandwidth in a downlink direction from a wireless base station to at least one customer premises equipment (CPE) station."  *See* Dkt. 197 at 35–40.

4.      Independent Claim 12 of the '517 Patent requires a controller to "analyze *contents of the packets [to be communicated in a downlink direction]*" (Element 12[a]) and "allocat[e] . . . responsive to the analyzed packet contents" (Element 12[d]).  Ex. 1, '517 Patent.[2]

5.      With respect to Claim 12, the Court's Construction confirms that "the analyzed packet contents" refers back to the limitation of "analyze contents of the packets received from the first interface [to be communicated in a downlink direction]."  *See* Dkt. 197 at 35–40.

6.      The asserted claims, therefore, require *inter alia* analyzing contents of packets to be communicated wirelessly from the base station and allocating shared wireless bandwidth based on *those* analyzed contents.  *Id.*

### B.  The Accused Products and IV's Assertions for the '517 Patent Claims.

7.      In this case, IV asserts infringement of the '517 Patent with respect to Ericsson's LTE base stations (also called "eNodeBs") in the LTE network of T-Mobile.  Dkt. 1, ¶¶ 56–62. IV's theories of infringement for independent Claims 1 and 12 (and associated dependent Claims 4 and 15) are based on the same accused functionality.

8.      With respect to both independent claims, IV offers two separate infringement theories for how the limitations of the '517 Patent claims allegedly are met by the accused

---

[2] All emphasis to text is added by Defendants, unless stated otherwise.

Ericsson LTE base stations. *See* Ex. 2, Expert Report of Dr. Tim A. Williams[3] ("Williams Rpt."), ¶ 68; Ex. 3, 11/13/18 Deposition of Tim A. Williams ("Williams Dep."), at 175:22–176:6, 181:13–182:4. IV's first theory is based on █████████████████████ ██████ which IV contends is the alleged "contents of the packets" required by Claims 1 and 12 respectively. IV's second theory is based on a function called "████████████████ ██████ *See* Dkt. 109.

  i. **IV's ████ Theory**

9.     IV contends that Ericsson's eNodeBs analyze ███████████████ and then use that value to allocate resources. Ex. 2, Williams Rpt., ¶¶ 70, 131; Ex. 4, Williams Rpt. 1, ¶ 381; Ex. 3, 11/13/18 Williams Dep., at 175:22–176:6, 179:6–17, 181:13–18.

10.    The ████████ is not part of the contents of any packet that will be communicated wirelessly from the base station. Ex. 2, Williams Rpt., ¶ 78 (conceding that the ██████████████████ ████████████████████████████████); Ex. 3, 11/13/18 Williams Dep., at 155:21–156:17.

11.    The ████████████████████████████████████████. Ex. 5, 11/15/18 Deposition of Douglas Chrissan[4] ("Chrissan Dep."), at 172:7–12 ("[I]n my examination of the [source] code, ████████████████████████████████████████."").

12.    The accused Ericsson eNodeBs may ██████████████████████████ ██████████████████████. Ex. 6, Chrissan Rpt., ¶ 18; Ex. 4, Williams Rpt. 1, ¶ 380. ████ ████████████████████████████████████████ Ex. 4, Williams Rpt. 1, ¶ 380 (the "████████████████████████"").

---

[3] Dr. Tim Williams is IV's infringement expert witness.

[4] Mr. Douglas Chrissan is IV's source code expert. He proffered an expert report regarding the operation of the accused Ericsson eNodeBs, and Dr. Williams relies upon Mr. Chrissan's analysis of source code. Ex. 3, 11/13/18 Williams Dep., at 79:6–10.

13.    ██████████████████████████████████████████

*Id.*; Ex. 3, 11/13/18 Williams Dep., at 154:11–17.  The following figure contains an illustration

of the ██████ :



Ex. 4, Williams Rpt. 1, ¶ 380.  ████████████████████████████

██████████████████████████████  Ex. 4, Williams Rpt. 1, ¶ 380; Ex. 2, Williams

Rpt. 2, ¶ 75 (conceding that "████████████████████████████

██████████████ "); Ex. 3, 11/13/18 Williams Dep., at 156:11–17.

