**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| INTELLECTUAL VENTURES I LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>T-MOBILE USA, INC., T-MOBILE US, INC., ERICSSON INC., and TELEFONAKTIEBOLAGET LM ERICSSON,<br><br>    Defendants. | Civil Action No. 2:17-cv-00577-JRG<br><br>**JURY TRIAL DEMANDED**<br><br>**FILED UNDER SEAL** |

**PLAINTIFF INTELLECTUAL VENTURES I LLC'S OPPOSITION TO DEFENDANTS' *DAUBERT* MOTION TO STRIKE PORTIONS OF THE VALIDITY <u>REPORT OF DR. TIM A. WILLIAMS</u>**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................. 1

II.    LEGAL STANDARD .......................................................................................... 1

III.   ARGUMENT ....................................................................................................... 3

      A.     Dr. Williams Does Not Provide Claim Construction Opinions, but Instead
             Applies the Plain & Ordinary Meanings of the Claim Terms .............................. 3

            i.     "Packet" and "Packet-centric" ................................................................ 3

            ii.    "Reservation Algorithm" ......................................................................... 7

            iii.   "Scheduling" ............................................................................................ 8

      B.     To the Extent the Court Finds that Dr. Williams is Offering Constructions
             For Any of the Terms, The Proper Remedy is Additional Claim
             Construction. ........................................................................................................ 9

      C.     Defendants Will Not Be Prejudiced if the Court Ordered Additional Claim
             Construction or Adopted IV's Plain Meaning of the Terms. ............................... 11

            i.     Defendants' Experts Applied IV's Plain Meaning of the Terms
                 "Packet" and "Packet Centric" in Their Reports. .................................... 11

            ii.    Defendants Have Been Aware of IV's Plain Meaning of
                "Reservation Algorithm" For Months. ................................................... 13

             iii.   Defendants' Expert Agreed with IV's Plain Meaning of
                 "Scheduling" During His Deposition ....................................................... 13

      D.     The Defendants Have not Stated a Clear Case for the Requested Relief ............ 14

IV.   CONCLUSION .................................................................................................. 14

## <u>TABLE OF AUTHORITIES</u>

CASES

*Biscotti Inc. v. Microsoft, Inc.*,
   Case No. 13-cv-01015-JRG-RSP, at 4-5 (E.D. Tex. May 26, 2017) (Payne, J.).................2, 10

*Cordis Corp. v. Boston Scientific Corp.*,
   561 F.3d 1319 (Fed. Cir. 2009)....................................................................................2

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993)...........................................................................................1, 2, 14

*GPNE Corp. v. Apple Inc.*,
   830 F.3d 1365 (Fed. Cir. 2016)...............................................................................3, 10

*Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*,
   628 F.3d 1359 (Fed. Cir. 2010)..........................................................................2, 10, 11

*Mathis v. Exxon Corp.*,
   302 F.3d 448 (5th Cir. 2002) ......................................................................................2

*Micro Chem., Inc. v. Lextron, Inc.*,
   317 F.3d 1387 (Fed. Cir. 2003)...................................................................................2

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
   521 F.3d 1351 (Fed. Cir. 2008).........................................................................2, 4, 9, 10

*PerdiemCo, LLC. v. Industrack LLC*,
   No. 215CV00726JRGRSP, 2016 WL 6432699, at *1 (E.D. Tex. Oct. 31,
   2016) ....................................................................................................................9

*Pipitone v. Biomatrix, Inc.*,
   288 F.3d 239 (5th Cir. 2002) ......................................................................................2

*Verizon Servs. Corp. v. Cox Fibernet Va., Inc.*,
   602 F.3d 1325 (Fed. Cir. 2010)...........................................................................2, 3, 8

OTHER AUTHORITIES

Federal Rule of Evidence 702......................................................................................1, 2

## I.       INTRODUCTION

Plaintiff Intellectual Ventures I LLC ("IV") respectfully requests that the Court deny Defendants' *Daubert* Motion to Strike Portions of the Validity Report of Dr. Tim A. Williams and allow IV's expert to offer opinions at trial applying the plain meaning of the terms "packet," "packet-centric," "reservation algorithm," and "scheduling."  By seeking to strike IV's expert's opinions, Defendants in effect ask the Court to preemptively reject IV's validity positions.  But, Defendants have failed to meet their burden under *Daubert* to exclude the challenged opinions. Defendants have known about IV's distinctions between the claims and the prior art based upon the scope of terms like "packet" and "packet-centric" since the beginning of the case, yet they chose not to seek a construction of these terms.  Defendants can hardly claim the surprise necessary to justify the extraordinary relief they are seeking when they made the strategic decision to have the jury decide whether IV's distinctions support the validity of the claims.

