IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Civil Action No. 2:17-cv-577 |
| T-MOBILE USA, INC., T-MOBILE US, INC., ERICSSON INC., and TELEFONAKTIEBOLAGET LM ERICSSON | § § § § § § | **FILED UNDER SEAL** |
| *Defendants*. | § § | |

**DEFENDANTS' MOTIONS *IN LIMINE***

i

## **TABLE OF CONTENTS**

1. **No evidence or argument of secondary considerations of non-obviousness, because no nexus was alleged or proven.** ....................................................................... 1

2. **No evidence, argument, or suggestion regarding any government or regulatory investigations into Ericsson or T-Mobile.** ...................................................... 4

3. **No evidence, argument, or suggestion regarding Ericsson or T-Mobile's total company revenue, profit, market capitalization, net worth, or other similar revenue claims.** ................................................................................................................ 5

4. **No improper argument regarding the burden of proof or analogizing the burdens of proof in this case to standards used in other areas of the law that may be prejudicial (e.g., family law, personal injury, criminal law, or fraud).** .......... 6

5. **No evidence, argument, or suggestion that Malibu Networks, Inc. ("Malibu") or IV ever communicated with Ericsson or T-Mobile regarding the Patents-in-Suit prior to filing of the suit.** ..................................................................................... 6

6. **No evidence, argument, or suggestion that any third-party licensee has taken a license to these particular patents as opposed to a license to the entire portfolio.** ................................................................................................................................. 7

7. **No evidence, argument, or suggestion regarding an affirmative reference to any matters or communications as to which the offering party asserted privilege, including, but not limited to, any references to any pre-suit investigation performed by IV and any evidence over which IV has claimed privilege.** ................................................................................................................................. 7

## **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Advanced Technology Incubator, Inc. v. Sharp Corp., et al.*,
  No. 5:09-CV-135 (E.D. Tex. March 31, 2010) ............................................................................7

*Allergan Inc. v. Sandoz Inc.*,
  726 F.3d 1286 (Fed. Cir. 2013) ..................................................................................................1

*BMC Software, Inc. v. ServiceNow, Inc.*,
  No. 2:14-CV-903-JRG, 2016 WL 379620 (E.D. Tex. Feb. 1, 2016) .........................................6

*DataTreasury v. Wells Fargo & Company, et. al*,
  No. 2:06-CV-72-DF (E.D. Tex. Feb. 26, 2010) .........................................................................7

*Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*,
  851 F.2d 1397 (Fed. Cir. 1988) ..............................................................................................1, 2

*Ericsson, Inc. v. D-Link Sys., Inc.*,
  773 F.3d 1201 (Fed. Cir. 2014) ..................................................................................................6

*Graham v. John Deere Co.*,
  383 U.S. 1 (1966) .......................................................................................................................1

*Huawei Techs. Co. Ltd. v. T-Mobile US, Inc.*,
  No. 2:16-cv-00052-JRG-RSP, Dkt. No. 440 (E.D. Tex. Sept. 29, 2017) ..................................5

*Implicit, LLC v. Trend Micro, Inc.*,
  No. 6:16-cv-00080-JRG, Dkt. No. 253 (E.D. Tex. Oct. 3, 2017) ..............................................5

*In re Antor Media Corp.*,
  689 F.3d 1282 (Fed. Cir. 2012) ..................................................................................................4

*Novo Nordisk A/S v. Caraco Pharmaceutical Laboratories Ltd.*,
  719 F.3d 1346 (Fed. Cir. 2013) ..................................................................................................1

*Parthenon Unified Memory Architecture v. Apple*,
  No. 2:15-CV-621 (E.D. Tex. Sept. 21, 2016) ............................................................................6

*SimpleAir, Inc. v. Google Inc.*,
  No. 2:14-CV-00011-JRG (E.D. Tex. Oct. 6, 2015) ...................................................................5

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011) ..................................................................................................5

*Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*,
   683 F.3d 1356 (Fed. Cir. 2012)......................................................................................1

