IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| INTELLECTUAL VENTURES I LLC, § § *Plaintiff*, § § v. § T-MOBILE USA, INC., T-MOBILE US, INC., § ERICSSON INC., and § TELEFONAKTIEBOLAGET LM ERICSSON § § § *Defendants*. § § | Civil Action No. 2:17-cv-577 **FILED UNDER SEAL** |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTIONS *IN LIMINE***

Defendants file this opposition to the motions *in limine* of Plaintiff Intellectual Ventures I LLC ("IV"):

**1.   Pejorative references to IV or NPE business model (e.g., 'patent troll,' 'non-practicing entity,' 'patent assertion entity,' 'a company that doesn't make anything,' or 'a company that doesn't sell anything').**

IV has withdrawn its motion in limine No.1 (Dkt. No. 281).

**2.   Evidence relating to Defendants' IPRs filed against the patents-in-suit.**

In email correspondence dated December 18, 2019, counsel for Defendants agreed to the exclusion of evidence relating to Defendants' IPRs filed against the patents-in-suit, "subject to the understanding that Defendants may introduce such evidence if IV first opens the door, for example, by arguing that the Patent Office has considered any prior art that is now subject to a pending IPR or any argument that contradicts a position that the PTAB has taken in response to that argument." *See* Ex. 1 (12/18/18 8:38 p.m. email from M. LaDriere to J. Abraham). On a subsequent telephone conference, IV's counsel indicated that he did not understand what was meant by "opening the door" and that Defendants' proposed language was too broad.

1

The Eastern District has allowed evidence of *inter partes* review when a party opens the door to such evidence.  In *Rembrandt Wireless Techs., LP v. Samsung Elecs.  Co.*, No. 2:13-CV-213-JRG-RSP, 2015 WL 627430 (E.D. Tex. Jan. 31, 2015), this Court granted a defendant's motion to exclude evidence of non-instituted IPRs, but stated:

> However, Samsung is instructed to avoid argument, testimony, or implication intended to represent to the jury that the prior art references in question were not considered by the United States Patent and Trademark Office or the examiner.  If Samsung, either expressly or implicitly, leads the jury to believe that this is the first time the relevant references have been evaluated, the Court will permit Plaintiff to rebut this line of argument by producing evidence of the PTAB's action on Samsung's non-instituted IPR petitions.

*Id*. at *5.

Similarly, in *Core Wireless Licensing S.A.R.L.*, this Court precluded the parties from referring to the existence, pendency, or outcome of post-grant proceedings at the USPTO, but stated explicitly: "This does not preclude the use of materials from such proceedings for impeachment purposes."  *Core Wireless Licensing S.A.R.L.*, 2016 WL 4718963, at *2.

Defendants agree generally that, in keeping with its prior rulings on this subject, this Court should not permit reference to any proceedings before the Patent Trial and Appellate Board (PTAB).  *See Packet Intelligence LLC v. NetScout Systems, Inc.*, No. 2:16-CV-230-JRG, at *7 (E.D. Tex. September 29, 2017); *see also Intellectual Ventures II LLC.  v. FedEx Corp.*, No. 2:16-CV-00980-JRG, at * 7-8 (E.D. Tex. April 26, 2018) (precluding IV from referencing any noninstituted or final written decision from any *inter partes* review proceedings).  However, if IV opens the door to such evidence at trial—as one would commonly understand the term "opening the door" to mean—then Defendants should be permitted to reference the IPR proceedings.[1]

---

[1] Defendants also should be permitted to discuss the institution of the IPRs to the extent IV argues that Defendants' continuing use of accused products constitutes willful infringement, as that evidence would be relevant to Defendants' subjective good faith belief that their actions do not constitute infringement of a valid patent

3. **Non-infringement arguments or testimony based on comparing the accused products to Malibu Networks' product(s) and/or prototype system(s).**

Dr. Jacob Jorgensen is the inventor on all of the assert patents, and Defendants should be permitted to cross-examine him about the claims and descriptions in his patents. When asked at his deposition about the claims and descriptions in his patent, however, Dr. Jorgensen insisted on answering questions only with respect to the system that he developed at Malibu. Dr. Jorgenson's choice about how to describe the claims and descriptions in his patent should not serve to limit Defendants' questioning of him at trial. For example, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇



As another example, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇



To preclude Defendants from discussing Malibu Networks' product(s) and/or prototype system(s) would preclude Defendants from asking the inventor about his patent and the words of those patents at all. Defendants should be permitted to discuss the asserted patents with the inventor at trial.