14.    IV's ████ theory does not rely on any allegation that the eNodeB examines any

of the contents of the ████████████—████████████████████

██████████████  *See* Ex. 2, Williams Rpt., ¶¶ 74, 78; Ex. 3, 11/13/18 Williams Dep., at

154:22–156:17.  Instead, ████████████████████████████

██████, ████████████████████████████████████

██████████████████████████████████████████

*See id.*; Ex. 6, Chrissan Rpt., ¶ 18; Ex. 2, Williams Rpt., ¶¶ 74, 78 (conceding that the ████

██████████████████████████████ ); Ex. 7, Wicker Rpt., ¶¶ 169, 302–

304; Ex. 4, Williams Rpt. 1, ¶ 381; Ex. 8, 11/14/18 Williams Dep., at 289:16–290:17; Ex. 5,

Chrissan Dep., at 127:2–12.

### ii.  IV's ████ Theory

15.    IV's later-asserted alternate theory of infringement contends that a process called

4

███ analyzes the contents of the packets that will be communicated wirelessly, and then those contents supposedly are a basis for the scheduler's allocation of resources.

16. ████████████████████████████████████████

████████████████████████████████████████████

███. *See* Ex. 2, Williams Rpt., ¶¶ 83–84; Ex. 6, Chrissan Rpt., ¶ 23. ████████

████████████████████████████████████████████

████████████████████████████████. Ex. 2, Williams Rpt., ¶ 83 (explaining that

████████████████████████████████████████████

████████████). Ex. 7, Wicker Rpt., ¶ 400 n.53.

17. ████████████████████████████████████████

████████████████████████████. Ex. 2, Williams Rpt., ¶ 82; Ex. 5, Chrissan Dep., at 149:14–25 (confirming that ████████████████████████████

████████████████████████████████); Ex. 9, Shah Tr., at 91:23–92:17 (describing that ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████). ████████████████████████

████████████████████████████████. *Id.*; Ex. 6, Chrissan Rpt., ¶ 25. ███

████████████████████████████████████████████. Ex. 7, Wicker Rpt., ¶ 682; Ex. 9, Shah Tr., at 91:23–92:17.

18. The Williams Report does not contend that ████████████ ████████ ███ ████████████████████████████████████ Ex. 7, Wicker Rpt., ¶ 1058; Ex. 2, Williams Rpt., ¶ 84.

19. ████████████████████████████████████████

5



*See* Ex. 2, Williams Rpt., ¶¶ 84–85; *see also* Ex. 8, 11/14/18 Williams Dep., at 311:23–312:6 (agreeing ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓); Ex. 5, Chrissan Dep., at 148:22–149:25.

20. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Ex. 5, Chrissan Dep., at 147:2–25, 148:22–149:25; Ex. 9, Shah Tr., at 91:23–92:17.

### C. The Related Prosecution History

21.    The '517 Patent claims priority to U.S. Patent No. 6,862,622, which shares the same specification as the '517 Patent.  During prosecution of the '622 Patent, the applicant sought a claim that required "wherein real-time wireless bandwidth allocations and system resource allocations are determined *based on contents of packets to be communicated over said wireless bandwidth*." *See* Ex. 10, File History for U.S. Pat. 6,862,622, Reply Appeal Brief dated May 12, 2003, at 7–8.  There, the Examiner contended that prior art disclosed that the *length of a packet* was useful for *scheduling the corresponding packet*. *Id.* at 8–9.  The applicant argued that this did not disclose using *contents of packets* to allocate bandwidth because "[s]uch information is a description of *physical attributes and/or service requirements of data packets* and is *not* a description of *contents* of data packets." *Id.* at 8 (emphasis in original).  On reply, the applicant further argued the following:

> According to the Webster's II New College Dictionary (1995), the term "content" is defined in the first instance as "something contained in a receptacle" and, when used in its plural form "contents," is defined in the second instance as "subject matter of a written work." *See* Appendix II. Hence, "contents" of packets as recited in claim 1 is reasonably interpreted to mean something contained in packets or subject matter of packets. Subject matter of packets could be information as to, for example,

6

whether the packets carry a voice over IP (VoIP) data or video type data.