Dr. Williams properly applies the plain meaning of unconstrued terms to form his opinions on whether the asserted prior art falls within the scope of the claims.  To the extent Defendants disagree with Dr. Williams' opinions, the proper avenue to contest those opinions is through cross-examination and the presentation of contrary evidence, not the exclusion of testimony.

Finally, even if Defendants' arguments justified the relief they are seeking, they have not explained any nexus between their arguments and the one-hundred-and-twenty some odd paragraphs of Dr. Williams' report they ask to be stricken.  So, the Court should separately deny this motion because Defendants have not stated a clear case for relief.

## II.      LEGAL STANDARD

Under Federal Rule of Evidence 702, an expert may provide opinion testimony as long as his opinion will aid the fact finder and is reliable. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S.

579, 597 (1993); Fed. R. Evid. 702. Although *Daubert* may require a district court to determine admissibility of expert testimony, the Court's role is not to weigh the expert testimony when "experts rely on conflicting sets of facts" *Micro Chem., Inc. v. Lextron, Inc.,* 317 F.3d 1387, 1391–92 (Fed. Cir. 2003) (applying Fifth Circuit law); *see also Pipitone v. Biomatrix, Inc.,* 288 F.3d 239, 249–50 (5th Cir. 2002) ("a trial court must take care not to transform a Daubert hearing into a trial on the merits"). Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.,* 302 F.3d 448, 461 (5th Cir. 2002).

While experts are not permitted to disregard or misapply the Court's claim constructions, experts may opine on questions of facts, such as, whether an accused product or prior art, falls within the scope of the claims. *Verizon Servs. Corp. v. Cox Fibernet Va., Inc.*, 602 F.3d 1325, 1341 (Fed. Cir. 2010). Experts may also offer opinions regarding the plain meaning of claim terms to a person of ordinary skill in the art when the terms are not construed by the court, such as during the claim application steps for infringement and/or validity. *See Cordis Corp. v. Boston Scientific Corp.*, 561 F.3d 1319, 1337 (Fed. Cir. 2009).

If claim construction disputes arise between the parties after the ordinary claim construction process, the trial court can address such disputes by ordering additional claim construction instead of waiver. *See Biscotti Inc. v. Microsoft, Inc.*, Case No. 13-cv-01015-JRG-RSP, at 4-5 (E.D. Tex. May 26, 2017) (Payne, J.); *see also O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008). Indeed, courts tend to disfavor waiver, unless it is "difficult to resolve on short order," such as when it is requested after trial. *Biscotti Inc.*, Case No. 13-cv-01015-JRG-RSP, at 5; *see Lazare Kaplan Int'l, Inc. v. Photoscribe*

*Techs., Inc.*, 628 F.3d 1359, 1376 (Fed. Cir. 2010); *see also GPNE Corp. v. Apple Inc.*, 830 F.3d 1365, 1372 (Fed. Cir. 2016).

## III.    ARGUMENT

### A.    Dr. Williams Does Not Provide Claim Construction Opinions, but Instead Applies the Plain & Ordinary Meanings of the Claim Terms

Having reviewed the claims at issue, Dr. Williams analyzes the issue of validity, applying the Court's constructions to the construed terms and the plain and ordinary meaning of unconstrued terms.  Dr. Williams does not "opine on the…non-ordinary construction" of the terms as Defendants argue, but instead opines on whether the prior art falls "fairly within the scope of the claims"—a quintessential factual question best left for experts.  *See Verizon Servs. Corp. v. Cox Fibernet Va., Inc.*, 602 F.3d 1325, 1341 (Fed. Cir. 2010).