*ZiiLabs Inc., Ltd. v. Samsung Electronics Co. Ltd. et al.*,
   No. 2:14-CV-203-JRG-RSP (E.D. Tex. Oct. 28, 2015) ................................................4

**STATUTES**

35 U.S.C. § 103............................................................................................................................1

**OTHER AUTHORITIES**

Fed. R. Evid. 401, 402 .................................................................................................................6

Fed. R. Evid. 402 .........................................................................................................................4

Fed. R. Evid. 403 ......................................................................................................................5, 8

Federal Rules of Evidence 402 and 403 ..................................................................................4, 5

Local Rule CV-7(h) .....................................................................................................................2

Defendants respectfully move the Court for an order, *in limine*, precluding Plaintiff Intellectual Ventures I, LLC ("IV") from raising the following during trial:

### 1. No evidence or argument of secondary considerations of non-obviousness, because no nexus was alleged or proven.

IV has failed to advance any arguments or expert testimony sufficient to establish the existence of secondary considerations of non-obviousness, and permitting IV to first raise this issue at trial would improperly color the jury as to the application of this concept. Evidence of secondary considerations is a factual consideration under the obviousness analysis of 35 U.S.C. § 103 for invalidity. *Allergan Inc. v. Sandoz Inc.*, 726 F.3d 1286, 1290-91 (Fed. Cir. 2013) (citing *Graham v. John Deere Co.*, 383 U.S. 1 (1966)). Secondary considerations include commercial success, long-felt but unsolved needs, failure of others, and unexpected results. *Id.* at 1291. The patentee holds the burden of establishing secondary considerations, when a patent claim is found otherwise obvious under § 103. *Novo Nordisk A/S v. Caraco Pharmaceutical Laboratories Ltd.*, 719 F.3d 1346, 1352-53 (Fed. Cir. 2013); *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1397, 1392 (Fed. Cir. 1988) ("In meeting its burden of proof, the patentee in the first instance bears the burden of coming forward with evidence sufficient to constitute a prima facie case of the requisite nexus."). To establish commercial success, the patentee must show the existence of a nexus between the patented invention and the success. *Demaco*, 851 F.2d at 1392 ("When a patentee asserts that commercial success supports its contention of nonobviousness, there must of course be a sufficient relationship between the commercial success and the patented invention. The term "nexus" is often used, in this context, to designate a legally and factually sufficient connection between the proven success and the patented invention, such that the objective evidence should be considered in the determination of nonobviousness."); *Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, 683 F.3d 1356, 1363 (Fed. Cir. 2012) ("[F]or

commercial success to be probative evidence of nonobviousness, a nexus must be shown between the claimed invention and the evidence of commercial success.") A patentee generally establishes this nexus by showing "both that there is commercial success, and that the thing (product or method) that is commercially successful is the invention disclosed and claimed in the patent." *Demaco*, 851 F.2d at 1392. If the commercially successful product "is not coextensive with the patented invention—for example, if the patented invention is only a component of a commercially successful machine or process—the patentee must show prima facie a legally sufficient relationship between that which is patented and that which is sold." *Id*.

IV cannot establish such a nexus because IV's expert, Dr. Williams, provides alleged secondary considerations that are general in nature without linking them to the alleged invention of the asserted patents. Dr. Williams provides three secondary considerations, but all are asserted without any supporting evidence and no established nexus.

First, IV's expert asserts that there was a long-felt, but unmet need due to prior art systems that were ████████████████████████████████████████ ████████████████████████████████████████ Ex. 4 (Williams Validity Rep.), ¶ 997. However, Dr. Williams fails to cite any evidence that systems had such short-comings beyond a conclusory statement. There is no evidence that the Malibu patents address a long-felt but unmet need besides Dr. Williams' unsupported allegations. To the contrary, Defendants' invalidity expert, Dr. Acampora, provides multiple prior artists who had already solved the problem of providing QoS to different application types through various mechanisms for allocating and scheduling network traffic. Ex. 5 (Acampora Invalidity Rep., ¶ 3484). Ericsson, for example, had multiple patents teaching how to allocate based on QoS requirements of the application, including based on the delay sensitivity or service level

2

agreements of various users and/or traffic flows.  *See* Forslow (describing how to provide QoS based on application type), Rydnell (describing how to reserve slots for time-sensitive flows), and Turina (describing how to take into account subscribers' SLAs when allocating resources.) *See* Exs. 1, 2, and 3.  IV cannot meet its burden with its expert's *ipse dixit* alone.