At a minimum, if Dr. Jorgensen discusses Malibu, his product(s), his prototype system(s), or the invention(s) of the asserted patents at trial, the door should be open to cross-examine him. During his deposition, when asked about the patents or his invention, Dr. Jorgensen consistently answered that he could only speak to his system. It would be prejudicial if Dr. Jorgensen is able to testify about Malibu, its technology, and his system, and yet Defendants are precluded from

cross examining him. If IV opens the door by introducing any evidence about Malibu's technology, Defendants should be able to cross examine him on these topics.

Further, Defendants are not introducing evidence regarding Malibu Networks' products/system to compare them to the accused products. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Defendants intend to discuss the claim language in light of the Malibu technology at the time the patents were filed, which provides context for the ordinary meaning of the claim terms such as "future transmission frame" and what it means for a device to reside on a customer's premises. *Id.* at 191:21-196:1 (regarding "future frames"), 214:10-215:21 (regarding CPE). The cases that IV cites merely preclude comparison of **accused products** to a plaintiff's commercial embodiments or actual products. *See Zenith Labs., Inc. v. Bristol-Myers Squibb Co.*, 19 F.3d 1418, 1423 (Fed. Cir. 1994) ("[I]t is error for a court to compare in its infringement analysis **the accused product or process** with the patentee's **commercial embodiment or other version of the product or process** . . . ."). IV has cited no case indicating that evidence of a company's technology should be precluded. This evidence is relevant at least to show the ordinary meaning of claim terms, but further to provide background on Malibu, the original assignee of all asserted patents, its technology at the time, whether that technology practiced the asserted patents, and how the sole named inventor used the terms in the patents that are being given their ordinary meaning in this case.

4. **Evidence or argument relating to litigation between IV and Defendants in the District of Delaware**

IV is not entitled to a blanket exclusion with respect to evidence and argument relating to its prior litigation in the District of Delaware ("Delaware litigation") involving the Defendants in

this case. Defendants should be allowed to address aspects of the prior litigation between these same parties that are relevant to issues in the present case.

First, IV itself is relying on the Delaware litigation as evidence of Defendants' alleged willful infringement in this case. It would be fundamentally unfair to allow IV to introduce evidence regarding that case while precluding Defendants from explaining the context and results of those cases.

As an additional example, evidence regarding the damages IV sought in the Delaware litigation is directly relevant here. The patents-in-suit are part of a group of patents that IV purchased from Malibu Networks, which it refers to as the Group 37 Malibu Networks portfolio. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Defendants should be permitted to introduce evidence relating to damages sought in the Delaware litigation for a patent that ███████████████████████████████████████████████████████████████████. This evidence is highly relevant to the accuracy and reliability of IV's proposed damage analysis in the present case.

It is also relevant that the patents in suit were issued by the time of the Delaware litigation, and IV chose not to assert the patents in suit in the same litigation as the '248 Patent. This provides evidence regarding IV's perception of the value of the patents in suit as compared to the earlier asserted '248 Patent. ████████████████████████████████████████████████████████████████████████████████████████████████. In order to put into

context the advantages of the patents relative to each other, Defendants should be permitted to discuss the content and claims of the '248 Patent as opposed to the asserted patents.

IV fails to advance any case law that supports a categorical prohibition on reference to prior litigation. To the contrary, in *Tyco Healthcare Grp. LP v. Applied Med. Res. Corp.*, No. 9:09-CV-176, 2010 WL 11469880 (E.D. Tex. Feb. 26, 2010), the court denied the plaintiff's motion *in limine* seeking to preclude evidence, testimony or argument relating to the existence of prior patent infringement actions between the plaintiff and defendant. *Id.* at *2-3 (evidence relating to prior litigation was relevant to damages and willfulness analysis and any potential prejudice could be cured by instruction directing the jury that it could consider evidence of prior litigation only for purposes of willfulness and damages.).