As to information regarding lengths of packets, where the information is located or stored external to packets, it is unreasonable to consider such external length information as "contents" of packets since such information is not contained within the packets and does not describe the subject matter of packets. More specifically, according to the Webster's II New College Dictionary (1995), the term "length" is defined in the second instance as "measurement of the extent of an object along its greatest dimension." Hence, information regarding lengths of packets in Whitehead, as pointed out in page 9 of the Office Action, is a measurement of the extent of packets. *See* Appendix II. According to Whitehead, such measurement of the extent or size of packets in Whitehead is not contained within the packets. For instance, Whitehead discloses that information regarding the length of a packet is stored in a token queue (e.g., 40 in Fig. 4) external and separate from queues (e.g., 41 and 42 in Fig. 4) for data packets. See Whitehead, column 7, lines 43-46, 49-54. Further, such information regarding the length of packets in Whitehead is also not describing the subject matter of the packets. Hence, contrary to the assertion in the Examiner's answer, the information regarding the length of packets in Whitehead is not the "contents of packets."

*See* Ex. 10, File History for U.S. Pat. 6,862,622, Reply Brief dated May 12, 2003, at 3–4.

## III.   APPLICABLE LAW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## IV.   ARGUMENT

IV fails to carry its burden that Defendants' accused systems satisfy every limitation of the asserted claims of the '517 Patent under either its █████ theory or its █████ theory. *See*

7

*Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1467 (Fed. Cir. 1998) (en banc) ("To prove literal infringement, the patentee must show that the accused device contains every limitation in the asserted claims.").[5]

### A. IV Has Not Shown Infringement of Elements 1[a] or 12[a] Under Its ▮▮▮ Theory.

Summary judgment with respect to IV's ▮▮▮▮ infringement theory for the '517 Patent is appropriate, because IV has not and cannot meet its burden of establishing that the "analyzing contents" limitation (Elements 1[a] and 12[a]) is met either literally or by equivalence.

Under its ▮▮▮ theory, IV contends that Ericsson LTE eNodeBs literally infringe claim Element 1[a]'s requirement to "analyz[e] contents of packets to be communicated over the shared wireless bandwidth in a downlink direction," when the accused eNodeBs ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 2, Williams Rpt., ¶¶ 68, 70, 75.  In other words, IV alleges the ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮ is the "**contents of packets to be communicated** over the shared wireless bandwidth **in a downlink direction**" of Element 1[a].  *See id.*



Ex. 4, Williams Rpt. 1, ¶ 380 (as annotated).

---

[5] *Abrogated on other grounds by Teva Pharms. USA Inc. v. Sandoz*, 789 F.3d 1335 (Fed. Cir. 2015).

IV concedes, however, that the ███████████████████████████████ or alleged "analyzed contents") is **not** among the content of any packet that is to be "communicated over the shared wireless bandwidth in a downlink direction," as required by Elements 1[a] and 12[a]. SOF No. 10.  Rather, as IV concedes, the eNodeB ████████████████████████████████ ████████████ ████████████████████████████████████████ Ex. 2, Williams Rpt., ¶ 78; Ex. 4, Williams Rpt. 1, ¶ 380; Ex. 3, 11/13/18 Williams Dep., at 154:22–156:17; SOF No. 10.  No reasonable juror would find that the ████████████████████████████ ) are "**contents of packets to be communicated** over the shared wireless bandwidth **in a downlink direction**."  Accordingly, Elements 1[a] and 12[a] are not literally infringed under IV's ████ theory.