Defendants argue that Dr. Williams applies "separate constructions" for validity and infringement, but offer no explanation for this criticism. Defs. Br. at 4.  This contention is baseless, as evidenced by Defendants' failure to cite any fact or evidence to support it.  *Id.*  For all of the claim terms identified in this motion, Dr. Williams has applied the same plain meanings in support of his opinions on validity and infringement.

#### i.    "Packet" and "Packet-centric"

Contrary to the Defendants' arguments, IV's expert is not offering claim construction opinions that fall outside of plain meaning.  Defs.' Br. at 7-8.  Although neither of the parties in this case has asked the court to construe the terms "packet" and "packet centric," the experts on both sides have provided detailed and extensive opinions about the plain meaning of these terms, and how they apply to the prior art and the accused systems.  *See, e.g.,* Ex. A (Williams Validity Report), ¶¶ 37-60, 83, 101, 198, 216, 414, 530-533; Ex. B (Acampora Report), ¶¶ 171-184, 1684-1687, 1689-1695, 1740, 1756, 1768, 1774, 1850; Ex. C (Wicker Report), ¶¶ 845-869,

1025-1027.  For example, the experts on both sides █████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████ *Id*.  In addition, the experts on *both* sides provide extensive citations to

the intrinsic record to inform their understanding of the plain meaning of these terms, and how

the terms compare with prior art references.  *See, e.g.,* Ex. B, ¶¶ 171-184 (citing the patent

specifications and file histories to support his opinions that prior art ATM cells and virtual

circuits meet the "packet" and "packet centric" limitations); Ex. A, ¶¶ 37-60 (citing the intrinsic

record in support of validity opinions).   Defendants have long known about IV's distinctions

between the claims and the prior art based upon the scope of "packets" and "packet-centric," but

they never sought construction of the terms.  Defendants instead made the strategic decision to

have the jury decide whether these distinctions support the validity of the claims, so they can

hardly cry foul here.

In asking the Court to strike practically all of Dr. Williams' references to the patent

specification relevant to his application of the plain meaning of "packet" and "packet centric,"

the Defendants appear to assume that a proper analysis of the plain and ordinary meaning of a

claim term must be performed without reference to the patent specification. Defs. Br. at 8-9 and

13.  Defendants cite no authority for this assumption, and there is none.  To the contrary, the

Federal Circuit has explained that when determining the "ordinary and customary meaning" of a

claim term, which is the "meaning that the term would have to a person of ordinary skill in the

art at the time of the invention," the person of ordinary skill is "deemed to read the claim term

not only in the context of the particular claim in which the disputed term appears, but in the

context of the entire patent, including the specification."  *GPNE Corp. v. Apple Inc*., 830 F.3d

1365, 1370 (2016) *citing Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005).  To be sure, the Federal Circuit added that "the only meaning that matters in claim construction is the meaning in the context of the patent." *GPNE Corp.*, 830 F.3d at 1370 *citing Trs. of Columbia Univ. v. Symantec Corp.*, 811 F.3d 1359, 1363 (Fed. Cir. 2016).  Accordingly, the mere fact that Dr. Williams cites to the patent specification—to support his application of the plain meaning of claim terms, and to corroborate his opinions about the difference between the claimed concepts and prior art references—does not provide a basis to strike any of his opinions. Defendants' true aim in trying to exclude Dr. Williams' opinions is less about claim construction, and more about muzzling his opinion that prior art ATM "cells" are not the same thing as the claimed "packets," and that ATM virtual circuit-switching is not "packet-centric."  Defs. Br. at 7-9.  The question of whether or not a person of ordinary skill in the art would know the difference between a "packet" and a "cell" is a question of fact, and expert testimony on the subject would be helpful to a trier of fact in evaluating questions about validity of the asserted claims over prior art references.

Defendants argue that Dr. Williams' opinions about the differences between "packets" and "cells" must be excluded because it is premised on a definition of "packet" that falls outside of the plain meaning.  Defs. Br. at 8 citing Defs. Ex. 1 (Williams Dep.) at 190:15-205:15.  But questions about the application of the plain meaning of "packets" in the validity analysis are factual questions, and Defendants have not established that Dr. Williams' view is mistaken. Defendants' argument rests on a few dictionary definitions suggesting that a "cell" is a type of "packet." *Id.*  But these dictionaries do not establish conclusively that a person of ordinary skill in the art does not know the difference between a "packet" and a "cell."  *Id.*  During his deposition, counsel for Defendants presented Dr. Williams with the dictionaries, and he explained that they do not account for the difference between packets and cells in the context of

the asserted claims.  *Id*. citing Defs. Ex. 1 (Williams Dep.) at 190:15-205:15; Ex. A, ¶¶ 38-40.