Dr. Williams further alleges that the patents have enjoyed commercial success and industry praise as shown through the launch, success, and praise of LTE services.  Ex. 4 (Williams Validity Rep.), ¶¶ 1003-1008.  However, Dr. Williams has provided no nexus between the success of LTE in general and the asserted patents.  LTE involves many technologies covering thousands of patents from numerous companies.  The alleged invention in the asserted patents involves resource allocation and scheduling, which are only one of many technologies within LTE.  On industry praise, Dr. Williams cites to only one statement on Malibu by of an employee of DirectNET alleging that Malibu Networks is developing a solution on issues like quality of service.  Ex. 4 (Williams Validity Rep.), ¶ 1007.  However, this one statement from the year 2000 (well before the launch of LTE) provides no nexus of how the specific asserted patents contributed to LTE.  Without evidence of how the success and praise of LTE is specifically due to the asserted patents, there is no nexus.

Lastly, Dr. Williams contends that commercial acquiescence through licensing supports a showing of non-obviousness.  Ex. 4 (Williams Validity Rep., ¶ 1009).  However, ███████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███.  Further, the mere existence of other licenses does not relate to the actual merits of the

patent claims, and therefore is insufficient to satisfy the nexus requirement and rebut a conclusion of obviousness. *In re Antor Media Corp.*, 689 F.3d 1282, 1293-94 (Fed. Cir. 2012). ("[B]eyond alleging the existence of a number of licenses, has not asserted any nexus between the merits of the invention and the licenses themselves.")  Accordingly, there is no nexus to show that commercial acquiescence through licensing indicates a secondary consideration of non-obviousness.

If IV were permitted to raise the concept of secondary considerations at trial, such presentation could lead the jury to artificially tie this concept to other fact-finding inquiries with respect to invalidity. Moreover, once the jury learns of this concept, it would be impossible for them to disregard IV's empty arguments regarding commercial success, even when instructed to, and such undue influence could even spill into other issues, including infringement. IV should be precluded from coloring the jury with the concept of secondary considerations when no supporting evidence of it exists.

**2. No evidence, argument, or suggestion regarding any government or regulatory investigations into Ericsson or T-Mobile.**

Reference to any government or regulatory investigation by U.S. or foreign authorities into Ericsson or T-Mobile should be precluded as irrelevant and unduly prejudicial pursuant to Federal Rules of Evidence 402 and 403.  IV has not previously disclosed a theory or facts in this regard and has not produced any evidence that would support such a reference.  In any event, evidence of such investigations would remain irrelevant to the issues properly triable to the jury in this case.  Fed. R. Evid. 402; *ZiiLabs Inc., Ltd. v. Samsung Electronics Co. Ltd. et al.*, No. 2:14-CV-203-JRG-RSP, at *5 (E.D. Tex. Oct. 28, 2015) (granting motion in *limine* which sought to preclude any "evidence or argument referencing unrelated litigation or governmental investigations involving Samsung").  Furthermore, argument or suggestion that either Ericsson

4

or T-Mobile is or has been under government or regulatory investigation would severely prejudice the Defendants, confuse the issues and mislead the jury. *See* Fed. R. Evid. 403.

Investigations by other entities bear no relation to the patents-in-suit and the issues raised in this case, and any possible attenuated connection is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 402, 403. For these reasons, IV should not be permitted to offer evidence, argument or suggestion regarding any government or regulatory investigation into Ericsson or T-Mobile.