In this case, certain evidence relating to the Delaware litigation is relevant under Federal Rule of Evidence 401 and the probative value of such evidence outweighs the risk of unfair prejudice, confusing the issues or misleading the jury under Rule 403. IV's motion *in limine* should be denied.

5. **Evidence or argument that IV did not offer Defendants a settlement or license prior to the institution of suit.**

IV argues in support of this motion that "there were settlement discussions prior to this litigation and a lengthy history of litigation between the parties in Delaware and the PTAB" and that settlement discussions are precluded under Federal Rule Evidence 408. (IV's Motion *in Limine* at 6). ███████████████████████████████████████████████████████████████████████████████████████████████████████████████ In any event, Defendants do not seek to introduce evidence of *settlement discussions* in the Delaware litigation or other proceedings. At least to the extent IV argues or

7

intimates that others have licensed patents from IV but that Ericsson and T-Mobile have refused to take a license to the Asserted Patents, Defendants should be permitted to respond that IV never has offered any license to the Asserted Patents. IV's motion should be denied.

6. **Evidence relating to uncharted prior art to prove invalidity by demonstrating that uncharted prior art discloses or suggests elements of the asserted claims, including introducing uncharted prior art as an exhibit and displaying uncharted prior art as a demonstrative.**

Defendants should not be precluded from showing the jury the two references that IV cites—*Yang* and *The Magic Wand*—because they are not "uncharted prior art [that] discloses or suggests elements of the asserted claims," as IV asserts, but instead merely background references. Defendants invalidity expert, Dr. Anthony Acampora, included these in his report as background references to provide support for his belief regarding a POSITA's knowledge and what a POSITA would understand. Ex. D (Acampora Report), ¶ 253 (explaining that a POSITA would understand that CBR traffic is jitter sensitive and citing Yang for support); *id.* at ¶ 1700 (explaining that a POSITA would know that a reservation requests includes a terminal identifier and citing *The Magic Wand* for support). An expert is permitted to rely on uncharted prior art references to corroborate his opinions on what a POSITA would understand.

Even the cases that IV cites specifically carve out an exception, allowing the expert to rely on "uncharted" prior art for this particular purpose. For example, in *Elbit*, the Court specifically did not preclude Defendant from "relying on uncharted prior art in the context of background material relevant to show the technology at issue, state of the art, or establishing what one of skill in the art would have known at the time of the invention." *Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys.*, 2:15-cv-00037-RWS-RSP, Dkt. 450 (E.D. Tex. July 25, 2017). The other case that IV cites, *Perdiemco*, also provides a similar explanation, and provides that the defendant "is otherwise not precluded from relying on uncharted prior art in the context of: (1) background

8

material relevant to the technology at issue; (2) state of the art; and (3) establishing what one of skill in the art would have known at the time of the invention." IV has cited no law that precludes all "uncharted" prior art from being presented to the jury. Because Dr. Acampora relies on the *Yang* reference and *The Magic Wand* reference as background materials to support his opinions on a POSITA's knowledge, Defendants should be able to present these references to the jury through Dr. Acampora's testimony.

7. **Attempts to prove public availability of alleged prior art sources based on collateral citations in third-party sources outside the scope of Defendants' invalidity contentions and/or Dr. Hall-Ellis's declaration.**

IV does not identify a basis for the Court to exclude citations to the disputed IEEE prior art (Dyson, Choi, and Oliveira) by POSITAs before the priority dates of the respective patents. IV's motion disputes whether these citations "establish" public availability, but does not dispute that they are *probative*. *See* Dkt. 267 at 8. As explained in Defendants' motion for summary judgment, evidence that POSITAs cited the disputed IEEE prior art in their own publications is probative of public availability because it tends to show that the disputed IEEE prior art were sufficiently accessible to POSITAs before the priority dates. Dkt. 210 at 6; Dkt. 260 at 10.[2] Indeed, IV's motion *in limine* acknowledges the probative value of this evidence. *See* Dkt. 267 at 8 (admitting the citations "suggest[] one person was aware of the prior art through any means at some time before invention occurred"). Though IV's articulation of the probative value underestimates that value, the dispute between the parties is the *weight* that the jury should afford this citation evidence, not its admissibility. IV's motion does not identify any unfair prejudice from admitting such evidence or otherwise attempt to argue that the probative value is substantially

---

[2] IV's cited cases are inapposite, as they relate to more obscure types of references than the IEEE prior art articles at issue in this case, and do not relate to the *admissibility* of citation evidence at issue in this motion *in limine*. *See* Dkt. 267 at 8.

outweighed by any such unfair prejudice. Thus, IV's motion fails under both FRE 401 and FRE 403.