To attempt to overcome the deficiencies of IV's ████ theory discussed above, Dr. Williams offers a theory that ████ infringes this element by equivalence.



See Ex. 2, Williams Rpt., ¶ 79.

In other words, IV's DOE infringement theory contends that ██████████████ ██████████████████████████████████████ ██████████████████████████. *See id.*  As the Supreme Court has made clear, "if a theory of equivalents would entirely vitiate a particular claim element, partial or complete judgment should be rendered by the court, as there would be no further material issue for the jury to resolve."  *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520

U.S. 17, 39 n.8 (1997) (clarifying that "the various legal limitations to the doctrine of equivalents are to be determined by the court"); *see also Brilliant Instruments, Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1347–48 (Fed. Cir. 2013) (recognizing that "two elements likely are not insubstantially different when they are polar opposites" and "[i]f the claimed and accused elements are recognized . . . to be opposing ways of doing something, they are not likely insubstantially different"). Accordingly, IV's ████ DOE theory fails for the same reasons as its literal infringement theory, and summary judgment is appropriate.

## B. IV Has Not Shown Infringement of the "Allocating . . . Based on the Analyzed Contents" Limitation (Elements 1[d] and 12[d]) Under its ████ Theory.

Summary judgment of IV's ████ infringement theory for the '517 Patent also is appropriate because IV has not and cannot meet its burden of establishing that the "allocating . . . based on the analyzed contents" limitation (Elements 1[d] and 12[d]) is met either literally or by equivalence.

After IV recognized the holes in its ████ infringement theory, IV sought and was granted leave to amend its contentions to add its ████ infringement theory. Dkts. 78, 109. Since introducing that theory, however, IV repeatedly has refused to explain how the "analyzed contents" of ████████████ allegedly are used to allocate wireless bandwidth. *See* Ex. 11, 3/7/18 Becker Ltr., at 3; Dkt. 80 at 10; Dkt. 85 at 2 n.3. IV's expert fails to remedy the deficiency of IV's infringement contentions. This is not surprising, however, because IV's ████ infringement theory is based on the same theory that IV specifically distinguished in the parent prosecution history—████████████████████████████████████ ████████.

Dr. Williams opines that the ████ functionality literally infringes "***allocating*** the shared wireless bandwidth between the wireless base station transmitting in the downlink direction and

the at least one CPE station transmitting in the uplink direction *based on the analyzed contents*" (Element 1[d]) when ██████████ and ████████████████████ ████████████████ Ex. 2, Williams Rpt., ¶ 143.  But even in the most favorable light, Dr. Williams' theory does not read on the claims, because ███████████████████████ ███████████ undisputedly is *neither* ██████████████████████████ ████████████████████████████ SOF No. 20; Ex. 5, Chrissan Dep., at 148:22–149:25 (agreeing the ████████ does not "████████████████████████████████████████," "████████████████████████████," and "███████████████████████████████" ███████████.  Tellingly, Dr. Williams concedes that the ████████████████████████ ████████████████████████████████████████████████ (i.e., the packet that was allegedly analyzed).  Ex. 8, 11/14/18 Williams Dep., at 311:23–312:6 (agreeing ████████████████████████████████████).  ██████████████████████ █████████████████████████████████████████████████████████████ ██████.

Dr. Williams attempts to make the leap between ██████████ and packet contents by opining that "████████████████████████████████████████ █████████████████████████████████████████████████████████████ ████████████████████."  Ex. 2, Williams Rpt., ¶ 143; *see also* Ex. 7, Wicker Rpt., ¶ 678.  But whether or not ████████████████████████████████████████ ████████████████████████████████ is not an "allocat[ion] . . . based on the analyzed *[packet] contents*."  And the fact that ██████████████████████████████ also is immaterial to the question of whether the accused systems allocate based on the content of any packet—because ████████████████████████████████████████

11

███████████████████████    *See* Ex. 5, Chrissan Dep., at 148:22–149:25.