Defendants make too much of the fact that at one point during his deposition, Dr. Williams

responded affirmatively to a leading question about whether or not the patentee acted as his own

"lexicographer" when using the terms "packet" and "packet-centric." Defs. Br. at 8 citing Ex. 1,

at 191:14-192:19.  But Dr. Williams is not an attorney, and his testimony makes it clear that he

did not understand the legal significance of this question:



*Id*.

As the above testimony shows, Dr. Williams did not appreciate the legal meaning of

"lexicographer." *Id*.  Equally important, this testimony clarifies Dr. Williams' opinion that

exclusion of ATM cells from the scope of the terms "packet" and "packet-centric" is consistent

not only with the intrinsic record, but also with the plain meaning, which is what he means by "in

the general sphere." *Id*.  The Defendants are way off base in arguing that this testimony

constitutes an admission that Dr. Williams has knowingly set aside "ordinary meaning" in favor

of the legal "principles of *disclaimer* and/or *lexicography*." Defs. Br. at 8 (emphasis in original).

Defendants essentially argue that because neither party asked for a construction of

"packet," Dr. Williams should be precluded from consulting the intrinsic patent record to

corroborate his view of the differences between a "packet" and a "cell."  Defs. Br. at 7-9.

However, in their brief, Defendants themselves cite portions of the `517 patent specification that

they allege would support their expert's opinion that there is no difference between "cells" and "packets."  Defs. Br. at 8 citing Defs. Ex. 3, 517 patent at 25:49-50 and 30:28-30.  First, the passages that Defendants rely upon do not support their position because the specification uses the terms "packets" and "cells" intentionally to refer to two different things. *Id*.  Second, there is no legitimate basis for excluding Dr. Williams' citations to the intrinsic patent record in support of opinions about the difference between the claimed "packets" and prior art "cells."

Turning to the "packet-centric" limitation, Defendants argue that this concept cannot be referenced in support of any validity opinions whatsoever because the term only appears in the preamble of claim 1 of the `517 patent.  Defs. Br. at 9.  However, the common specification of all of the asserted patents discusses "packets" in the context of a "packet centric" system, all with a common theme of distinguishing prior art ATM cells and virtual circuits.  *See, e.g.,* Ex. D, `517 Patent at 31:43-32:26; see also Ex. E, `206 Patent at 30:33-51; Ex. F, `629 Patent at 32:12-30; Ex. G, `971 Patent at 32:29-47.  This intrinsic evidence is certainly relevant to the factual question about whether or not prior art ATM systems satisfy the plain meaning of both the "packet" and "packet-centric" limitations.  *Id*.  It would not confuse a jury to allow Dr. Williams to point to the intrinsic record in support of his opinions about the difference between prior art ATM systems that process "cells" versus the claimed systems and methods of processing "packets" when the intrinsic record presents the same factual analysis that Dr. Williams applies in support of his validity opinions.  *Id*.

ii.    "Reservation Algorithm"

Defendants provide no basis for their request to strike Dr. Williams' opinions regarding the term "reservation algorithm."  Instead, they conclude that "Dr. Williams is offering a construction of 'reservation algorithm' in light of a specific portion of the specification, rather than applying the plain meaning"—without detailing why Dr. William's interpretation is non-

ordinary.  Defs.' Br. at 10.  Defendants are wrong; Dr. Williams does not provide claim construction arguments.  Instead, he applies the plain meaning of "reservation algorithm" based on his review of the intrinsic record to determine whether the Raychaudhuri reference falls within the scope of claim 1 of the `629 Patent.  *See* Ex. A, ¶ 88 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

This material is precisely the type on which experts regularly opine.  *See Verizon Servs. Corp.*, 602 F.3d at 1341.  Indeed, Dr. Acampora does exactly this when he cites to the very same portion of the specification to inform his interpretation of "advanced reservation algorithm," which he later applies to the prior art:



*See* Ex. B, ¶ 88.  While the experts disagree on the proper application of the claim term to the prior art, this is surely not a sufficient basis to exclude Dr. Williams' testimony, as Defendants suggest.

   iii.  <u>"Scheduling"</u>

Likewise, Dr. Williams' applies the plain meaning of "scheduling" throughout his report, and in particular, to determine whether the Forslöw prior art reference falls within the scope of the claims.  As Dr. Williams explains:



Ex. A, ¶725.