**3. No evidence, argument, or suggestion regarding Ericsson or T-Mobile's total company revenue, profit, market capitalization, net worth, or other similar revenue claims.**

IV should be precluded from referencing Defendants' total revenues, market capitalization, net worth or similar revenue claims. *See SimpleAir, Inc. v. Google Inc.*, No. 2:14-CV-00011-JRG, at *4 (E.D. Tex. Oct. 6, 2015) (precluding testimony, evidence and argument regarding total sales, total revenue, and advertising and financial worth of the defendant). IV's damages expert, Mr. Bratic, does not base his reasonable royalty calculation on Defendants' total revenue. Permitting the jury to learn facts concerning Defendants' total revenue would therefore "skew the damages horizon for the jury." *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011). Similarly, IV should not be able to skew the damages horizon with references to Defendants' revenue, profitability, or net worth. Allowing the jury to hear these sorts of large numbers would unfairly prejudice Defendants.

This Court has granted similar motions in limine. *See, e.g.*, *Implicit, LLC v. Trend Micro, Inc.*, No. 6:16-cv-00080-JRG, Dkt. No. 253 at 6 (E.D. Tex. Oct. 3, 2017) (ordering that "[n]either party may reference Trend's size, profits, or total value without obtaining leave from the Court"); *Huawei Techs. Co. Ltd. v. T-Mobile US, Inc.*, No. 2:16-cv-00052-JRG-RSP, Dkt. No. 440 at 11 (E.D. Tex. Sept. 29, 2017) ("Huawei may not introduce evidence or argument

5

disclosing T-Mobile's past annual revenue, estimated future annual revenue, or overall capital expenditures."). Accordingly, IV should be required "to structure its damages presentation in such a way that the jury will not be able to calculate [Ericsson's or T-Mobile's] total revenues, in accordance with the evidentiary rule set forth in Ericsson." *BMC Software, Inc. v. ServiceNow, Inc.*, No. 2:14-CV-903-JRG, 2016 WL 379620, at *3 (E.D. Tex. Feb. 1, 2016) (citing *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014)). Likewise, IV should be precluded under Fed. R. Evid. 401, 402, and/or 403 from introducing other larger financial figures, such as Ericsson's and/or T-Mobile's total profits or accused product revenues, which would only confuse the jury and skew the damages horizon.

4. **No improper argument regarding the burden of proof or analogizing the burdens of proof in this case to standards used in other areas of the law that may be prejudicial (e.g., family law, personal injury, criminal law, or fraud).**

    The Court should preclude analogizing the burdens of proof in this case to standards used in other areas of the law, or make use of analogies that are improper. In particular, no party should mention that the clear and convincing standard is the standard applied in family law cases to terminate parental rights or withdraw life support. In addition, no party should analogize the burdens of proof in this case to situations arising in the context of family law, personal injury, criminal law or fraud, or other contexts where the risk of personal loss is prejudicially high. *See Parthenon Unified Memory Architecture v. Apple*, No. 2:15-CV-621, at *7 (E.D. Tex. Sept. 21, 2016).

5. **No evidence, argument, or suggestion that Malibu Networks, Inc. ("Malibu") or IV ever communicated with Ericsson or T-Mobile regarding the Patents-in-Suit prior to filing of the suit.**

    IV should not be permitted to argue or suggest at this point in the case that Malibu or IV communicated with Ericsson and/or T-Mobile regarding the patents-in-suit prior to filing this

lawsuit. *See Advanced Technology Incubator, Inc. v. Sharp Corp., et al.*, No. 5:09-CV-135 at *21-22 (E.D. Tex. March 31, 2010) (granting motion in *limine* seeking to preclude "Evidence or Argument Not Previously Produced to Defendants"). Again, IV has neither disclosed facts nor produced evidence in this regard and did not, in fact, engage in any kind of discussion regarding the patents-in-suit before suing the Defendants. Any attempts to argue or introduce evidence to the contrary, particularly at this stage of the case, would mislead the jury, prejudice Defendants by causing unfair surprise, and is inconsistent with the disclosure requirements of the federal rules.

6. **No evidence, argument, or suggestion that any third-party licensee** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

   The information produced by IV in this case shows that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. However, IV has produced absolutely no evidence that any person or entity has taken a license to one or more of the patents-in-suit by themselves. Therefore, IV should not be permitted to suggest that any third-party licensee took a license to *only* one or all of the particular patents at issue in this case, as opposed to a license to the *entire* portfolio. Any such suggestion would confuse the issues and potentially mislead the jury.