In a footnote, IV suggests that the citation evidence "may" be hearsay. Dkt. 267 at 9. IV is mistaken. The citations to the IEEE prior art are not assertive statements and not offered for the truth of the matter asserted. The mere fact that there are citations to the IEEE prior art articles by POSITAs before the priority dates tends to show that the IEEE prior art articles were sufficiently accessible to POSITAS, regardless of whether the citations are the correct citations for those POSITA's assertions. In any event, the citations would also fall under at least the FRE 803(17) hearsay exception as a "list" or "other compilation" that is "generally relied on by the public or by persons in particular occupations."

**8. Reference to the fact that any patent, claim, theory, or accused product or functionality has been dropped or dismissed from the case or any prior case.**

Defendant's should be permitted to reference Ericsson's semi-persistent scheduling feature ("SPS") which happened to be the basis of IV's previously-asserted infringement theory that was subsequently abandoned. The case law does not support a complete prohibition on references to the fact that a patent, claim, theory or accused product or functionality has been dropped or dismissed from the case or any prior case.

In a case cited in IV's own Motion *in Limine*, this Court explained that a *limine* precluding such references is "not so broad as to prohibit . . . [defendants] from raising unasserted claims or previous claims as part of their case *to inform the jury on the issues of infringement and invalidity*." *See Saint Lawrence Commc'ns LLC v. ZTE Corp.*, 2:15-cv-00349-JRG, at *6 (E.D. Tex. Mar. 2, 2017) (emphasis added). Similarly, the court in *Advanced Tech. Incubator, Inc. v. Sharp Corp.* (the case IV relies upon in its motion *in limine*), qualified its ruling on dropped claims:

> This ruling should not be read to preclude globally all discussion of claims that were previously asserted but have been withdrawn. Instead, the Court precludes

>   discussing the fact that a particular claim was previously asserted but has been withdrawn. To the extent a party desires to discuss a withdrawn claim for some other permissible purpose, such as in discussing the prosecution history, this *in limine* ruling does not preclude such discussion.

*Advanced Tech. Incubator, Inc. v. Sharp Corp.*, No. 5:09-CV-135, 2010 WL 11451797, at *2 (E.D. Tex. Mar. 31, 2010).

Defendants seek to offer evidence of the SPS for a number of reasons. First, this feature is relevant to Ericsson's overall design process for its scheduler and to Ericsson's eventual adoption of its scheduler using ▬▬▬▬▬▬▬, which is what IV now accuses of infringement.



This testimony is relevant, regardless of the fact that IV previously accused this feature of infringing.

Additionally, IV asserts that Defendants are willfully infringing the patents in this case including alleging that Defendants gained knowledge of the patents in suit through IV's original complaint. Dkt. 276 (IV's Surreply Opposing Summary Judgment of No Willfulness) at 7 ("IV has asserted that 'since at least the filing of this action,' Defendants have had knowledge of the asserted patents they are infringing."). IV's complaint identifies Defendants' use of the SPS feature as a basis for its infringement claim and its willfulness allegation. Dkt. 1, ¶¶ 31-34. Defendants should be permitted to discuss these facts and to provide evidence that Ericsson's base stations do not implement SPS to rebut IV's assertion of willful infringement. Further, Defendants maintain their declaratory judgment claim for non-infringement, and thus need to discuss SPS to show Defendants do not infringe the patents-in-suit based on IV's assertion that SPS infringes.