Critically, ████████████████████████████████ is precisely what the patentee used to distinguish prior art that allocated based on size.  In the parent application, pending claim limitation of the '622 Patent recited that "*allocations are determined based on contents of packets to be communicated over said wireless bandwidth.*"  *See* Ex. 10, '622 File History, 5/12/03 Reply Brief, at 3–4.  To overcome the examiner's rejection of this limitation over Whitehead, the applicant specifically rejected the notion that allocating based on the length (or size) of a packet is allocating based on the contents of the packet.  *See id*; *see also* Ex. 7, Wicker Rpt., ¶¶ 681, 1061.  The applicant specifically explained:

> '[C]ontents' of packets as recited in claim 1 is reasonably interpreted to mean something contained in packets or subject matter of packets.  Subject matter of packets could be information as to, for example, whether the packets carry a voice over IP (VoIP) data or video type data.
>
> As to information regarding lengths of packets, where the information is located or stored external to packets, *it is unreasonable to consider such external length information as 'contents' of packets since such information is not contained within the packet and does not describe the subject matter of packets*. . . . [T]he information regarding length of packets in Whitehead is not the 'contents of packets.'"

*See* Ex. 10, '622 File History, 5/12/03 Reply Brief, at 3–4; *see also* Ex. 7, Wicker Rpt., ¶¶ 681, 1061.  As the patentee recognized in the related prosecution, the size or length of a packet is not its contents.

Dr. Williams' infringement theory regarding ████████████████████████ ██████████████████████████████ is even further removed from the claimed requirement to "allocat[e] . . . based on the analyzed [packet] contents" than is the packet length at issue in the related prosecution history.  *See* Ex. 2, Williams Rpt., ¶¶ 82–84; Ex. 9, Shah Tr., at 91:23–92:17 (describing that ████████████████████████ ████████████████████████████████████████████████████████████").

12

IV's infringement theory that ████████████████████ meets the claimed requirement to "allocat[e] . . . based on the analyzed [packet] contents" fails as a matter of law because it is contrary to the plain meaning of the claim, as explained by the patentee during the parent prosecution history.

IV's doctrine of equivalents theory for ████ with respect to Element 1[d] fails for the same reasons as its literal infringement theory—████████████████████████████ ████████████████████████. *See* Ex. 2, Williams Rpt., ¶ 145; Ex. 2, '622 File History, 5/12/03 Reply Brief, at 3–4.[6]  The applicant's arguments to the Patent Office are wholly inconsistent with IV's DOE theory, and to the extent the range of equivalencies for packet "contents" would reach ████████████████████████, the applicant's arguments unmistakably surrender packet "size" from the scope of "packet contents." *See Am. Calcar, Inc. v. Am. Honda Motor Co., Inc.*, 651 F.3d 1318, 1340 (Fed. Cir. 2011); *Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*, 170 F.3d 1373, 1376–77 (Fed. Cir. 1999).  IV cannot as a matter of law distinguish art during prosecution on the basis that allocation based on packet size is insufficient to show allocation based on packet content, ████████████ ████████████████████████████ *See id.*

Further, any equivalence theory would vitiate the plain language of the claims.  Dr. Williams' theory is that ████ infringes by equivalence because performing ████ is equivalent to not performing ████  *See* Ex. 2, Williams Rpt., ¶¶ 84–85 (opining "████████████ ████████████████████████████████ ████████████████████"). But as IV's expert Dr. Chrissan agrees, not

---

[6] Because the '622 and '517 Patents derive from the same initial application, the '622 Patent prosecution history regarding the "based on contents of packets" limitation "applies with equal force" to the similar "based on the analyzed contents [of packets]" limitation in the '517 Patent. *See Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 980 (Fed. Cir. 1999).

performing ▮▮▮▮ removes any need to analyze packet contents. *See* Ex. 5, Chrissan Dep., at 148:11–14 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"); *see also* Ex. 7, Wicker Rpt., ¶ 1068. IV's DOE theory thus vitiates the claim requirement to analyze packet contents and allocate based on the analyzed contents under Elements 1[a] and [d].