Dr. William's application of "scheduling" to the prior art is consistent with the plain meaning of the term upon a review of the intrinsic record, and Defendants provide no explanation to the contrary.  Defs.' Br. at 10; *O2 Micro Int'l Ltd.*, 521 F.3d at 1360.  In particular, the `206 patent emphasizes that queuing alone is not enough to satisfy "scheduling." *See, e.g.*, Ex. F, `206 patentat 16:65-67 ("Providing a high quality of service can require a QoS mechanism that is more sophisticated than simple queue management."), 15:21-25 ("[I]t is desirable that QoS-based differentiated services be provided with mechanisms that go beyond what simple queuing can do.").  The `206 Patent makes clear that while "it is desirable that queuing be used merely to enable packet and radio frame processing," it is not alone sufficient to schedule packet communication.  *Id.* at 15:11-12; and 15:16-23 (cautioning against using "queue management as the primary QoS mechanism in providing QoS-based differentiated services").

Indeed, Dr. Williams' application of the plain meaning against the prior art references is exactly the type of factual question ripe for expert testimony.  For example, in *Perdiemco*, this Court considered a hypothetical claim reciting a "driving" step, and explained that "[w]hether a person is 'driving' a vehicle by simply sitting in the vehicle" is a factual question.  *PerdiemCo, LLC. v. Industrack LLC*, No. 215CV00726JRGRSP, 2016 WL 6432699, at *1 (E.D. Tex. Oct. 31, 2016).  Much like in *Perdiemco*, Dr. Williams appropriately opines whether the Forslöw prior art discloses "scheduling" when it describes queuing.

**B.      To the Extent the Court Finds that Dr. Williams is Offering Constructions For Any of the Terms, The Proper Remedy is Additional Claim Construction.**

As discussed above, Dr. Williams does not argue claim construction, but instead applies the ordinary meaning of the terms to the prior art.  But, even if the Court determines that Dr. Williams presents claim construction arguments, IV should not be precluded from presenting this

evidence at this stage of the case under a waiver theory.  Indeed, the Federal Circuit has held that additional claim construction is not waived even in instances when a party requested claim construction weeks into a trial.  *See, e.g.*, *GPNE Corp. v. Apple Inc.*, 830 F.3d 1365, 1372 (Fed. Cir. 2016)("[W]e find no waiver by GPNE of the objections it raised to the construction of "node" before the case went to the jury."); *see also Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, 628 F.3d 1359, 1376 (Fed. Cir. 2010) ("litigants waive their right to present new claim construction disputes *if they are raised for the first time after trial*")(emphasis added); *Biscotti Inc.*, Case No. 13-cv-01015-JRG-RSP, at 5 (noting only that "[a]dispute arising days, or often hours, before jury selection or before the jury retires to deliberate is difficult to resolve on short order").

Moreover, it is well-established that if, as here, a finding of waiver "results in an open dispute about a term's ordinary meaning in the context of this patent—a dispute the jury must decide for itself," the result would be "impermissible" under *O2 Micro*.  *See Biscotti Inc.*, Case No. 13-cv-01015-JRG-RSP, at 5.  If the Court were to strike Dr. Williams' arguments, the jury would still be required to apply the ordinary meaning of the above terms "in the context of this patent" on validity as the Court has provided no guidance.

Defendants rely on *Ericsson v. TLC* to suggest that IV waived its right to ask for a construction of the claim terms at issue.  Defs. Br. at p. 6 citing *Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, No. 2:15-CV-00011-RSP, 2017 WL 5137401, at *9 (E.D. Tex. Nov. 4, 2017).  However, Defendants' reliance on this case is misplaced because, although the *Ericsson* court declined to further construe a claim term to which the parties had ascribed plain meaning, the court maintained that the term has its plain and ordinary meaning, and found no basis to exclude plaintiff's expert's testimony on that subject.  *Id*.  Instead, the court concluded that

defendant "was not precluded from presenting [its own] argument or evidence," to which plaintiff's expert would present his contrary view, and "the jury will decide which testimony to credit." *Id.*

For these reasons, if the Court determines that Dr. Williams does in fact present claim construction arguments, the proper remedy is additional claim construction as opposed to waiver.