7. **No evidence, argument, or suggestion regarding an affirmative reference to any matters or communications as to which the offering party asserted privilege, including, but not limited to, any references to any pre-suit investigation performed by IV and any evidence over which IV has claimed privilege.**

   Neither party should be permitted to offer any document which that party previously withheld on the grounds of attorney-client privilege or work product doctrine, or elicit testimony mentioning any matter that the opposing party was barred from discovering before trial under a claim of privilege or work product. *See DataTreasury v. Wells Fargo & Company, et. al*, No.

7

2:06-CV-72-DF, at *40-41 (E.D. Tex. Feb. 26, 2010) (granting motion in *limine* to preclude documents and information for which a party was ultimately denied discovery based on a claim of privilege).   Pursuant to Federal Rule of Evidence 403, offering such evidence would hinder the opposing party's ability to prepare effectively for trial and constitute unfair surprise.

Dated: December 19, 2018

Asim M. Bhansali
  State Bar No. 90001290
  E-mail: abhansali@kblfirm.com
Kate E. Lazarus
  *Admitted Pro Hac Vice*
  E-mail: klazarus@kblfirm.com
**KWUN BHANSALI LAZARUS LLP**
555 Montgomery Street, Suite 750
San Francisco, California, 94111
Telephone: (415) 630-2350

R. Adam Lauridsen
  *Admitted Pro Hac Vice*
  E-mail: alauridsen@keker.com
**KEKER, VAN NEST & PETERS LLP**
633 Battery Street
San Francisco, CA 94111
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

**ATTORNEYS FOR T-MOBILE USA, INC. and T-MOBILE US, INC.**

Respectfully submitted,

By: */s/ Douglas M. Kubehl*
Douglas M. Kubehl
  Texas State Bar No. 00796909
  E-mail: doug.kubehl@bakerbotts.com
Jeffery S. Becker
  Texas State Bar No. 24069354
  E-mail: jeff.becker@bakerbotts.com
Johnson K. Kuncheria
  Texas State Bar No. 24070092
  Email: johnson.kuncheria@bakerbotts.com
Harrison G. Rich
  Texas State Bar No. 24083730
  E-mail: harrison.rich@bakerbotts.com
Steven T. Jugle
  Texas State Bar No. 24083280
  E-mail: steven.jugle@bakerbotts.com
Megan V. LaDriere
  Texas State Bar No. 24083348
  E-mail: megan.ladriere@bakerbotts.com
Bryan D. Parrish
  Texas State Bar No. 24089039
  Email: bryan.parrish@bakerbotts.com
Melissa L. Butler
  Texas State Bar No. 24097442
  E-mail: melissa.butler@bakerbotts.com
**BAKER BOTTS L.L.P.**
2001 Ross Avenue
Dallas, Texas 75201
Telephone: (214) 953-6500
Facsimile: (214) 953-6503

Melissa R. Smith
  Texas State Bar No. 24001351
  E-mail: melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

**ATTORNEYS FOR T-MOBILE USA, INC., T-MOBILE US, INC, TELEFONAKTIEBOLAGET LM ERICSSON, AND ERICSSON INC**

**CERTIFICATE OF SERVICE**

  I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document via electronic mail on December 19, 2018.

*/s/ Jonathan B. Rubenstein*
Jonathan B. Rubenstein

**CERTIFICATE OF CONFERENCE**

  I hereby certify that Defendants have complied with the meet and confer requirements set forth in Local Rule CV-7(h).  Counsel for Ericsson and T-Mobile and counsel for IV met and conferred on December 17, 2018 and December 19, 2018.  Plaintiff indicated that it is opposed to the relief sought in this motion.

*/s/ Jonathan B. Rubenstein*
Jonathan B. Rubenstein

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

  I hereby certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this matter.

*/s/ Jonathan B. Rubenstein*
Jonathan B. Rubenstein