11

Moreover, this motion in *limine* would serve to preclude Defendants from submitting evidence to disprove IV's infringement theory under the doctrine of equivalents. Specifically, IV has alleged that Ericsson's ████████████████ infringes the claim element of the '629 Patent that requires the packets being placed "in an isochronous manner" (i.e., according to a consistent time interval) under the doctrine of equivalents. ████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████. On the other hand, SPS as described in the LTE standard performs this "isochronous" placement of packets in slots on a regular interval and thus would literally meet this "isochronous" claim element. ████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████ IV should not be permitted to preclude Ericsson's evidence rebutting its DOE theory under the guise of it being related to a dropped theory.

Finally, Defendants should be permitted to introduce evidence regarding IV's view of the value of the '971 Patent and certain claims of the '206 Patent—relative to all the patents originally asserted—even though those claims were dismissed from the case. *See* Dkt. 197. When the Court issued its opinion rendering all asserted claims of the '971 Patent and certain claims of the '206 Patent to be indefinite (Dkt. 197), IV's experts Dr. Chrissan and Mr. Bratic issued supplemental expert reports that attributed a value to the claims that were dismissed. *See* Ex. E (Chrissan Suppl.

Rep.), ¶ 3 (  ); Ex. F (Bratic Suppl. Rep.), ¶ 162 ("

). Defendants should be permitted to cross examine Dr. Chrissan and Mr. Bratic about how they each determined values for some of the asserted claims (e.g., '971 Patent and certain claims of the '206 Patent), and why they did not do so for the claims that remain. Their opinions relating to the value of the asserted claims and their methodology for determining these values is relevant to their credibility and Defendants' rebuttal of IV's damages positions.

In summary, contrary to IV's assertion, the probative value of providing context and background outweighs any prejudice, jury confusion or waste of time under Federal Rule Evidence 403, particularly because Defendants do not intend to discuss that IV dropped an infringement claim involving SPS.  This Court should deny IV's motion *in limine*.

Dated: December 31, 2018

Asim M. Bhansali
  State Bar No. 90001290
  E-mail: abhansali@kblfirm.com
Kate E. Lazarus
  *Admitted Pro Hac Vice*
  E-mail: klazarus@kblfirm.com
**KWUN BHANSALI LAZARUS LLP**
555 Montgomery Street, Suite 750
San Francisco, California, 94111
Telephone: (415) 630-2350

R. Adam Lauridsen
  *Admitted Pro Hac Vice*
  E-mail: alauridsen@keker.com
**KEKER, VAN NEST & PETERS LLP**
633 Battery Street
San Francisco, CA 94111
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

**ATTORNEYS FOR T-MOBILE USA, INC. and T-MOBILE US, INC.**

Respectfully submitted,

By: */s/ Douglas M. Kubehl*
Douglas M. Kubehl
  Texas State Bar No. 00796909
  E-mail: doug.kubehl@bakerbotts.com
Jeffery S. Becker
  Texas State Bar No. 24069354
  E-mail: jeff.becker@bakerbotts.com
Johnson K. Kuncheria
  Texas State Bar No. 24070092
  Email: johnson.kuncheria@bakerbotts.com
Harrison G. Rich
  Texas State Bar No. 24083730
  E-mail: harrison.rich@bakerbotts.com
Steven T. Jugle
  Texas State Bar No. 24083280
  E-mail: steven.jugle@bakerbotts.com
Megan V. LaDriere
  Texas State Bar No. 24083348
  E-mail: megan.ladriere@bakerbotts.com
Bryan D. Parrish
  Texas State Bar No. 24089039
  Email: bryan.parrish@bakerbotts.com
Melissa L. Butler
  Texas State Bar No. 24097442
  E-mail: melissa.butler@bakerbotts.com
**BAKER BOTTS L.L.P.**
2001 Ross Avenue
Dallas, Texas 75201
Telephone: (214) 953-6500
Facsimile: (214) 953-6503

Melissa R. Smith
  Texas State Bar No. 24001351
  E-mail: melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

**ATTORNEYS FOR T-MOBILE USA, INC., T-MOBILE US, INC, TELEFONAKTIEBOLAGET LM ERICSSON, AND ERICSSON INC**

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document via electronic mail on December 31, 2018.

>               */s/ Jonathan B. Rubenstein*
>               Jonathan B. Rubenstein

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this matter.

>               */s/ Jonathan B. Rubenstein*
>               Jonathan B. Rubenstein