Each of these grounds—applicant's arguments during prosecution of the '622 Patent and claim vitiation—independently bars IV's DOE theory as a matter of law, for "under the particular facts of a case, if prosecution history would apply or if a theory of equivalents would entirely vitiate a particular claim element, partial or complete judgment should be rendered by the court, as there would be no further material issue for the jury to resolve." *Warner-Jenkinson Co.*, 520 U.S. at 39 n.8 (clarifying that "the various legal limitations to the doctrine of equivalents are to be determined by the court"). Summary judgment of noninfringement (both literal and DOE) of the ▮▮▮▮ theory for the '517 Patent is accordingly warranted.

## V.    CONCLUSION

Independent Claims 1 and 12 are therefore not infringed as a matter of law. Claims 4 and 15 respectively depend from Claims 1 and 12 and are therefore also not infringed. For the foregoing reasons, Defendants respectfully request summary judgment of noninfringement (literally and by equivalence) for the '517 Patent Claims 1, 4, 12, and 15.

Dated:  November 19, 2018

Asim M. Bhansali
  State Bar No. 90001290
  E-mail:  abhansali@kblfirm.com
Kate E. Lazarus
  *Admitted Pro Hac Vice*
  E-mail:  klazarus@kblfirm.com
**KWUN BHANSALI LAZARUS LLP**
555 Montgomery Street, Suite 750
San Francisco, California, 94111
Telephone: (415) 630-2350


R. Adam Lauridsen
  *Admitted Pro Hac Vice*
  E-mail:  alauridsen@keker.com
**KEKER, VAN NEST & PETERS LLP**
633 Battery Street
San Francisco, CA 94111
Telephone: (415) 391-5400
Facsimile: (415) 397-7188


**ATTORNEYS FOR T-MOBILE USA, INC. and T-MOBILE US, INC.**

Respectfully submitted,


By: */s/ Douglas M. Kubehl*
Douglas M. Kubehl
  Texas State Bar No. 00796909
  E-mail:  doug.kubehl@bakerbotts.com
Jeffery S. Becker
  Texas State Bar No. 24069354
  E-mail:  jeff.becker@bakerbotts.com
Johnson K. Kuncheria
  Texas State Bar No. 24070092
  Email: johnson.kuncheria@bakerbotts.com
Harrison G. Rich
  Texas State Bar No. 24083730
  E-mail:  harrison.rich@bakerbotts.com
Steven T. Jugle
  Texas State Bar No. 24083280
  E-mail:  steven.jugle@bakerbotts.com
Megan V. LaDriere
  Texas State Bar No. 24083348
  E-mail:  megan.ladriere@bakerbotts.com
Bryan D. Parrish
  Texas State Bar No. 24089039
  Email: bryan.parrish@bakerbotts.com
Melissa L. Butler
  Texas State Bar No. 24097442
  E-mail:  melissa.butler@bakerbotts.com
**BAKER BOTTS L.L.P.**
2001 Ross Avenue
Dallas, Texas 75201
Telephone: (214) 953-6500
Facsimile: (214) 953-6503


Melissa R. Smith
  Texas State Bar No. 24001351
  E-mail:  melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile:  (903) 934-9257


**ATTORNEYS FOR T-MOBILE USA, INC., T-MOBILE US, INC, TELEFONAKTIEBOLAGET LM ERICSSON, AND ERICSSON INC**

15

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document via electronic mail on November 19, 2018.

/s/ Douglas M. Kubehl
Douglas M. Kubehl

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this matter.

/s/ Douglas M. Kubehl
Douglas M. Kubehl