**C.    Defendants Will Not Be Prejudiced if the Court Ordered Additional Claim Construction or Adopted IV's Plain Meaning of the Terms.**

There would be no prejudice to Defendants if the Court ordered additional claim construction or adopted IV's plain and ordinary meaning for the above terms.  Defendants argue that they "would be forced to substantially revise their non-infringement expert report" should the Court allow Dr. Williams' arguments.  Defs. Br. at p. 12, fn. 7.  This is simply untrue, at least because Defendants have either adopted IV's plain meaning or have already applied it to their non-infringement and invalidity opinions, as discussed below.

i.    <u>Defendants' Experts Applied IV's Plain Meaning of the Terms "Packet" and "Packet Centric" in Their Reports.</u>

Defendants' experts on non-infringement and invalidity, Drs. Wicker and Acampora, fully anticipated Dr. Williams' plain meaning interpretations of "packet" and "packet-centric," and they both applied Dr. William's interpretations as alternative opinions in their non-infringement and invalidity opinions.  Ex. B, ¶¶ 171-184, 1684-1687, 1689-1695, 1740, 1756, 1768, 1774, 1850; Ex. C, ¶¶ 845-869, 1025-1027.  Defendants' experts also offered their own interpretations of the plain meaning of these claim terms.  *Id.*

Defendants' invalidity expert, Dr. Acampora offered a detailed analysis in support of his own interpretations of the claim terms "packet and "packet-centric," and he applied not only his interpretations but those of Dr. Williams to the prior art references.  Ex. B, ¶¶ 171-184, 1684-1687, 1689-1695, 1740, 1756, 1768, 1774, 1850.  For example, he cites ████████████



Ex. B, ¶ 1850 (emphasis added).

Defendants' claim of surprise and prejudice concerning treatment of the preamble term "packet-centric" as a limitation is unfounded.  Defs. Br. at 3-4, 8-9.  First, the IPR papers cited in Defendants' brief show that, at least as early as July of 2018, IV ascribed the same plain meaning to "packets" and "packet-centric" that Dr. Williams now applies in his invalidity report.   Defs. Br. at 4, footnotes 3 and 4 *citing* Defs. Ex. 7 (IP paper dated August 16, 2018), and Defs. Exs. 8 and 9 (IPR papers dated July 9, 2018).  Second, the Defendants' claim of prejudice and surprise falls particularly flat in light of the opinions offered by Defendants' own non-infringement expert, Dr. Wicker, who relies heavily on an assumption that the preamble term "packet-centric" is a claim limitation allegedly missing from the accused LTE systems.  Ex. C, ¶¶ 845-869, 1025-1027, and 1164.

██████████████████████████████████████████████████

████████████████████████████████

Because Defendants' invalidity expert has already anticipated and accounted for the plain meanings that Dr. Williams applies to the terms "packet" and "packet centric," and because Defendants' non-infringement expert applies the same interpretation in support of his non-infringement opinion, Defendants cannot claim at this stage that they would be prejudiced by Dr. Williams opinions on the same factual issues.

     ii.    <u>Defendants Have Been Aware of IV's Plain Meaning of "Reservation Algorithm" For Months</u>.

Defendants have been aware of IV's infringement theories relating to the `629 Patent since at least February 28, 2018.  Dr. Williams applies the same plain meaning of "reservation algorithm" in his validity report as IV has employed since its first amended infringement contentions.  Ex. H (IV's First Supplemental Infringement Contentions of the `629 Patent). Defendants cannot now claim surprise when they have been in possession of IV's application of this claim term to the accused products for months.

     iii.    <u>Defendants' Expert Agreed with IV's Plain Meaning of "Scheduling" During His Deposition</u>.

Likewise, Defendants will not be prejudiced if the Court adopts IV's plain meaning definition of "scheduling" because ████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████████████████████  Given Defendants' own

interpretation of "scheduling," there should be no reason to "substantially revise" their reports if the Court adopted IV's plain meaning of the term.

### D.    The Defendants Have not Stated a Clear Case for the Requested Relief

Defendants are asking the Court to strike over one-hundred-and-twenty paragraphs of Dr. Williams' opinions, constituting over ten percent of his expert report on validity of the patents in suit.  Defs. Br. at 13.  Even if Defendants' arguments justified the extraordinary relief they are seeking, they have not explained any nexus between their arguments and the expert opinions expressed in these paragraphs, most of which deal with factual issues concerning the differences between the claimed subject matter and myriad prior art references taken individually and in combinations.  *Id.*  The Defendants make no attempt to map these paragraphs to their arguments. *Id.*  Therefore, the Court should separately deny this motion because Defendants have not stated a clear case for the requested relief.

## IV.    CONCLUSION

For the foregoing reasons, IV respectfully requests that the Court deny Defendants' *Daubert* Motion and enter an order allowing Dr. Williams to offer opinions at trial applying the plain meaning of the terms "packet," "packet-centric," "reservation algorithm," and "scheduling," to the asserted prior art references.

DATED:  December 4, 2018                    Respectfully submitted,


                                            _/s/ Martin J. Black_____
                                            Martin J. Black – **LEAD ATTORNEY**
                                            Pennsylvania Bar No. 54319
                                            Kevin M. Flannery
                                            Pennsylvania Bar No. 62593
                                            DECHERT LLP
                                            Cira Centre
                                            2929 Arch Street
                                            Philadelphia, PA 19104
                                            Tel: (215) 994-4000
                                            Fax: (215) 994-2222
                                            martin.black@dechert.com
                                            kevin.flannery@dechert.com

                                            Justin F. Boyce
                                            California Bar No. 181488
                                            DECHERT LLP
                                            2440 W. El Camino Real, Suite 700
                                            Mountain View, CA 94040-1499
                                            Tel: (650) 813-4800
                                            Fax: (650 813-4848
                                            justin.boyce@dechert.com

                                            T. John Ward Jr.
                                            Texas Bar No. 00794818
                                            Claire Abernathy Henry
                                            Texas Bar No. 24053063
                                            WARD, SMITH & HILL, PLLC
                                            1507 Bill Owens Pkwy.
                                            Longview, TX 75604
                                            Tel: (903) 757-6400
                                            Fax: (903) 757-2323
                                            Email: jw@wsfirm.com
                                            Email: claire@wsfirm.com

                                            *Counsel for Plaintiff Intellectual Ventures I LLC*

## <u>CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL</u>

This is to certify that the above document should be filed under seal along with attachments

because it contains material designated by the parties as confidential pursuant to the Stipulated

Protective Order entered in this case (Dkt. 64).


*/s/ Martin J. Black*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing document was served via e-mail, in accordance with Local Rule CV-5(d) on December 4, 2018 on the following counsel of record:

R. Adam Lauridsen
Justina K. Sessions
**Keker, Van Nest & Peters LLP**
633 Battery Street
San Francisco, CA 94111
alauridsen@keker.com
jsessions@keker.com

Asim M. Bhansali
Kate Lazarus
**Kwun Bhansali Lazarus LLP**
555 Montgomery Street, Suite 750
San Francisco, California 94111
KBLTMUSIV@kblfirm.com


*Attorneys for T-Mobile USA Inc. and T-Mobile US Inc.*

Douglas M. Kubehl
Jonathan B. Rubenstein
Melissa L. Butler
Jeffrey S. Becker
Megan V. LaDriere
Steven T. Jugle
Harrison G. Rich
Johnson K. Kuncheria
Bryan D. Parrish
**BAKER BOTTS L.L.P.**
2001 Ross Avenue
Dallas, Texas 75201
BBEDTXIVEricssonInternal@BakerBotts.com

Melissa R. Smith
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, TX 75670
melissa@gillamsmithlaw.com

*Attorneys for T-Mobile USA Inc.,*
*T-Mobile US Inc., Ericsson, Inc. and*
*Telefonaktiebolaget LM Ericsson*

*/s/ Marty J. Black*